# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MELODY DOMINGUEZ, STEPHANIE HOLDREN, and all other Plaintiffs similarly situated known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>QUIGLEY'S IRISH PUB, INC., NANCY QUIGLEY, and MICHELLE MICHAEL, individually,<br><br>Defendants. | No. 09 CV 2583<br><br>Magistrate Judge Cole |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiffs Melody Dominguez ("Dominguez") and Stephanie Holdren ("Holdren"), by and through their attorneys, Caffarelli & Siegel Ltd., submit this Memorandum of Law in support of their Motion for Summary Judgment against Defendants Quigley's Irish Pub ("Pub" or "Company"), Nancy Quigley ("Quigley"), and Michelle Michael ("Michael") due to their violations of the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL"). Plaintiffs request that the Court grant summary judgment on liability in their favor and against Defendants, and that this matter proceed to trial for purposes of determining damages. Summary judgment should be granted for any or all of the following, undisputed reasons:

1) Defendants altered Plaintiffs' time records, and failed to pay Plaintiffs at least the applicable minimum wage rate for all hours worked by Plaintiffs;

2) Plaintiffs were not able to retain all of their tips because of Defendants' policy requiring servers to reimburse the Pub for "walk-outs;" and

3) Plaintiffs were not paid overtime for all hours worked in excess of forty (40) per week.

## UNDISPUTED MATERIAL FACTS

Plaintiff Melody Dominguez is a former employee of Defendants Quigley's Irish Pub, Nancy Quigley, and Michelle Michael. (Pl.'s Statement of Undisputed Material Facts ("SOF") ¶ 1.) Dominguez was employed by Defendants from August 2006 until on or about February 15, 2009. (SOF ¶ 1.) That being said, there was a period of approximately twenty (20) weeks between November 10, 2006 and March 30, 2007, that Dominguez performed no work for Defendants (SOF ¶ 1). Throughout Dominguez' employment with Defendants she primarily worked as a server (SOF ¶ 3). As a server, Dominguez was paid less than the applicable full minimum wage by Defendants. (SOF ¶ 3.) Rather, she was paid the lower tipped employee rate. (SOF ¶ 3.)

Plaintiff Stephanie Holdren likewise is a former employee of Defendants. (SOF ¶ 2.) Holdren was employed by Defendants from on or about March 2, 2009 until on or about September 19, 2009. (SOF ¶ 2.) Throughout her employment, Holdren also primarily worked as a server (SOF ¶ 3), and was paid the lower tipped employee rate (SOF ¶ 3).

The Pub is a restaurant/bar located in Naperville, Illinois. (SOF ¶ 4.) Quigley and Michael are the owners of the Pub, and are involved in the day-to-day business operations of the Pub. (SOF ¶ 5.) Among other things, Defendants Quigley and Michael have the authority to hire and fire employees; direct and supervise the work of employees; sign on the Company's checking accounts, including payroll accounts; and make or participate in decisions regarding employee compensation and capital expenditures. (SOF ¶ 5)

The Pub has many policies and procedures that employees, including Plaintiffs, are required to follow. (SOF ¶ 7.) For example, Defendants required servers, including Plaintiffs, to

clock in and clock out of the Pub's Point of Sales computer software system. (SOF ¶¶ 8, 9.) The purpose of the Point of Sales system was to keep track of employees' hours. (SOF ¶ 8.) As such, throughout their employment, Plaintiffs would clock in to the system using their individual employee number, and immediately begin working. (SOF ¶¶ 9, 10.) Then, when they finished working, Plaintiffs would clock out of the system. (SOF ¶ 9.)

The above notwithstanding, Defendants frequently changed employees', including Plaintiffs', clock in and clock out times on the system (SOF ¶¶ 11, 12), and trained their managers to do so (SOF ¶ 13). Specifically, when Dominguez or Holdren clocked in before their shift was scheduled to start, Defendants automatically changed their clock in time on the system to the start time of their scheduled shift (SOF ¶ 12), even though Plaintiffs were actually working the entire time they were clocked in (SOF ¶¶ 10, 12). Likewise, Defendants changed Plaintiffs' clock out times on the system to Plaintiffs' detriment. (SOF ¶ 12.) Defendants would then use the altered time records to determine Plaintiffs' weekly wages, rather than Plaintiffs' actual clock in and clock out times. (SOF ¶¶ 14, 15.)

