**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MELODY DOMINGUEZ and STEPHANIE HOLDREN, | | |
| Plaintiffs, | | No. 09 CV 2583 |
| v. | | |
| QUIGLEY'S IRISH PUB, INC., NANCY QUIGLEY, and MICHELE MICHAEL, individually, | | Magistrate Judge Cole |
| Defendants. | | |

**DEFENDANTS' RESPONSE**
**TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, Quigley's Irish Pub, Inc. ("Pub"), Nancy Quigley ("Quigley"), and Michele Michael ("Michael"), individually, and through their counsel, submit this Response to Plaintiffs' Motion for Summary Judgment.

## I.     INTRODUCTION

On November 8, 2010, Plaintiffs and Defendants submitted their respective Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiffs' Motion for Summary Judgment must be denied for want of any facts that give rise to Defendants' alleged violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Portal-to-Portal Act, 29 U.S.C. § 251, *et seq.*, or the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.* ("IMWL").  Accordingly, Plaintiffs' Motion for Summary Judgment should be denied, and Defendants' Motion for Summary Judgment should be granted.

II.     **ARGUMENT**

As stated in Defendants' Memorandum in Support of Their Motion for Summary

Judgment, this case beckons application of the old legal maxim *de minimis non curat lex* (the law

does not concern itself with trifles).  This is simply not the set of facts that the respective

legislatures envisioned when they created a remedy under the FLSA and IMWL for employee

abuse relating to wage, overtime, and workplace violations.

Plaintiffs raise three (3) central issues in their Motion for Summary Judgment:  (1)

Defendants' moving of clock-in and clock-out times to correspond to scheduled work time; (2)

Defendants' "walkout" policy; and (3) a payroll error of 4.16 hours pertaining to overtime.  Of

these three (3) issues, Plaintiffs only identified and pled a failure to pay overtime in their

Complaint.

Plaintiffs optimistically initiated this suit armed with only their unsupported statements

and beliefs.  Their efforts to encourage the nearly 100 former and current employees to "opt-in"

failed.  Written discovery consisted of Defendants providing all of its business records and

documents, which Plaintiffs reviewed, finding only a payroll error of 4.16 hours.

A.      **Defendants have not violated the FLSA or IMWL,
        and therefore Plaintiffs are not entitled to summary judgment.**

1.   **Using the clock-in and clock-out times listed on the work
        schedules as the default for determining hours worked is
        a necessary management tool and does not violate the law.**

The Pub uses the assigned work times listed on the weekly schedules as the starting point

for determining hours worked and thus pay.  If an employee was asked to arriver earlier or stay

later than scheduled, the employee's clock-in and/or clock-out times would be reflected

accordingly.  This practice is a necessary management tool for the Pub; otherwise, the Pub could

2

not control its payroll. As Quigley and Michael stated in their depositions, Plaintiff Dominguez

would regularly (i) clock-in earlier than scheduled and then sit down and have a meal at the Pub,

and (ii) change clothes before clocking-out. (Quigley Deposition, Exhibit C to Defs.' Mot. for

Summary Judgment, p. 41: 5-25; *see also* Michael Deposition, Exhibit B to Defs.' Mot. for

Summary Judgment, pp. 43: 8 – 55: 10.)

The Pub and its managers cannot monitor every employee and determine the millisecond

each employee actually begins and finishes working. There are far more employees than

managers of the Pub, like all other bars and restaurants, and the risk of over-paying for

unscheduled work is diminished through the practice of using scheduled work times to determine

payroll, and modifying those times when appropriate.

This practice does not violate the FLSA, IMWL, or any other law. Work schedules are

set and employees are only authorized to work during that time. Further, the software used by

the Pub to conform the scheduled time to the clock-in/clock-out time also catches input errors by

staff. For example, errors in the amount of tips claimed for both credit card and cash sales are

adjusted to comply with governmental requirements. (Michael Deposition, Exhibit B to Defs.'

Mot. for Summary Judgment, pp. 55: 11 – 59: 14.) Without this reasonable and legal

management tool, employers would be at the mercy of their employees.

## 2. The Pub's walkout policy does not prevent its employees from retaining their tips.

The Pub's so-called walkout policy[1] is mischaracterized by Plaintiffs. The Pub's walkout

policy, since its inception, gives the employee who failed to comply with the Pub's policy the

option of either taking a disciplinary write-up or reimbursing the Pub. (Michael Deposition,

Exhibit B to Defs.' Mot. for Summary Judgment, pp. 62: 8 – 63: 2.) The choice is the

---

[1] As an anti-theft policy, servers are required to obtain a credit card from the Pub's customers after 9:00 p.m.

employee's alone.  If the employee opts to reimburse the Pub, thereby avoiding a write-up for failure to adhere to the Pub's anti-theft policy, the employee can reimburse the Pub from whatever source of money he or she chooses.  In so choosing, the employee could opt to reimburse the Pub from the employee's tips, but it matters not where the money comes from. (Quigley Deposition, Exhibit C to Defs.' Mot. for Summary Judgment, p. 48: 7-16; Michael Deposition, Exhibit B to Defs.' Mot. for Summary Judgment, p. 66: 4-9.)  The Department of Labor provides further support for the legality and reasonableness of well-drafted walkout policies, such as the Pub's.  (DOL Fact Sheet #16, Exhibit I to Defs.' Mot. for Summary Judgment.)

