**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MELODY DOMINGUEZ, STEPHANIE HOLDREN, and all other Plaintiffs similarly situated known and unknown,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **09-cv-2583** |
| **v.** | ) ) | |
| **QUIGLEY'S IRISH PUB, INC., NANCY QUIGLEY, and MICHELE MICHAEL, individually,** | ) ) ) ) ) | **Magistrate Judge Jeffrey Cole** |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### INTRODUCTION

Melody Dominguez and Stephanie Holdren filed this lawsuit against their former employer, Quigley's Irish Pub, Inc., and against Nancy Quigley and Michelle Michael, individually, alleging violations under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Portal-to-Portal Act, 29 U.S.C. § 251, *et seq.*, and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.* ("IMWL"). In their two-count Amended Complaint [76], the plaintiffs claim that the defendants failed to pay them minimum wages and overtime as required by law. Both parties have moved for summary judgment.[1]

---

[1] The plaintiffs request summary judgment only on the issue of liability.

# BACKGROUND

## A.
## Summary Judgment Standard Under Local Rule 56.1

For summary judgment purposes, the relevant background facts are derived from the parties' Local Rule 56.1 submissions, which assist the court in "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 527 (7th Cir. 2000). Indeed the Rule is "'key'" to that task. *F.T.C. v. Bay Area Business Council, Inc.,* 423 F.3d 627, 634 (7th Cir. 2005).

The rule requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the.party contends there is no genuine issue and that entitle the.party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *Bay Area Business Council, Inc.,* 423 F.3d at 633. The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Business Council, Inc.,* 423 F.3d at 633, and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(C); *Ciomber,* 527 F.3d at 643.

If the moving party fails to comply with the Rule, the motion can be denied without further consideration. Local Rule 56.1(a)(3); *Smith v. Lamz,* 321 F.3d 680, 682 n. 1 (7th Cir. 2003). If the responding parting fails to comply, its additional facts may be ignored, and the properly supported facts asserted in the moving party's submission are deemed admitted. Local Rule 56.1(b)(3)(C); *Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir. 2008); *Cracco,* 559 F.3d at 632; *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006). District courts are "'entitled to expect strict compliance'" with Rule 56.1 and do not abuse their discretion when they opt to disregard facts presented in a manner that does follow the Rule's instructions. *Cracco,* 559 F.3d at 632; *Ciomber,* 527 F.3d at 643; *Ammons v. Aramark Unif. Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). The court is not required to scour the record for evidence that supports a party's case if the party fails to point it out; that is the counsel's job. *See Bay Area Business Council.,* 423 F.3d at 633.

In the instant case, the parties filed their respective motions for summary judgment on the same day. [Dkt Nos. 59 and 61]. Thereafter, the plaintiffs responded to Defendants' Statement of Material Facts ("Defs. SOF") [69] as required by Local Rule 56.1. The defendants, however, failed to respond to Plaintiffs' Statement of Material Facts ("Pls. SOF"). And, although the defendants properly submitted a statement of facts in support of their *own* Motion for Summary Judgment, that is not an adequate substitute for the specific, paragraph-by-paragraph response required by Local Rule 56.1. It is not the responsibility of the court to compare the defendants' Rule 56.1 Statement in support of their Motion for Summary Judgment to the plaintiffs' Rule 56.1 filing in support of

their Motion for Summary Judgment. Indeed, that is the very sort of endeavor that Rule 56.1 is designed to eliminate.

As the court emphasized in *Bay Area Business Council*, even where a party files an affidavit in purported response to a Rule 56.1 filing, the affidavit will not suffice. A court is not obligated to conduct a paragraph-by-paragraph comparison to determine what is and what is not in dispute:

> .the defendants suggest the district court should have harked back to affidavits submitted with their answer to the FTC's amended complaint and their motion in opposition to the preliminary injunction. But local rules such as 56.1 exist precisely because the district court is not "obliged . to scour the record looking for factual disputes."

423 F.3d at 634 (citation omitted).[2] Here, the defendants have not even made a pretense of filing a document that purportedly is responsive to a Rule 56.1 filing of the opposing party. The defendants have done nothing to respond to the plaintiffs' filing and thus, the plaintiffs' Statement of Facts is admitted.

## B.

### The Material Facts In The Parties' Rule 56.1 Statements In Support Of Their Motions For Summary Judgment

Quigley's Irish Pub is a restaurant and bar located in Naperville, Illinois. (Pls. SOF ¶ 4); (Defs. SOF ¶ 5). The Pub is owned and operated by Nancy Quigley and Michelle Michael. (Pls. SOF ¶ 5). Among other things, Ms. Quigley and Ms. Michael have the authority to hire and fire employees, direct and supervise the work of

---

[2] In *Bay Area Business Council*, the defendant did not file its own Rule 56.1 Statement in response to the plaintiff's Statement of Material Facts. Instead, it submitted a 33-page affidavit, which the district court refused to consider, thereby leaving the plaintiff's factual statements uncontested. On appeal, the Seventh Circuit affirmed the district court's exercise of discretion and emphasized the critical function performed by Local Rule 56.1 in "correlating evidence in the record to factual propositions." Rules like 56.1 "'provide[ ] the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court.'" 423 F.3d at 633.

employees, sign on the Pub's checking and payroll accounts, and make or participate in decisions regarding employee compensation and capital expenditures. (Pls. SOF ¶ 5).

Melody Dominguez is a former Pub employee. (Pls. SOF ¶ 1); (Defs. SOF ¶ 1). She worked at the Pub from August 2006 until February 15, 2009. (Pls. SOF ¶ 1). However, Ms. Dominguez did not work at the Pub for a period of approximately twenty weeks between November 10, 2006 and March 30, 2007. (Pls. SOF ¶ 1). Throughout her employment, Ms. Dominguez worked primarily as a server. (Pls. SOF ¶ 3). As a server, Ms. Dominguez was paid less than the applicable full minimum wage, and instead was paid the lower "tipped employee" rate. (Pls. SOF ¶ 3). Stephanie Holdren, also a former Pub employee, worked from March 2, 2009 until September 19, 2009, primarily as a server and was likewise paid the lower tipped employee rate. (Pls. SOF ¶¶ 2-3).

The defendants inform prospective employees of the minimum wage and server minimum wage to the extent that Ms. Dominguez and Ms. Holdren were told that they would be paid the server minimum wage during their interviews. (Plaintiffs' Objections and Responses to Defendants' Statement of Material Facts (("Pls. Resp.") at ¶11). The Pub also gives its servers written notification of increases in the minimum wage. (*See* Defs. SOF ¶ 12, 13; Defs. Ex. A – June 11, 2009 Memorandum to Employees; Defs. Ex. 83 – June 20, 2008 Memorandum to Employees). Although Ms. Dominguez denies that the defendants notified her of the Pub's intent to take a tip credit, it is unclear whether this blanket denial extends to whether she even received the Pub's written memo regarding the minimum wage. (*See* Pls. Resp. at 5). The memorandum at issue in Ms. Dominguez's case is dated June 20, 2008 and reads: "Effective July 1, 2008, the State of Illinois will increase the minimum wage to $7.75 per hour. Tipped employees' minimum

wage will increase to $4.65 per hour." (Defs. Ex. 83). The memo further states that information was available posted on the office door and on the Federal and State Law posters located by the schedule board. (Defs. Ex. 83).