Defendants also had a three-strike progressive discipline policy. (SOF ¶ 16.) Generally, an employee would be terminated after the third violation of the Pub's policies, although exceptions may be made for minor violations such as clocking in early and not working. (SOF ¶ 16.) Nonetheless, an employee eventually would be written up and/or fired for even repeated minor violations. (SOF ¶ 16.) That being said, even though Defendants frequently changed Plaintiffs' clock in times throughout their employment (SOF ¶¶ 17, 18), and Defendants had a policy against clocking in early and not working (SOF ¶ 16), neither Dominguez nor Holdren was ever written up for such conduct (SOF ¶¶ 19, 20).

Finally, Defendants also had a policy requiring servers to reimburse the Pub for customer walk-outs. (SOF ¶ 21.) Defendants implemented the reimbursement policy approximately one year after the Pub first opened. (SOF ¶ 22.) Thus, the reimbursement policy was in effect throughout Plaintiffs' employment with Defendants. (SOF ¶¶ 1, 2, 22.) In fact, in March 2009, Holdren was required to reimburse the Pub seventy dollars for a walk-out that occurred during the middle of the afternoon. (SOF ¶¶ 24, 26.) Likewise, Dominguez also was required to reimburse the Pub for customer walk-outs during her employment. (SOF ¶¶ 25, 26.) The money to reimburse the Pub came out of Plaintiffs' tips. (SOF ¶¶ 24, 25.)

**ANALYSIS**

**I.     Defendants' Wage and Reimbursement Policies Violate the FLSA's and IMWL's Minimum Wage Requirements.**

The FLSA requires that employees must be paid at least the federal minimum wage for all hours worked. 29 U.S.C. § 206(a)(1). Likewise, the IMWL requires employees to be paid at least the Illinois state minimum wage for all hours worked. 820 Ill, Comp. Stat. 105/4. Where an employee is subject to both the state and federal minimum wage laws, as is the case here, the employee is entitled to the higher of the two minimum wages. 29 U.S.C. § 218(a). That being said, in evaluating claims under the FLSA and IMWL, the same general analysis applies. Driver v. AppleIllinois, LLC, 265 F.R.D. 293, 298 (N.D. Ill. 2010). Here, the undisputed evidence shows that Defendants have violated the FLSA and IMWL by failing to pay Plaintiffs at least the minimum wage for all hours worked. Moreover, Defendants failed to pay Plaintiffs the minimum wage because they took an improper "tip credit." As such, Plaintiffs' motion for summary judgment should be granted.

### A. Defendants altered Plaintiffs' time records and failed to pay them at least the minimum applicable wage rate for all hours worked.

An employer must compensate its employees for all hours in which it knows or has reason to believe that work is being performed. 29 C.F.R. § 785.12. Moreover it is an employer's duty to make, keep, and preserve all records of its employees' wages, hours, and other conditions and practices of employment. U.S.C. § 211(c); 820 Ill. Comp. Stat. 105/8. Where an employer fails to maintain accurate time records of the hours worked by its employees, an employee may prevail by showing she performed work that she was not compensated for, and damages may be awarded based upon the employee's evidence, and any reasonable inferences drawn from such evidence. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).

Here, the undisputed facts show that Defendants' time records are inaccurate, and that Defendants failed to pay Plaintiffs for all hours they knew or should have known Plaintiffs worked. For one, Defendants admit that they pay employees by the minute. (SOF ¶ 14.) Moreover, Defendants own electronic time records show that Defendants frequently alter employees' clock in and clock out times to the detriment of the employees. (SOF ¶¶ 11, 12, 17.) According to Michael, it was Defendants' policy that if an employee, including Plaintiffs, clocked in early, Defendants would manually change the clock in time to the start of her shift, regardless of whether the employee actually began working immediately after clocking in. (SOF ¶ 12.)