Plaintiffs state that they were "required" to reimburse the Pub for those alleged one or two instances where Plaintiffs failed to comply with the Pub's anti-theft policy.  This couldn't be further from the truth, as evidenced in the written policy itself (Exhibit 6 to Defs.' Mot. for Summary Judgment) and the deposition testimony of Quigley, Michael and the Pub's manager, Chris Baggett ("Baggett").  (Quigley Deposition, Exhibit C to Defs.' Mot. for Summary Judgment, pp. 46: 22 – 47: 22; Michael Deposition, Exhibit B to Defs.' Mot. for Summary Judgment, pp. 62: 12 – 63: 2; Baggett Deposition, Exhibit D to Defs.' Mot. for Summary Judgment, pp. 22: 2 – 23: 11.)

The Pub's walkout policy does not require that its employees reimburse the Pub after a walkout, and nor does the walkout policy require employees to disgorge their tips if the election to reimburse is exercised.  To not have an effective, fair "anti-theft" policy would defeat management's efforts to control cash, inventory, and profit.

4

### 3. The Pub complies with all applicable laws governing overtime, and two payroll errors explain Plaintiff Dominguez's overtime discrepancy.

After Plaintiffs' thorough audit of the Pub's business practices, the only discrepancies discovered were two payroll errors. The Pub's own time records reflect that Plaintiff Dominguez worked 0.71 hours of overtime during the June 16, 2008 to June 29, 2008 pay period, and 3.45 hours of overtime during the September 22, 2008 to October 5, 2008 pay period. However, somewhere between the computation of hours worked and the drafting of checks, the overtime amount was inadvertently excluded. Of the thousands of hours contained in the records produced by the Pub, the Pub's documents show nothing except for a payroll error of 4.16 hours. This is neither an intentional nor a systematic error that reflects any sort of policy by the Pub to move time to subsequent weeks to avoid the paying of overtime, or otherwise manipulate overtime earned by the Pub's employees.[2] Rather, this reflects the only two (2) instances (amounting to 4.16 hours of overtime) between these two employees and years of business where there was an error in a check drafted by the Pub's bookkeeper. This was never brought to the Pub's attention so the error could be remedied. Such are not the stuff of lawsuits, and are not the kind of injuries that the FLSA and IMWL seek to remedy. As such, the Defendants did not violate any laws with respect to overtime, and the Plaintiffs' Motion for Summary Judgment must be denied.

### B. The FLSA was not intended to provide any remedy for the facts adduced by Plaintiffs here.

Congress set forth its findings and declaration of policy in enacting the FLSA in 29 U.S.C. § 202:

---

[2] Plaintiff Dominguez worked and was paid overtime for the pay period of May 19, 2008 to June 1, 2008, and the pay period of September 8, 2008 to September 21, 2008. Plaintiff Holdren never worked overtime.

(a)  The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers

> (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States;
> (2) burdens commerce and the free flow of goods in commerce;
> (3) constitutes an unfair method of competition in commerce;
> (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and
> (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce.

(b)  It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

The FLSA was enacted in 1938 to redress poor working conditions, combat child labor, and establish reasonable parameters for maximum hours worked and minimum wages. These were global concerns to address the widespread problem of employers taking advantage of their employees. Because the labor situation (i.e., the employer-employee relationship) was unbalanced and unfair, Congress enacted the FLSA to level the playing field and make the employer-employee relationship fair.

The foregoing concerns simply do not relate to the facts presented here, where the "injury" amounts to $29.[3]  Innocent clerical errors are certainly not the type of "condition" requiring the intervention of the federal court. Therefore, Plaintiffs' Motion for Summary Judgment must be denied, and Defendants' Motion for Summary Judgment should be granted.

---

[3] The approximate amount of overtime pay Plaintiff Dominguez would have received, had she brought this to the Pub's attention, for those 4.16 hours of overtime in 2008 (based on the then-prevailing IL minimum wage rates for tipped employees x 1.5 for overtime).

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied,

and summary judgment should be granted in favor of Defendants.


Date:  December 8, 2010                                   Respectfully submitted,


                                                          Quigley's Irish Pub, Inc.; Nancy Quigley;
                                                          Michele Michael, Defendants


                                                          By: /s/  James A. McGurk
                                                          Counsel for Defendants

James A. McGurk, Esq.
Law Offices of James A. McGurk, P.C.
10 S. LaSalle St.
Chicago, IL  60603
312-236-8900
FAX 312-277-3497

Jeffry J. Knuckles, Esq.
Nyberg & Cassioppi, LLC
1111 S. Washington St.
Naperville, IL 60540
630-428-8888
FAX 630-428-8890

CERTIFICATE OF SERVICE


The undersigned attorney hereby certifies that a copy of the above described Defendants' Response to Plaintiffs' Motion for Summary Judgment was served upon the persons below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on December 8, 2010.

Bradley Manewith, Esq.
Caffarelli & Siegle, Ltd.
Two Prudential Plaza
180 Stetson, Suite 3150
Chicago, IL 60601

Jeffry J. Knuckles, Esq.
Nyberg & Cassioppi, LLC
1111 S. Washington St.
Naperville, IL 60540


By: /s/  James A. McGurk
Counsel for Defendants

8