Ms. Holdren similarly denies that the Pub notified her of its intent to take a tip credit, but admits receiving a memo regarding a minimum wage increase dated June 11, 2009. (Pls. Resp. at 5; Defs. Ex. A). That memo states: "Effective July 1, 2009, the State of Illinois will increase the minimum wage to $8.00 per hour. *Tipped employees* minimum wage increases to $4.80 per hour." (Defs. Ex. A)(Emphasis supplied). Although the defendants do not point it out specifically, this memo differs slightly from the June 20, 2008 memo in that it also states that "[t]he difference between the minimum wage on regular earnings v. tipped employees is the tip credit (tips collected by employees)." (Defs. Ex. A) (parenthetical in original).

The Pub prominently displays state and federal wage and labor notices/posters. (Defs. SOF ¶ 15). Both Ms. Dominguez and Ms. Holdren acknowledge seeing the posters on display near the back of the Pub. (*See* Defs. SOF ¶ 15; Defs. Ex. G – Dominguez Dep. at 43-45, "It was in plain view"; Defs. Ex. H – Holdren Dep. at 17-18).

The defendants pay their servers by the minute. (Pls. SOF ¶ 14; Pls. Ex. B – Michael Dep. at 35; Pls. Ex. C – Quigley Dep. at 33). The Pub uses a Point of Sales computer system to keep time records of hours worked by its servers. (Pls. SOF ¶ 8). Servers are required to clock-in and clock-out on the computer system using their individual employee number. (Pls. SOF ¶¶ 9, 10). Throughout their employment, Ms. Dominguez and Ms. Holdren would begin working immediately after clocking-in to the

system. (Pls. SOF ¶¶ 9, 10). Then, when they finished working, they would clock-out. (Pls. SOF ¶ 9).

The Pub's time records indicate – and the defendants do not deny – that Ms. Dominguez is due wages and overtime during the pay period starting on September 22, 2008 and ending on October 5, 2008. (Pls. SOF ¶ 27). During this period, Ms. Dominguez worked a total of 74.37 hours, with 3.45 hours being overtime. (Pls. SOF ¶ 27). However, she was only paid 70.92 hours at her regular rate, and was not paid for the 3.45 hours of overtime. (Pls. SOF ¶ 27).

Similarly, Ms. Dominguez was not paid .71 hours of overtime work due during the pay period of June 16, 2008 through June 29, 2008. (Pls. SOF ¶ 28). Ms. Dominguez was paid overtime for the weeks beginning November 19, 2007, May 19, 2008, May 26, 2008, August 18, 2008, September 8, 2008, and September 15, 2008. (Pls. SOF ¶ 29).

The great source of contention in this case, however, stems from alleged unpaid wages and overtime resulting from the defendants' frequent and undisputed adjusting of the Pub's computer time records. The Point of Sales computer system allows the defendants to alter employees' clock-in and clock-out times. (Pls. SOF ¶ 8). The defendants frequently changed servers' time records – including Ms. Dominguez's and Ms. Holdren's – and trained their managers to do so as well. (Pls. SOF ¶¶ 11, 12, 13). For example, when either Ms. Dominguez or Ms. Holdren clocked-in and began working before their shift was scheduled to start, the defendants frequently changed their clock-in time on the system manually to reflect the start time of their scheduled shift. (Pls. SOF ¶¶ 10, 12). The defendants would similarly adjust Ms. Dominguez's and Ms. Holdren's

in and out times even though they claimed to have been working the entire time they were clocked-in.  (Pls. SOF ¶¶ 10, 12).

Instead of their actual clock-in and clock-out times, the Pub used the altered time records to determine Ms. Dominguez's and Ms. Holdren's weekly wages.  (Pls. SOF ¶¶ 14, 15).  Prior to approximately May 2008, the Pub used a Point of Sales computer system by Hospitality Solutions International ("HSI") (Pls. SOF ¶ 8).  Since approximately May 2008, the Pub has used a system by 24 X 7 Hospitality ("24 X 7").  (Pls. SOF ¶ 8).  Although both systems work the same way, (Pls. SOF ¶ 8), HSI maintains electronic logs (*i.e.* metadata) showing the servers' original clock-in and clock-out times, while 24 X 7 does not save the original information.  (Pls. SOF ¶ 11).

The available logs indicate that between August 30, 2006 and April 27, 2008, Ms. Dominguez's time records were altered 163 times.  (Pls. SOF ¶17).  Specifically, her clock-in time was changed 127 times, and her clock-out time was adjusted 36 times.  (Pls. SOF ¶ 17).  The exact number of times that Ms. Dominguez's time records were changed after April 27, 2008 cannot be determined because, after April 2008, the Pub began using the 24 X 7 computer software that no longer maintained a log of the changes.  (*See* Pls. SOF ¶ 11).  Likewise, the changes made to Ms. Holdren's time records were not tracked in the Pub's computer system since she only began working on or about March 2, 2008, and by April the Pub had switched over to the 24 X 7 system.  (Pls. SOF ¶¶ 2, 11).  Nonetheless, the defendants admit they continued to change Ms. Dominguez's time records at the same frequency after April 27, 2008, and also altered Ms. Holdren's time records throughout her employment.  (Pls. SOF ¶¶ 11, 17, 18).

The Pub used a three-strike progressive discipline policy. (Pls. SOF ¶ 16). Typically, an employee would be terminated after his or her third violation of the Pub's policies – although managers would occasionally make exceptions for minor violations, such as clocking-in early and not working. (Pls. SOF ¶ 16). However, an employee would eventually be written up and/or terminated for repeated minor violations. (Pls. SOF ¶ 16). Although the defendants frequently changed Ms. Dominguez's and Ms. Holdren's time records (Pls. SOF ¶¶ 17, 18), and defendants had a policy against clocking-in early and not working (Pls. SOF ¶ 16), neither Dominguez nor Holdren were ever written-up or fired for such conduct. (Pls. SOF ¶¶ 19, 20).

The defendants also have a policy requiring servers to reimburse the Pub if a customer walks out without paying after 9:00 p.m (Pls. SOF ¶ 21; Pls. Ex. B – Michael Dep. at 63; Pls. Ex. C – Quigley Dep. at 48). The defendants' walk-out policy was implemented approximately one year after the Pub opened and was in effect throughout Ms. Dominguez's and Ms. Holdren's employment. (Pls. SOF ¶¶ 1, 2, 22).

The defendants do not maintain any written records of when an employee reimburses the Pub for a walk-out. (Pls. SOF ¶ 23). Neither do the defendants have any specific recollection of either Ms. Dominguez or Ms. Holdren reimbursing the Pub for walk-outs during the course of their employment. (*See* Pls. SOF ¶ 26; Pls. Ex. B – Michael Dep. at 66-67; Pls. Ex. C – Quigley Dep. at 48). However, both Ms. Dominguez and Ms. Holdren recall having reimbursed the Pub under the walk-out policy. (Pls. SOF ¶¶ 24, 25; Pls. Ex. G – Dominguez Dep. at 7-9, 66-67; Pls. Ex. L – Holdren Dep. at 10-12, 25).

At her deposition, Ms. Holdren stated that she reimbursed the Pub seventy dollars for a walk-out that occurred in the middle of the afternoon in March 2009. (Pls. SOF ¶ 24; Pls. Ex. L – Holdren Dep. at 10-12, 25). Ms. Holdren said that she paid the Pub using money from her tips. (Pls. SOF ¶ 24; Pls. Ex. L – Holdren Dep. at 11-12). Likewise, Ms. Dominguez stated at her deposition that she reimbursed the Pub for customer walk-outs during her employment. (Pls. SOF ¶ 25; Pls. Ex. G – Dominguez Dep. at 7-9, 66-67).