For example, between August 30, 2006 and April 27, 2008, Dominguez' time records were changed 163 times. (SOF ¶ 17.) Specifically, her clock in time was changed 127 times, and her clock out time was changed an additional thirty-six times. (SOF ¶ 17.) Thus, taking into account the fact that Dominguez did not work for Defendants between approximately November 10, 2006 and March 30, 2007 (SOF ¶ 1), Defendants altered Dominguez' time records on

5

average approximately two and one-half times per week between August 30, 2006 and April 27, 2008. Defendants further admit that they continued to change Dominguez' time records at the same frequency after April 27, 2008, and also altered Holdren's time records throughout her employment.[1] (SOF ¶¶ 11, 17, 18.)

Moreover, it is also uncontested that Defendants always paid Plaintiffs based upon the changed time records, and not their actual clock in and clock out times. (SOF ¶ 15.) That being said, both Dominguez and Holdren testified that they would begin working immediately after clocking in, and Defendants have no evidence to dispute Plaintiffs' testimony. (SOF ¶ 10.) In fact, even though Quigley specifically testified that an employee would be written up for repeatedly violating certain "minor" policies, such as clocking in early and <u>not</u> working (SOF ¶ 16) (emphasis added), neither Dominguez or Holdren were ever written up for clocking in early and not working (SOF ¶¶ 19, 20). As such, the undisputed evidence shows that Defendants failed to pay Plaintiffs at least the minimum wage for all hours worked, and Plaintiffs' motion for summary judgment should be granted.

**B.      Defendants did not meet the requirements to take a tip credit against the minimum wage.**

Defendants also violated the FLSA and IMWL by taking an improper tip credit for Plaintiffs. Both Acts allow an employer to pay less than the minimum wage to tipped employees, but <u>only</u> if certain prerequisites are met. <u>See</u> 29 U.S.C. § 203(m); 820 Ill. Comp. Stat. 105/4(c) (emphasis added). Specifically, an employer may only take the tip credit if it: "(1) pays a cash wage [equal to the applicable statutory rate for tipped employees]; (2) informs its

---

[1] The exact number of times Dominguez' time records were changed after April 27, 2008, as well the number of times that Holdren's time records were changed during her employment, cannot be determined because after April 27, 2008, Defendants' computer software no longer maintained a log of such changes. (SOF ¶ 11.) In other words, Defendants' current computer software does not save the original clock in or clock out times after a change has been made. <u>Id.</u>

employees about the tip credit provisions; (3) permits its employees to retain all of their tips; and (4) ensures that the case wage plus the tip credit equal at least the minimum wage each week." Chisolm v. Gravitas Restaurant Ltd., No. H-07-475, 2008 WL 838760, at *2 (S.D. Tex. Mar. 25, 2008) (attached as Ex. A), citing, 29 U.S.C. § 203(m). If an employer fails to satisfy any of these prerequisites, it is not eligible for the tip credit and may not pay its employees less than the minimum wage. Martin v. Tango's Restaurant, Inc., 969 F.3d 1319, 1323 (1st Cir. 1992); Chung v. New Silver Palace Rest., 246 F. Supp 2d. 220, 229 (S.D.N.Y. 2002) (requirements in § 203(m) "must be satisfied even if the employee received tips at least equivalent to the minimum wage"). Moreover, the employer bears the burden of proving that it is entitled to the tip credit. Driver, 265 F.R.D. at 298-99.

The parties do not dispute that Plaintiffs were compensated by Defendants as tipped employees as defined by the FLSA and IMWL. Additionally, for purposes of this motion, Plaintiffs concede that there are genuine issues of material fact as to elements two and four – whether they received proper notice of the tip provisions and their wages plus tip equaled at least the minimum wage. Nonetheless, Defendants were not entitled to take the tip credit because the undisputed evidence shows that Plaintiffs were not paid the applicable lower tipped employee rate for all hours worked. Plaintiffs were also unable to retain all of their tips because of Defendants' policy requiring servers to reimburse the Pub for customer walk-outs.