Despite not having any records of walk-out reimbursements, the defendants claim that Ms. Dominguez and Ms. Holdren kept all of their tips. Although the Pub admits having a self-styled "anti-theft" policy which mandated that employees reimburse the Pub for a customer walk-out, the defendants claim that servers were not *required* to reimburse the Pub out of their tips. (*See* Defs. SOF ¶ 16; Defs. Ex. B – Quigley Dep. at 6). Servers also had the option of either taking a written write-up or reimbursing the Pub for the walk-out. (Pls. SOF ¶ 21; Pls. Ex. B – Michael Dep. at 63; Pls. Ex. C – Quigley Dep. at 48).[3]

Ms. Dominguez and Ms. Holdren seek partial summary judgment as to the defendants' liability for unpaid minimum wages and overtime. They contend that, at a minimum, Ms. Dominguez is owed 4.16 overtime hours for uncontested overtime work performed during the June 16-29, 2008 and the September 22-October 5, 2008 pay

---

[3] There is disagreement as to whether the Pub's walk-out policy allowed servers the option of taking a written write-up instead of reimbursing the Pub. Ms. Michael stated at her deposition that she "always had that option." (Defs. Ex. B – Quigley Dep. at 62). The Pub's written policy materials give servers the option of paying the amount of the walkout or choosing a written employee disciplinary form, instead of paying for the walk-out. The policy is equally clear that three written employee disciplinary forms is grounds for termination. (Defs. Ex. 6 – Pub Policies and Procedures at unnumbered page 5). Ms. Dominguez and Ms. Holdren contend that they were unaware of that option. (Defs. Ex. H – Holdren Dep. at 12; *see also* Defs. Ex. G – Dominguez Dep. at 6-12).

periods. The bulk of their claims, however, relate to unpaid amounts resulting from the defendants' use of the altered time records to calculate payroll. In a related claim, they contend that the Pub was not entitled to take a "tip credit" (i.e. to pay its servers at the lower "tipped employees rate") because the Pub did not meet the statutory prerequisites. Finally, they contend that the Pub's owners, Ms. Quigley and Ms. Michael, may be held individually liable as employers under the FLSA in addition to the Pub, itself.

The defendants have countered with their own motion for summary judgment, claiming that the Pub's records clearly indicate that Ms. Dominguez and Ms. Holdren were paid for any and all overtime they worked. The defendants do acknowledge that the time records show that 4.16 hours of overtime is due to Ms. Dominguez, but they insist that those amounts resulted from a mere bookkeeping error. They further contend that they are entitled to summary judgment on the question of the Pub's entitlement to take a tip credit because it provided adequate notice to its employees and its walk-out reimbursement policy did not prevent employees from keeping all their tips.

## ANALYSIS

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is critical to the determination of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816, 822 (7th Cir. 2010). A genuine issue of material fact exists, precluding summary judgment, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

248. The party seeking summary judgment must identify relevant portions from the pleadings, depositions, answers to interrogatories, admissions, or affidavits, which demonstrate the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the opposing party must respond by setting forth specific facts showing that there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 255.

In considering a motion for summary judgment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999)(internal quotations omitted). But inferences supported only by speculation or conjecture alone are insufficient to create a genuine factual issue. *Petts v. Rockledge Furniture LLC,* 534 F.3d 715, 720 (7th Cir. 2008). In other words, to defeat a summary judgment motion, the nonmoving party "'must do more than raise some metaphysical doubt as to the material facts; [it] must come forward with specific facts showing that there is a genuine issue for trial.'" *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 628 (7th Cir. 2006)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The same standard applies to cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.,* 293 F.3d 402, 404 (7th Cir. 2002); *see also Five Points Road Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008)("On cross-motions for summary judgment, we construe all facts and inferences

therefrom in favor of the party against whom the motion under consideration was made"). Each motion is to be evaluated independently, and "denial of one does not necessitate the grant of the other." *Local 710 I.B.T. Pension Fund v. United Parcel Serv., Inc.,* No. 02 C 4420, 2004 WL 2403123, at 3 (N.D.Ill. Oct. 26, 2004).

## A.
### Minimum Wage and Overtime Requirements Under the FLSA and IMWL

The FLSA requires employers to pay their employees a federal minimum hourly wage. 29 U.S.C. § 206(a)(1). In addition to these minimum wage requirements, an employee must be paid an overtime rate of at least one and one-half times the employee's regular wage for any hours worked in excess of forty hours in one week. 29 U.S.C. § 207(a). The IMWL similarly requires that employees be paid at least the Illinois state minimum wage for all hours worked, 820 ILCS §105/4, and that employees receive a wage of not less than one and one-half times their regular rate for all hours of overtime work. 820 ILCS §105/4(a). Where an employee is subject to both the state and federal minimum wage laws, as is the case here, the employee is entitled to the higher of the two minimum wages. 29 U.S.C. § 218(a). Claims brought under the FLSA and IMWL are evaluated using the same general analysis. *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010) (*citing Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993)); *see also* Ill. Admin. Code tit. 56, pt. 210.210 (2009) (FLSA regulations are to be used as guidance in interpreting the IMWL).

## 1.
## Uncontested Overtime Amounts Due

Notwithstanding any minimum wage and overtime amounts owed resulting from the alteration of the Pub's time records, the uncontested evidence indicates that Ms. Dominguez is at least owed overtime wages for work performed during the pay period starting June 16, 2008 and ending June 29, 2008 and the pay period starting September 22, 2008 and ending October 5, 2008.  (Pls. SOF ¶¶  27, 28).  During the September 22 pay period, the Pub's time records show that Ms. Dominguez worked a total of 74.37 hours, 3.45 hours of which were overtime.  (Pls. SOF ¶ 27).  However, Ms. Dominguez's payroll records and pay stubs indicate that she was only paid for 70.92 hours at the regular server rate and was not paid for the 3.45 hours of overtime. (Pls. SOF ¶ 27). Similarly, the Pub's records show for the June 16 pay period Ms. Dominguez was not paid .71 hours of overtime.  (Pls. SOF ¶ 28).

The defendants do not deny that they owe Ms. Dominguez overtime for these two pay periods.  Rather, they claim that the unpaid amounts are the result of inadvertent errors made by the Pub's bookkeeper.  (Defendants' Response to Plaintiffs' Motion for Summary Judgment ("Defs. Resp.") at 5).  The defendants contend that the errors, which they claim were never brought to the Pub's attention, were neither intentional nor systematic and do not amount to a violation of any laws with respect to overtime.  (*Id.*). But, the FLSA's requirement that employers pay employees an overtime wage does not condition recovery on a defendant's intent. 29 U.S.C. §207. An employer must compensate its employees for all hours for which it knows or has reason to believe that work is being performed.  *See* 29 C.F.R. § 785.12.

14

It is no answer to suggest, as the defendants do here, that the potential damages are relatively low – 4.16 hours of overtime in all – and that the claims here "are not the kind of injuries that the FLSA and IMWL seek to remedy." (Defs. Resp. at 5-6). The argument fails to account for any of the other claimed minimum wage and overtime violations (discussed in the following section), which the plaintiffs contend resulted from their "off the clock work."

Thus, summary judgment is granted in favor of the plaintiffs on the question of the defendants' liability for the unpaid overtime amounts due to Ms. Dominguez during the June 16 -29, 2008 pay period and the September 22 - October 5, 2008 pay period.