        **1.**        **Plaintiffs were not paid by Defendants the applicable tipped employee rate for all hours they worked.**

In order to properly take a tip credit, an employer must pay its tipped employees at least the applicable tipped employee wage rate for all hours worked. 29 U.S.C. § 203(m). A failure to pay the appropriate employer portion of the minimum wage will destroy the tip credit, see Chisolm, 2008 WL 838760, at *2, and result in a violation of the minimum wage provisions of

the FLSA and IMWL, see Martin v. Deiriggi, No. 88-0064-C(K), 1991 WL 323416, at *6 (N.D. W. Va. Dec. 12, 1991) (defendant violated the FLSA by paying servers and bartenders less than the minimum wage obligation for a tipped employee) (attached as Ex. B).  Moreover, the employer will be required to pay the difference between the wages paid and the full minimum wage for every week in which the tip credit has been destroyed.  Chisolm, 2008 WL 838760, at *5.

Here, as described above, Defendants altered Plaintiffs time records, and failed to pay Plaintiffs the applicable tipped employee rate for all hours they worked.  Moreover, given the fact that Defendants altered Dominguez' time records on average approximately two and one-half times per week between August 30, 2006 and April 27, 2008 (SOF ¶ 17), and admit that they continued to alter employees' time records at the same frequency after April 27, 2008 (SOF ¶¶ 11, 17), under Anderson, 328 U.S. at 687, the Court may infer from the uncontested facts that Defendants failed to pay Plaintiffs for all of the hours they worked during each week of their employment.  As such, the indisputable evidence shows that Defendants failed to meet the prerequisites for taking a tip credit under the FLSA and IMWL during each week of Plaintiffs' employment.  As a result, Defendants' failed to pay Plaintiffs' the minimum wage throughout their employment, and Plaintiffs' motion for summary judgment should be granted.

> **2. Plaintiffs were not able to retain all of their tips because of Defendants' policy requiring servers to reimburse the Pub for customer walk-outs.**

Defendants are also not entitled to take a tip credit because they required servers, including Plaintiffs, to reimburse the Pub if a customer walked out without paying ("walk-out").  Courts have routinely found that an employer will violate the FLSA if it has a policy shifting part of the employer's business expense to employees.  Mayhue's Super Liquor Stores, Inc. v.

8

Hodgson, 464 F.2d 1196 (5th Cir. 1972). Specifically, deductions for reimbursement of cash register shortages, shortages resulting from mathematical errors, customers failing to pay, uncollectible credit card charges, and other unaccountable circumstances are unlawful. See Chisolm, 2008 WL 838760, at *3-4; Bernal v. Vankar Enterprises, Inc., 579 F. Supp 2d. 804, 810 (W.D. Tex. 2008); Brock v. Phillips, No. 84-92-Civ-T-15, 1986 WL 6849 (M.D. Fla. Apr. 17, 1986) (attached as Ex. C); Marshall v. Krist Oil Company, Inc., No. M76-74CA, 1979 WL 1906 (W.D. Mich. Apr. 23, 1979) (attached as Ex. D); Hodgson v. Frisch's Dixie, Inc., No. 6641, 1971 WL 837 (W.D. Ky. Aug. 16, 1971) (attached as Ex. E). For example, in Bernal, 579 F. Supp 2d. at 810, the court found that defendants disqualified themselves from taking the tip credit in part because plaintiffs had to use their tips to reimburse defendants for cash register shortages and unpaid customer tabs, and plaintiffs were thus unable to retain all of their tips. As such, the court granted plaintiffs' motion for summary judgment that defendants failed to pay them the minimum wage. Id. See also Martin, 969 F.3d at 1323; Chung, 246 F. Supp 2d. at 229 (not permitting an employee to retain all of his or her tips destroys the employers' ability to take the tip credit).