## 2.
## Minimum Wages and Overtime Due From Plaintiffs' "Off the Clock" Work

It is the employer's duty to make, keep and preserve accurate records of its employees' wages, hours and other conditions and practices of employment. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946);[4] 29 U.S.C. § 211(c); 820 ILCS 105/8. If an employer fails to maintain accurate records of the hours worked by its employees, an employee may successfully claim unpaid wages by proving that he or she has in fact performed work for which they were improperly compensated, and if the plaintiff produces sufficient evidence to show by reasonable inference the amount and extent of that work. *Mt. Clemens Pottery Co.,* 328 U.S. at 687. Where the employer does not come forward with evidence of the precise hours worked or with evidence to negate the reasonableness of the inferences drawn from the employee's evidence, damages may be awarded, even though the damages may be only approximate. "'[I]t

---

[4] This case has been superseded by statute on other grounds. *Carter v. Panama Canal Co.,* 463 F.2d 1289, 1293 (D.C. Cir.), *cert. denied,* 409 U.S. 1012 (1972).

does not come with very good grace for [a] wrongdoer to insist upon specific and certain proof of the injury it has itself inflicted,'" *Sure-Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 910 (1984), and the proof of which it has, itself, precluded. This is how the Supreme Court put it in *Mt. Clemens Pottery*:

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of §11(c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

328 U.S. at 687-688 (citations omitted).

The evidence in this case reveals that the defendants failed to maintain accurate records of the hours the plaintiffs actually clocked-in and clocked-out of work. The defendants admit – and the available computer records clearly reflect – that the Pub and its managers frequently altered employee time records by changing the actual times at which the employee clocked-in and clocked-out to instead reflect the times that the employee was supposed to begin and end his/her scheduled shift. (Pls. SOF ¶¶ 11, 12, 13). The Pub then used the altered time records to calculate Ms. Dominguez's and Ms. Holdren's weekly wages. (Pls. SOF ¶¶ 14, 15).

Between August 30, 2006 and April 27, 2008, Ms. Dominguez's time records were changed 163 times. (Pls. SOF ¶ 17). During that time, her clock-in time was adjusted 127 times, and her clock-out time was changed 36 times. (Pls. SOF ¶ 17). Taking into account that Ms. Dominguez did not work at the Pub between November 10, 2006 and March 30, 2007, the plaintiffs calculate that the defendants changed Ms. Dominguez's time records on an average of approximately two and one-half times per week between August 30, 2006 and April 27, 2008. (Pls. Motion at 5-6). Specifically, the changes resulted in a loss of 1,034 total minutes up to April 27, 2008, or an average of 19.88 minutes per week. (Pls. Motion at 11, *citing* Pls. SOF ¶ 17).

After April 27, 2008, the exact number of times that Ms. Dominguez's time records were altered cannot be determined because the Pub had switched to the 24 X 7 computer system, which no longer maintained a log of the changes made to server time records. (Pls. SOF ¶ 11). Likewise, any changes made to Ms. Holdren's records during the course of her employment were not tracked, since the Pub began using the 24 X 7

17

system at or near the time Ms. Holdren began working. (Pls. SOF ¶ 11). Nevertheless, the defendants admit that they continued to alter Ms. Dominguez's time records with the same frequency after April 27, 2008, and that they also altered Ms. Holdren's time records throughout her employment. (Pls. SOF ¶ 11, 17, 18).

Both Ms. Dominguez and Ms. Holdren insist that they began working as soon as they clocked-in, and that they continued to perform work until clocking-out for the day. But because the Pub used the altered time records to calculate payroll, they claim they were shorted the actual minutes for which they were "clocked-in" and worked. (*See* Pls. Motion at 5-6). Overtime pay is also claimed, to the extent that the additional minutes resulted in the plaintiffs working over 40 hours in one week. (*Id.* at 11-12).

Citing not a single case in their Response, the defendants advance several vague arguments in opposition to the Motion for Summary Judgment. The arguments in the defendants' own Motion for Summary Judgment are nearly identical and are equally unavailing. Both are considered together.

First, the defendants suggest that any claims for unpaid minimum wages and overtime under the FLSA and IMWL are barred because the plaintiffs did not specifically allege in their complaint facts related to the defendants' changing the clock-in and clock-out times and the Pub's walk-out policy. (Defs. Resp. at 2; Defs. Motion at 12). Not only is the argument undeveloped and unsupported by relevant authority, it also seems to overlook these portions of the Complaint and Amended Complaint that state, among other things, that "[a]s a result of Defendants' uniform reimbursement policy, the servers and bartenders are not able to retain their tips." (Complaint ¶ 17, 18; Amended Complaint ¶¶ 18, 19).

18

To the extent that the Amended Complaint does not explicitly state that the defendants altered Ms. Dominguez's or Ms. Holdren's clock-in and clock-out times, it is clear from the facts which *are* alleged that sufficient notice of the nature of the plaintiffs' claims under the FLSA and IMWL is provided. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) (a complaint need not allege all of the facts essential to recovery under a particular legal theory and a plaintiff may substitute one legal theory for another without altering the complaint).

More importantly, this argument is in essence an objection to the sufficiency of the complaint under Rule 12(b)(6), not an appropriate response to a motion for summary judgment. *Cf. Bartholet v. Reinhauser A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Complaints in a system of notice pleading initiate the litigation but recede into the background as the case progresses"). And finally, the argument is skeletal and unsupported and is therefore waived. *See e.g., United States v. Collins,* 604 F.3d 481, 488, n. 2 (7th Cir. 2010); *White Eagle Co-opinion Ass'n v. Conner,* 553 F.3d 467, 476 n. 6 (7th Cir. 2009)(collecting cases); *Fabriko Acquisition Corporation v. Prokos,* 536 F.3d 605, 609 (7th Cir. 2008); *Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F.Supp.2d 705, 717 (N.D.Ill. 2009)(collecting cases).

The defendants next contend, in their own Motion for Summary Judgment, that Ms. Dominguez and Ms. Holdren were properly paid for any minimum wage or overtime amounts due. (*See* Defs. Motion at 4-6). They argue that, despite the plaintiffs' claims to the contrary, the Pub's time records and pay stubs demonstrate that Ms. Holdren was not paid overtime because she did not work overtime. (Defs. Motion at 4). Similarly, the defendants argue that the time records "conclusively show" that Ms. Dominguez was

paid for all hours and overtime she worked. (Defs. Motion at 5-6). They then identify two pay periods (May19, 2008-June 1, 2008 and September 8, 2008-September 21, 2008) for which the Pub's records reflect that Ms. Dominguez worked and was paid overtime. (Defs. Motion at 6). The motion concludes the point by stating that "all of the records and deposition testimony prove that Dominguez was paid overtime." (*Id.*).