Here, Defendants likewise had a policy requiring servers, including Plaintiffs, to reimburse the Pub for customer walk-outs. (SOF ¶ 21.) Moreover, both Plaintiffs testified that they were required to pay back the Pub for shortages, and that they used their tips to do so. (SOF ¶¶ 24, 25.) While Defendants have no recollection of Plaintiffs actually paying them for customer walk-outs, they do not deny that Plaintiffs did (SOF ¶ 26), and it is Defendants' obligation to keep accurate records under the FLSA, 29 U.S.C. § 211(c), and IMWL, 820 Ill. Comp. Stat. 105/8. If they fail to do so, Plaintiffs' evidence must be accepted for purposes of proving liability. See Anderson, 328 U.S. at 687. Defendants do not maintain any written

9

records for when an employee reimburses the Pub for a walk-out. (SOF ¶ 23.) As such, given Plaintiffs' testimony, the undisputed evidence clearly shows that Plaintiffs were unable to retain all of their tips because they had to reimburse Defendants for customer walk-outs. Thus, Defendants were not entitled to take a tip credit, and have violated the FLSA and IMWL by failing to pay Plaintiffs the applicable full minimum wage.

The above notwithstanding, for purposes of determining whether Defendants' have violated the FLSA's and IMWL's tip credit provisions, it is irrelevant whether Plaintiffs actually had to reimburse Defendants for customer walk-outs, which they did. Specifically, an employer may not take a tip credit if its employees are simply subjected to a policy that violates the FLSA's tip credit provisions. See Auer v. Robbins, 519 U.S. 452, 461 (1997) (employers are liable to employees under the FLSA if those employees are "subject to" an unlawful policy, regardless of whether the employees experienced the improper deductions). There is no question that Plaintiffs were subjected to Defendants' reimbursement policy throughout their employment. (SOF ¶¶ 1, 2, 22.) As such, because Defendants' reimbursement policy violates the FLSA's and IMWL's tip credit provisions, Defendants were not entitled to the benefit of paying a lower minimum wage and taking the tip credit. Consequently, Plaintiffs' motion for summary judgment should be granted, and Defendants should be required to pay Plaintiffs the difference between their hourly rate and the applicable minimum wage for each week they were subjected to the policy.

**II.     Defendants' Violated the FLSA's and IMWL's Overtime Provisions by Failing to Pay Plaintiffs Overtime for all Hours Worked in Excess of Forty per Week.**

Under the FLSA and IMWL, employees are entitled to one and one half times their regular rate of hourly pay ("overtime") for all hours worked in excess of forty hours in one workweek. 29 U.S.C. § 207; 820 Ill. Comp. Stat. 105/4a(1). Here, the evidence clearly shows

that in addition to violating the minimum wage provisions, Defendants have also failed to pay Plaintiffs overtime for all hours worked in excess of forty (40) per week.

For one, a comparison between Dominguez' pay stubs and Defendants' own time records (even after Defendants' altered Dominguez' time) show that Dominguez was not paid overtime for all weeks that she worked in excess of forty hours. For example, during the pay period starting on September 22, 2008 and ending on October 5, 2008, Defendants' time records show that Dominguez worked a total of 74.37 hours, with 3.45 hours being overtime. (SOF ¶ 27.) However, according to her pay stub for the same period, Dominguez was only paid for 70.92 hours at her regular rate, and was not paid for the 3.45 hours of overtime. (SOF ¶ 27.) Similarly, Dominguez was not paid .71 hours of overtime during the pay period of June 16, 2008 through June 29, 2008. (SOF ¶ 28.) Thus, without even including any unpaid hours resulting from Defendants' altering her clock in and clock out times, Defendants' own time records clearly demonstrate that Dominguez was not paid overtime on at least two occasions.

That being said, as explained more fully above, Defendants changed Dominguez' clock in and clock out times every week during her employment. Specifically, during the fifty-two weeks that Dominguez worked between August 30, 2006 and April 27, 2008, Defendants' changes resulted in Dominguez being shorted 1,034 minutes, or an average of approximately 19.88 minutes per week. (SOF ¶ 17.) Thus, for the weeks that Defendants do not have accurate records reflecting Dominguez' actual hours worked (i.e. from April 28, 2008 through the end of Dominguez' employment), an additional 19.88 minutes should be added per week. See Anderson, 328 U.S. at 687. As a result, for each week in which Dominguez has already been paid overtime (SOF ¶ 29), or should have been paid overtime (SOF ¶¶ 27, 28), she is entitled to an additional 19.88 hours of overtime. Moreover, to the extent the additional 19.88 minutes

pushes Dominguez' hours for the week of forty (40), she should be awarded overtime for that amount as well.