Apart from the fact that both Ms. Dominguez and Ms. Holdren stated at their depositions that they were not paid all the minimum wages or overtime due for work they performed, the argument conspicuously ignores the central thesis of the plaintiffs' claims – namely, that the Pub's time records were inaccurate as a result of the defendants' deliberate changes to the employee clock-in and clock-out times. The defendants admitted routinely changing both Dominguez's and Holdren's time records and using the altered records in calculating payroll, so it is baffling how the original records for which the defendants rely upon here could possibly "conclusively show" that the plaintiffs were compensated for any and all overtime amounts due. (*See* Defs. Motion at 5). Indeed, the motion fails to even address the issue of the altered time records, thereby ignoring the realities of the case and the main source of contention.[5]

The defendants' argument also misperceives the FLSA's record-keeping requirements and the employers' burden of proof with regard to work records at trial. They argue that the plaintiffs' evidence concerning the unpaid work time is insufficient because it is based solely on the plaintiffs' recollections, unsupported by any personal or business records provided by the plaintiffs. (*See* Defs. Motion at 4-6). Of course, an

---

[5] In their Response brief to Plaintiffs' Motion for Summary Judgment, the defendants do, at last, address altering the Pub's time records. They do so in a single page which is discussed below.

employee who seeks to collect unpaid wages or overtime must prove that the employer failed to compensate him for the work performed. *Brown v. Family Dollar Stores of Indiana*, 534 F.3d 593, 595 (7th Cir. 2008). But, "[t]he remedial nature of th[e FLSA] and the great public policy which it embodies.militate against making that burden an impossible hurdle for the employee." *Mt. Clemens Pottery Co.,* 328 U.S. at 687.

Where, as here, an employer's time records are inaccurate or inadequate, the employee may prove his claim by producing "sufficient evidence" to show that he performed work for which he was not compensated, and damages may be awarded based upon that evidence or any reasonable inferences to be drawn from it. *Mt. Clemens Pottery*, 328 U.S. at 687-88; *Fast v. Applebee's Intern., Inc.*, __F.3d__, 2011 WL 1496489, 8 (8th Cir.2011). Contrary to the suggestion of the defendants, sufficient evidence does not require that there be corroboration of an employee's testimony in the form of records created by the employee. "[I]t is the employer who has the duty under §11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy." *Mt. Clemens Pottery Co.,* 328 U.S. at 687; 29 U.S.C. § 211(c); 820 ILCS §105/8; 29 C.F.R. §516.2. In short, it is futile to attempt to rebut the plaintiffs' approximation of the hours they worked by relying on the absence of a form of proof the law does not require.[6]

---

[6] In most contexts, testimony standing alone, if believed, will be sufficient to carry the day. Indeed, a defendant in a criminal case may, consistent with proof beyond a reasonable doubt, lose his liberty (or his life) on the uncorroborated testimony of an admitted perjurer, a convicted felon, or an accomplice. *United States v. Wallace,* 32 F.3d 1171, 1173 (7th Cir.1994); *United States v. Beverly,*
(continued...)

The defendant's theory, if accepted, would effectively read into the Act a requirement not found either in its text or its legislative history. Thus, the cases are uniform in holding that an employee may satisfy his burden of proof under the Act by relying on his recollection alone. *See e.g., O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 602-03 (6th Cir. 2009); *Mumbower v. Callicott,* 526 F.2d 1183, 1186 (8th Cir.1975); *Padilla v. Manlapaz*, 643 F.Supp.2d 302, 309 (E.D.N.Y. 2009); *Ke v. Saigon Grill Inc.*, 595 F.Supp.2d 240, 250 (S.D.N.Y. 2008); *Turner v. Human Genome Science, Inc.,* 292 F.Supp.2d 738, 748 (D. Md. 2003).

The defendants next argue that using the times listed on employees' work schedules – instead of the actual clock-in and clock-out times – as the default for determining hours worked is a "necessary management tool" for controlling the Pub's payroll. (Defs. Resp. at 2). According to the defendants, this practice "does not violate the FLSA, IMWL, or any other law" and without it, "employers would be at the mercy of their employees." (*Id.* at 3). Not only is the contention unsupported by citation to any case, it falls short on several other levels as well.

In the first place, the defendants made the choice to pay Pub employees by the minute, and by using the altered time records to calculate payroll, the defendants did not account for the "off-the-clock" hours that Dominguez and Holdren say they worked. Under these circumstances, such a practice runs afoul of the plain mandate of the FLSA, which requires employers to pay employees a minimum wage – and overtime where

---

[6](...continued)
913 F.2d 337, 358 (7th Cir.1990), *aff'd on other grounds sub nom, Griffin v. United States,* 502 U.S. 46 (1991). In any kind of case, a party's uncorroborated testimony can suffice to create an issue of fact and defeat summary judgment. *See e.g., Berry v. Chicago Transit Authority,* 2010 WL 3294720, 3 (7th Cir. 2010). It would be odd, to say the least, if an FLSA plaintiff could not, as a matter of law, prevail unless there were evidence corroborating his or her rendition of events.

applicable – for all hours *worked*. 29 U.S.C. § 206(a); *see also U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir. 1995) (employer failed to properly compensate employees where the employer recorded only the scheduled shift hours on employee time sheets, not their actual hours worked).

Contrary to their argument, the defendants' policy of adjusting the employees' actual clock-in and clock-out times was not the only practical way of determining payroll. Of course, the Pub "cannot monitor every employee and determine the millisecond each employee actually begins and finishes working." (Defs. Resp. at 3). But the answer to a self-willed employee, who chooses to set his or her own schedule, is to discipline or fire the employee. An employer has a further option of adopting a valid rounding policy instead of choosing to pay employees by the minute. *See* 29 C.F.R. § 785.48(b). It is not, however, to refuse to pay for time actually worked.

Similarly, the defendants also seem to hint that Ms. Dominguez's and Ms. Holdren's "off the clock" work was unauthorized because it exceeded scheduled hours and is thus not compensable. The argument does not extend beyond a single sentence assertion that the Pub's "[w]ork schedules are set and employees are only authorized to work during that time." There is no citation to any evidence in the record either that the Pub had such a policy or that the plaintiffs knew they were not authorized to work any time beyond their scheduled hours. Neither do the defendants cite to any case which might clarify or support their argument. Unsupported statements in briefs do not count. *See IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir. 2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003).

23

Even assuming *arguendo* that the defendants had produced evidence showing that Ms. Dominguez and Ms. Holdren were in violation of Pub policy by working beyond the hours they were authorized and scheduled to work, the defendants would still not be entitled to summary judgment.  It is the obligation of management to exercise control and see that unauthorized work is not performed.  *Cole Enterprises, Inc.*, 62 F.3d at 779-780. Management cannot "sit back and accept the benefits [of work] without compensating for [it]."  29 C.F.R. § 785.13.  "The mere promulgation of a rule against [unauthorized] work is not enough.  Management has the power to enforce the rule and must make every effort to do so."  *Id.* "Work not requested but suffered or permitted is work time.  The employer knows or has reason to believe that he is continuing to work and the time is working time."  29 C.F.R. § 785.11.

The only remaining argument is the defendants' claim that Ms. Dominguez would regularly clock-in earlier than scheduled and then sit down and have a meal at the Pub, and that she would regularly change clothes before clocking-out.  (Defs. Resp. Brief at 3).  The implicit assertion and implication is that Ms. Dominguez (and Ms. Holdren) are not owed any backpay because they were not working  between the time they clocked-in and

 the beginning of their shifts.[7]  There are several flaws in the argument.

First, the support for the contention is the deposition testimony of the individual defendants. The reference, however, appears nowhere in the Defendants' Statement of

---

[7] Indeed, Ms. Quigley testified at her deposition that Ms. Dominguez was "notorious" for coming in early, sitting down and having a meal while being clocked-in and for getting dressed while still on the clock. (Defs. Ex. C at 41). This testimony is inadmissible.  At a trial, the defendants will be free to adduce whatever relevant and admissible evidence they might have showing that the plaintiffs did not, in fact, work from the moment they clocked-in to the moment they clocked-out.