Likewise, Defendants admitted that they also changed Holdren's clock in and clock out times throughout her employment. (SOF ¶¶ 11, 18.) Consequently, additional compensable time should also be added for each day of Holdren's employment with Defendants. See Anderson, 328 U.S. at 687. To the extent the additional time results in Holdren working more than forty (40) hours in a given week, she is entitled to overtime as well.

### III. Defendants Quigley and Michael are Employers under the FLSA and IMWL.

Individuals with supervisory authority over employees are individually liable under the FLSA and IMWL. Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987). Courts have asserted that "a corporate officer with 'operational control' over an employing entity clearly falls within the definition of an individual with supervisory authority." Alice v. GCS, Inc., No. 05 C 50132, 2006 WL 2644958 at *5 (N.D. Ill. Sep. 14, 2006), citing Freemon v. Foley, 911 F.Supp. 326, 331 (N.D. Ill. 1995) (attached as Ex. F). As such, in Alice, 2006 WL 2644958 at *5, the court held that the president of the corporate defendant was individually liable under the FLSA. Put another way, courts have held that "an individual who controls corporate operations (and the terms and conditions of employees' employment therein) is an 'employer' under the FLSA." McLaughlin v. Lunde Truck Sales, Inc., 714 F.Supp. 920, 924 (N.D. Ill 1989) (finding president of company individually liable under the FLSA).

Here, Defendants Quigley and Michael are the owners of Defendant Pub. (SOF ¶ 5.) Moreover, Defendants admit that both Quigley and Michael are involved in the day-to-day business operations of the Pub. (SOF ¶ 5.) Among other things, Defendants Quigley and Michael have the authority to hire and fire employees; direct and supervise the work of

employees; sign on the Company's checking accounts, including payroll accounts; and make or participate in decisions regarding employee compensation and capital expenditures. (SOF ¶ 5.) In fact, Quigley and Michael admitted that they each personally changed employees' time and/or pay records on the Pub's computer system. (SOF ¶ 5.) As such, the uncontested evidence clearly establishes that both Quigley and Michael are employers under the FLSA and IMWL, and therefore are individually liable.

## CONCLUSION

For the above compelling reasons, Plaintiffs respectfully request that this Honorable Court grant their Motion for Summary Judgment finding that Defendants' were not entitled to take a tip credit under the FLSA and IMWL, and violated the FLSA and IMWL by failing to properly pay Plaintiffs minimum and overtime wages. Plaintiffs additionally respectfully request that this Honorable Court schedule a hearing to determine the appropriate damages, costs, attorneys' fees, and award any other relief the Court deems necessary and proper.

Dated: November 8, 2010                     Respectfully submitted,

                                            MELODY DOMINGUEZ and
                                            STEPHANIE HOLDREN


                                            By: /s/ Bradley Manewith
Alejandro Caffarelli, #06239078                 Attorney for Plaintiffs
Bradley Manewith, #062980535
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 North Stetson, Ste. 3150
Chicago, IL 60601
Tel. (312) 540-1230
Fax (312) 540-1231

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused a copy of the attached, Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment, to be served upon the parties below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on November 8, 2010.

Mr. Jeffry J Knuckles
Nyberg & Cassioppi, LLC
1111 S. Washington St.
Naperville, IL 60540

Mr. James A. McGurk
Law Offices of James A. McGurk, P.C.
10 S. LaSalle St., Suite 3300
Chicago, IL 60603


Courtesy copy delivered to chambers of Magistrate Judge Cole within 24 hours of filing.


    /s/ Bradley Manewith
    Bradley Manewith
    Caffarelli & Siegel Ltd.
    Two Prudential Plaza
    180 N. Stetson, Suite 3150
    Chicago, IL 60601