24

Material Facts and, thus, ought not be relied upon. *Bay Area Business Council.,* 423 F.3d at 633. Second, Ms. Quigley admitted that she could not say for sure that the plaintiffs were not actually working from the time they clocked-in. (Defs. Ex. C – Quigley Dep. at 43). Third, since employers obviously cannot monitor every millisecond of every employee's time, as the defendants, themselves, have emphasized (Defs. Resp. at 3), any adjustment at this point is impossible and will invariably deprive the plaintiffs of their entitlement to be paid for the time actually worked – whatever that may be.

Fourth, the defendants' failure to have responded to the plaintiffs' Rule 56.1 Statement results in the plaintiffs' statements concerning beginning work as soon as they clocked-in and continuing to work until they clocked-out being admitted. (Pls. SOF ¶¶ 9, 10). *See Montano,* 535 F.3d at 569; *Cracco,* 559 F.3d at 632; *Cady,* 467 F.3d at 1061; *Bay Area Business Council, Inc.,* 423 F.3d at 633. Fifth, even if the defendants had timely submitted the evidence on which they belatedly relied, their argument would still be unconvincing. More is required to create a genuine issue of material fact than vague speculations which do no more than raise a metaphysical doubt about the other side's evidence. Here, the best Ms. Quigley could say was that Ms. Dominguez "sometimes" came to work early and had a meal before her scheduled shift. And, she went on to say that since she was not always at the Pub, she could not disagree "for sure" with Ms. Dominguez's contentions that she always began work at the time she clocked-in. (Defs Ex. C – Quigley Dep. at 39-40, 44-45).[8]

Finally, it is uncontested that Ms. Dominguez was never disciplined for clocking-in early, even though the defendants were adamant that an employee would be written up

---

[8] The contention seems only to apply to Ms. Dominguez, since Ms. Holdren is not even mentioned in the defendants' testimony on the point.

for repeatedly violating certain "minor" policies, such as clocking-in early and not working – the very pattern of behavior they accuse the plaintiffs of having engaged in. (Pls. SOF ¶ 16).

Having said this, it still would not be appropriate to grant summary judgment to the plaintiffs on their claim for unpaid wages and overtime. The undisputed evidence on the present record is that the plaintiffs' time cards and pay were adjusted on 163 separate occasions -- in Ms. Dominguez's case over a period of two years. In all that time, the plaintiffs never complained of what is now alleged to be improper recalculations of their working hours and thus the consistent underpayment of wages and overtime. And, in the face of these allegedly impermissible recalculations and salary deprivations, the plaintiffs not only did not complain, they say they continued to come to work early, clock-in, and immediately begin working. "[U]nder a realistic appraisal of psychological tendencies and human weakness," *Withrow v. Larkin,* 421 U.S. 35, 47 (1975), a reasonable jury could find it implausible that the plaintiffs would continue to work for free and without complaint.

This, alone, is enough to create a disputed issue of material fact. Of course, the evidence is circumstantial, but circumstantial evidence can create questions of fact that preclude the entry of summary judgment, *Hunt v. Cromartie*, 526 U.S. 541, 552-53 (1999), and circumstantial evidence is often more certain, satisfying and persuasive than direct evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). Cf., *Branion v. Gramly*, 855 F.2d 1256 (7th Cir. 1988)("The evidence was circumstantial, but what circumstances!"). This is not to suggest that the plaintiffs may not well prevail at trial. It

is merely to say that there is evidence in the record, viewed as a whole, which precludes the summary disposition sought by the plaintiffs.

We now consider whether the defendants were entitled to a tip credit under the FLSA.

## B.
### The Tip Credit

Both the FLSA and IMWL permit employers to pay "tipped employees" at an hourly rate less than the minimum wage. 29 U.S.C. § 203(m); 820 Ill. Comp. Stat. 105/4(c). A tipped employee is an employee who "customarily and regularly receives more than $30 a month in tips."[9]  *Fast v. Applebee's Intern., Inc.*__F.3d__, 2011 WL 1496489, 2 (8th Cir.2011); 29 U.S.C. § 203(t). Through a practice known as taking a "tip credit," employers may pay tipped employees a cash wage equal to the applicable statutory rate for tipped employees, so long as the wages paid combined with the employees tips add up to at least the minimum wage. 29 U.S.C. § 203(m). The effect of the tip credit is that the employer is allowed to credit a portion of an employee's tips towards its minimum wage obligation by using the tips to make up the difference between the lower tipped employee rate and the standard minimum wage that would otherwise be owed.  *See Fast v. Applebee's Intern., Inc., supra.*

An employer may only claim a tip credit if: 1) the employee has been informed of the employer's intent to take a tip credit, and 2) all earned tips received by the employee are retained by the employee. 29 U.S.C. § 203(m).  *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010); *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d

---

[9] No argument is made that either Ms. Dominguez or Ms. Holdren did not receive more than $30 in tips per month. Thus, it is conceded that they are "tipped employees" for purposes of the tip credit.

294, 298 (6th Cir. 1998). The employer bears the burden of proving its entitlement to the credit. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Driver*, 265 F.R.D. at 298; *Chung v. New Silver Palace Rest., Inc.,* 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002). If the employer fails to satisfy either of the two preconditions, the tip credit "'may not be claimed, regardless of whether employees suffered actual economic harm as a result." *Solis v. Min Fan Yang*, 345 Fed.Appx. 35, 38 (6th Cir. 2009). *See also Cumbie*, 596 F.3d at 580; *Richard v. Marriott Corp.,* 549 F.2d 303, 305 (4th Cir. 1977); *Chung*, 246 F.Supp. at 229.

The plaintiffs contend that there are genuine issues of material fact with regard to whether Ms. Dominguez and Ms. Holdren received proper notice of the tip provisions, and whether their wages plus tips equaled at least the minimum wage. (Pls. Motion at 7). The defendants, of course, have a different view. But apart from disputed factual issues, the plaintiffs advance several arguments as to why the Pub, as a matter of law, is barred from taking a tip credit.

## 1.

The first contention is that a precondition to a tip credit is compliance with those sections of the FLSA that require an employer to pay the minimum wage and overtime. Since, they say, the Pub did not pay them for the off-schedule hours they actually worked, the Pub cannot take a tip credit. An argument identical to that advanced by the plaintiffs was rejected after careful analysis in *Goldin v. Boce Group L.C.*, _F.Supp.2d_, 2011 WL 1157618, 2 (S.D.Fla. 2011). Judge King's conclusion in *Goldin* was supported by *Muldowney v. Mac Acquisition, LLC,* 2010 WL 520912 (S.D.Fla. 2010) and *Perez v. Palermo Seafood, Inc.,* 2008 WL 7505704 (S.D.Fla. 2008). In essence, these cases

recognized the lack of any textual or contextual relationship between the tip credit provision of the FLSA and those provisions of the Act that mandate payment of minimum and overtime wages and delineate the remedies for their violation.  Section 216(b) limits damages against an employer who violates §206 or §207 of the Act by failing to pay the appropriate minimum wage or overtime to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages."  Neither §216(b) nor any other section of the Act prescribes loss of an otherwise valid tip credit as the consequence of or a remedy for a §206 or §207 violation.

The plaintiffs' contention that such a violation results of its own force in what is effectively a forfeiture of the tip credit cannot be given credence unless we are to ignore basic principles of statutory construction. "[W]here Congress has provided 'elaborate enforcement provisions' for remedying the violation of a federal statute.'it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under the statute.' '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'"  *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 487-488 (1996)(bracket in original). Judges do not have the power to engraft onto statutes provisions, conditions, or limitations that Congress chose not to create. *Honig v. Doe,* 484 U.S. 305, 325 (1988); *Harris v. Garner,* 216 F.3d 970, 976 (7th Cir. 2000).

*Chisolm v. Gravitas Rest. Ltd.*, 2008 WL 838760, 2 (S.D. Tex. 2008), on which the plaintiffs rely, is not to the contrary.  There, the court said that an employer may only take the tip credit if it: (1) pays a cash wage of at least $2.13 per hour; (2) informs its

29

employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips; and (4) ensures that the cash wage plus the tip credit equal at least the minimum wage each week. Section 203(m) was cited as the authority for this statement. *See* 2008 WL 838760, 2. From this general statement, the plaintiffs argue that an employer who shorts an employee on the hours actually worked cannot take a tip credit.

This overly literal approach to the reading of cases is fraught with risk and is one the Supreme Court and the Seventh Circuit have warned against time and again. *See Cohens v. Virginia*, 19 U.S. 264, 399 (1821)(Marshall, C.J.)("It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."); *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1342 (7th Cir.1977). Judicial opinions, they remind us, are not to be parsed as though we are dealing with the language of a statute. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979).

Even where "[l]anguage in some lower-court cases could be read to suggest" a specific result, it "is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1026 (7th Cir. 2006). "[I]n a system of case law such statements can be misleading if carelessly lifted from the case-specific contexts in which they were originally uttered." *All-Tech Telecom v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999). *See also Penry v. Lynaugh*, 492 U.S. 302, 358 (1989)(Scalia, J., concurring and dissenting in part)("One must read cases, however, not in a vacuum, but in light of their facts"); *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.,* 414 F.3d 700, 705 (7th Cir. 2005)("Although we stated in *Panoramic* that damages would not

adequately remedy a permanent loss of jobs, that language must be read in context.");
*Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 920 (7th Cir. 2003)("Although the Illinois courts have employed language that, read alone, might suggest that the judicial sale does not actually occur until confirmation, these cases must be read in the context of the entire statutory scheme.  To read the Illinois courts' statements out of context would frustrate the operation of that scheme.").

The decision in *Chisolm* against the employer was based solely on the fact that the employees were not permitted to retain their tips as §203(m) requires.   While seemingly listing four factors that must be satisfied under §203(m), the opinion did not analyze – because it did not have to – whether there was some interplay between the tip credit provision of the FLSA, the various provisions related to underpayment of wages and overtime, and the remedial provision – §216(b) – that comes into play where an employer has underpaid an employee.   Yet, prior cases have precedential value only when there has been a deliberative consideration of the issue at hand.  *Sub-silentio* or assumptive resolution is not enough.  This is a principle that finds expression as far back as the opinions of Chief Justice Marshall, *United States v. More*, 7 U.S. 159, 172 (1805), and has been adhered to ever since.  *See e.g., Republic of Austria v. Altmann*, 541 U.S. 677, 733 (2004); *Illinois v. Lidster*, 540 U.S. 419, 424 (2004); *Lopez v. Monterey County*, 525 U.S. 266, 281 (1999); *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *Aurora Loan Services, Inc*., 442 F.3d at 1026. In short, *Chisolm* does not support the plaintiffs' argument.

Cases decided after *Chisolm* have not read it as requiring compliance with the minimum wage and overtime requirements as a precondition to the entitlement to the tip

credit. Rather, they hold that that entitlement is a function of proper notice to the employee and the employee's retention of tips – the only requirements prescribed by §203(m). *See e.g.*, *Eggelston v. Sawyer Sportsbar, Inc*., 2010 WL 2639897, 1 (S.D.Tex. 2010)("An employer seeking to use the tip credit must first notify its employees of the statutory basis for the practice [and]all tips received by such employee have been retained by the employee"); *Pedigo v. Austin Rumba, Inc*., 722 F.Supp.2d 714, 721 (W.D.Tex. 2010)("the employer is required to satisfy the following two statutory prerequisites in order to utilize the "tip credit" allowance: (1) the employer must inform the employee of the provisions in section 203(m); and (2) all tips received by an employee must be retained by the employee.  If the employer fails to meet either of these requirements, it is not eligible to claim the tip credit, and in such a case, the employer must pay each employee the full minimum wage of $7.25 an hour that is required under section 206.");*Rousseau v. Frederick's Bistro, LTD,* 2010 WL 1425599, 2 (W.D.Tex.)("The two requirements [notice and retention of tips] must be satisfied if an employer is to be eligible for the tip credit, and if the requirements are not satisfied, the full minimum wage must be paid to the employee."); *Pedigo v. Austin Rumba, Inc*., 722 F.Supp.2d 714, 721 (W.D.Tex.2010)(an employer is entitled to a tip credit only where "the following two conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA; and (2) tipped employees must retain all the tips received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m)"); *Bernal v. Vankar Enters.,* 579 F.Supp.2d 804, 807-808 (W.D.Tex. 2008)("The FLSA thus imposes two 'predicates that must be satisfied even if the employee received tips at least equivalent to the minimum

wage.'.Thus, the issue the Court must consider is whether Defendants satisfied the two prerequisites of section 203(m)."); *Scherrer v. S.J.G. Corp.*, 2008 WL 7003809, 1 (W.D.Tex.2008). *See also* cases cited at 27-28, *supra*.

### 3.

The plaintiffs' next argue that the defendants were not entitled to take a tip credit because Pub servers, including the plaintiffs, were unable to retain all their tips as a result of the defendants' policy requiring servers to reimburse the Pub for customer walk-outs. (Pls. Motion at 8). The defendants contend, both in their own motion and in their reply brief, that they are entitled to summary judgment on the issue, since the Pub's walk-out policy did not require servers to reimburse the Pub in any particular way, and the plaintiffs were allowed to keep all their tips. (Defs. Motion at 12).

The evidence shows that the defendants had a policy requiring its servers to reimburse the Pub for customer walk-outs. However, the Pub claims that its servers were not required to make reimbursements out of their tips, and that it gave servers the option of taking a written write-up instead of making a reimbursement. Although the Pub's written "Policies and Procedures" materials reflects that position, (Defs. Ex. 6 at unnumbered page 5), Ms. Holdren did not recall being told that there was an alternative to reimbursing the Pub – namely the option to take a write-up. (Pls. Ex. L – Holdren Dep. at 12). Ms. Dominguez did not state either way whether she was aware of the write-up option, but rather said that she relied on "verbal policies," which were simply that servers were "responsible [for] cover[ing] the walk-out." (Pls. Ex. G – Dominguez Dep. at 6). The defendants offered no proof that the plaintiffs were given copies of the policies and procedures. *Cf. Holder v. MJDE Venture, LLC,* 2009 WL 4641757, 2 (N.D.Ga.

2009) ("The Defendants also say they provided proper notice because they had a written policy [b]ut do not point to any evidence that they gave a copy of this policy to the Plaintiff.").

Both plaintiffs said that they had reimbursed the Pub for the walk-outs out of their tips, although Ms. Holdren said it only occurred once, while Ms. Dominguez said it occurred multiple times, but did not recall how many. Her testimony was that she made the reimbursements "on her own," because she thought if she didn't it might affect her work schedule or the job itself. (*See* Pls Ex. G at 7; Defs. Ex. G – Dominguez Dep. at 6-12). The Pub keeps no records of server reimbursement, and neither Ms. Quigley nor Ms. Michael had any specific knowledge of the plaintiffs reimbursing the Pub. Neither of the plaintiffs claimed that any of the defendants ever told them that the reimbursement for a walk-out had to come from tips. And nor did they say that they had that understanding from some other source. (*See* Pls Ex. L at 11-12 and Defs. Ex. H – Holdren Dep. at 12).

Here, as with other issues in the case, uncertainty in the record counts against the party on those issues where it or they have the burden of proof. The defendants bear the burden of establishing that the Pub's servers retained all of their tips in keeping with the requirements of the FLSA's tip credit provision. Given the present state of the record, there remain genuine factual disputes regarding whether Ms. Dominguez and Ms. Holdren were required to reimburse the Pub out their tips.

**4.**

This leaves the question of whether the Pub adequately informed plaintiffs of its intention of taking a tip credit. To satisfy the FLSA's tip credit notice requirement, an

employer "must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation." *Kilgore*, 160 F.3d at 298; *see also Tango's Rest., Inc.*, 969 F.2d at 1322. But the FLSA does not prescribe the form the notice must take, and *Kilgore* held that an employer need not necessarily explain the tip credit provision to provide adequate notice to the employee under the statue. An employer may meet the notice requirement by providing its employees with written materials describing the employer's tip policy. *Kilgore*, 160 F.3d at 298-99. An employer can also convey notice by way of a prominently displayed poster containing information about the tip credit provision. *See Davis v. B & S, Inc.*, 38 F.Supp.2d 707, 719 (N.D. Ind. 1998), *Marshall v. Gerwill, Inc.*, 495 F.Supp. 744, 753 (D. Md. 1980); *Bonham v. Copper Cellar Corp.*, 467 F.Supp. 98, 101 n.8 (E.D. Tenn. 1979). It has even been held that information conveyed through co-workers was sufficient notice. *Davis*, 38 F.Supp.2d at 719.

Here, Ms. Dominguez and Ms. Holdren admit that the Pub posted wage and hour posters "in plain view." Furthermore, at least one pub manager testified that, during the hiring process and afterwards, he conveyed information to the plaintiffs about the difference between the regular minimum wage and the server minimum wage. (Defs. Ex. D – Baggett Dep., 19, 39). And the plaintiffs admit that they were told at the time they were hired that they would be paid the lower "server rate," rather than the higher federal minimum wage, and that their paychecks reflected the reduced server wage. (*Id.*). However, they deny that they were affirmatively told that the Pub intended to take a tip credit, or that they were being paid the lower server rate because their tips would be "counted towards the minimum wage." (Pls. SOF ¶ 30); (Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Pls. Resp.") at 9).

35

The plaintiffs were also informed by written memoranda of increases in that rate and the minimum wage whenever there were changes. (*Id.*). The memoranda noted any applicable increase to the tipped employee minimum wage and directed employees to further information posted on the office door and on the Federal and State wage and hour posters located by the schedule board. (Defs. Ex. A, 83). The June 11, 2009 memorandum stated that "[t]he difference between the minimum wage on regular earnings v. tipped employees is the tip credit (tips collected by employees)." (Defs. Ex. A)(parenthetical in original). A number of cases have concluded under similar facts that there the notice satisfied § 203(m). *See Kilgore*, 160 F.3d at 298 (affirming summary judgment where plaintiffs admitted receiving written notice of the restaurant's tip policies, but denied that the tip credit provision were ever explained to them).

*Garcia v. Palamino, Inc.*, 2010 WL 3613923, at 5 (D. Kan. 2010), on which the plaintiffs rely, does not support a different result. In *Garcia*, the defendant had failed affirmatively to inform plaintiffs that it intended to take a tip credit. Yet, the court did not grant the plaintiff's motion for summary judgment because the evidence was that the defendant had informed the plaintiffs that they would be paid the lower tipped employee rate, which was reflected in their paychecks, and the defendant had hung up a poster regarding the minimum wage in an area that the plaintiffs routinely frequented. *Garcia*, 2010 WL 3613923, at 5.

"Based on these facts," *id.*, the court found that a reasonable jury could conclude that the defendants informed the plaintiffs of their intent to treat tips as satisfying part of their minimum wage obligations. If the plaintiffs are right, "these facts," which also exist here, would have been analytically meaningless, and the plaintiffs' motion would have

been granted, not denied. In short, *Garcia* undercuts rather than supports the arguments advanced in this case.

While the instant case is a close one, and there certainly is a basis to grant the defendants' motion for summary judgment on the question of whether the plaintiffs received notice of the Pub's intention to take a tip credit, there are arguably material facts in dispute. Accordingly, summary judgment is denied on the issue of notice. There also remain genuine issues of material fact with regard to whether the plaintiffs were allowed to retain their tips under the Pub's reimbursement policy. The plaintiffs' Motion for Summary Judgment on this issue is denied.

## C.
### Defendants' Individual Liability Under the FLSA

Under the FLSA, an "employer" is "any person [who acts] directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d). Those with supervisory authority over employees may be held individually liable as employers under the FLSA if they were either responsible in whole or in part for the alleged violation. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); 29 U.S.C. § 203(d). A corporate officer with operational control over an employing entity falls within the definition of an individual with supervisory authority. *See U.S. Dept. of Labor v. Cole Enterprises Inc.*, 62 F.3d 775, 778-779 (6th Cir. 1995)(company president and owner liable where he was engaged in running the business including scheduling, payroll, and hiring of employees)*; Alice v. GCS, Inc.*, 2006 WL 2644958, 5 (N.D. Ill. 2006)(corporate president with control over the plaintiff's compensation and hours held individually liable for failure to pay overtime); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F.Supp.

920, 923 (N.D. Ill 1989)("an individual who controls corporate operations (and the terms and conditions of employees' employment therein) is an 'employer' under the FLSA")(parenthesis in original).

Ms. Quigley and Ms. Michael, as the owners of the Pub, were involved in its day-to-day business operations and exercised supervisory control over almost every aspect of its operations. They had direct control over the plaintiffs' time records and compensation, (*See* Pls. SOF ¶ 5), and had the authority to hire and fire employees, direct and supervise their work, were signatories on the Pub's checking accounts, including payroll accounts, and made decisions regarding employee compensation and capital expenditures. (Pls. SOF ¶ 5). In addition, they had access to and changed or caused changes to employees' time records on the Pub's computer system. (Pls. SOF ¶ 5).

The defendants do not advance any argument that they are not personally liable under the FLSA. Indeed, they do not even address the issue, thereby wisely implying concession. *See Midwest Generation EME, LLC v. Continuum Chemical Corp.,* 2010 WL 2517047, 8 (N.D.Ill. 2010)(collecting cases). Accordingly, summary judgment is granted in favor of the plaintiffs on the issue of Ms. Quigley's and Ms. Michael's individual liability under the FLSA.

## CONCLUSION

Defendants' Motion for Summary Judgment [59] is DENIED. Plaintiffs' Motion for Summary Judgment [61] is GRANTED on the issue of the defendants' liability for the uncontested amounts due as wages or overtime to Ms. Dominguez for the June 16-29, 2008 and the September 22-October 5, 2008 pay periods. The Motion is also GRANTED

on the issue of Ms. Quigley's and Ms. Michael's individual liability as employers under

the FLSA.  However, the plaintiffs' Motion is DENIED as to all other issues.

ENTERED:_____

UNITED STATES MAGISTRATE JUDGE

DATE: 5/24/11