# Exhibit
# A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| MELODY DOMINGUEZ, STEPHANIE HOLDREN, and all other Plaintiffs similarly situated known and unknown,<br><br>Plaintiff,<br><br>v.<br><br>QUIGLEY'S IRISH PUB, INC., NANCY QUIGLEY, and MICHELLE MICHAEL, individually,<br><br>Defendants. | No. 09 CV 2583<br><br>Magistrate Judge Cole |

## LOCAL RULE 54.3(e) JOINT STATEMENT REGARDING PLAINTIFF'S ATTORNEYS' FEES AND EXPENSES

Having conferred pursuant to Local Rule 54.3, the parties submit the instant Local Rule 54.3(e) Joint Statement Regarding Plaintiff's Attorneys' Fees and Expenses:

1. Plaintiff, Melody Dominguez, claims attorneys' fees of $98,872.50 and recoverable, non-taxable expenses of $3,943.07 through final settlement in the above-captioned matter. Plaintiff has provided a copy of her detailed underlying hourly billing records to Defendants, along with all other information required under Local Rule 54.3, and has calculated the attorneys' fees portion of his claim as follows:

| Attorney | Billable Hours | Hourly Rate | Total |
|---|---|---|---|
| Alejandro Cafferelli | 49.25 | $375 | $18,468.75 |
| Marc J. Siegel | 4.25 | $375 | $1,593.75 |
| Bradley Manewith | 262.75 | $290 | $76,197.50 |
| Lorraine T. Peeters | 3.5 | $240 | $840.00 |
| Madeline K. Engel | 1.75 | $190 | $332.50 |
| Joanna Germann Zalewski (paralegal) | 8 | $120 | $960.00 |
| Lennie Moscoso-Smith (paralegal) | 4 | $120 | $480.00 |
| **TOTAL** | **329.5** | N/A | **$98,872.50** |

1

2.      Defendants, having reviewed Plaintiff's underlying hourly billing records, do not object to the claimed hourly rates for Alejandro Caffarelli and Bradley Manewith as fair and reasonable.  Defendants likewise do not dispute that Plaintiff's counsel actually expended the hours reflected in the billing records.  However, Defendants object to the total amount of hours that Plaintiff's counsel have billed as excessive and unnecessary.  Defendants have raised no objection to Plaintiff's claimed costs of $3,943.07 as fair and reasonable, other than to the extent such costs relate to Stephanie Holdren.

3.      Specific disputes remaining between the parties are following:

      a.      Defendants object to any hours billed related to Stephanie Holdren.

      b.      Defendants object to any hours billed by Mr. Caffarelli that appear to be duplicative of work performed by Mr. Manewith.

      c.      Defendants object to all hours billed after Plaintiff's inspection of Quigley's Irish Pub ("the Pub") on May 18, 2010.  Defendants contend that, as of that date, Plaintiff's counsel knew or should have known: (i) Plaintiff was paid overtime based on the documents received during discovery; (ii) no overtime was shifted on the Pub's system, per Plaintiff's own expert; (iii) the Pub retained excellent records; (iv) adequate notice of the tip credit was given; and (v) no records existed that indicated the class of two (2) did not receive or keep their tips.

      d.      Defendants contend Plaintiff is not entitled to attorneys' fees under 29 U.S.C. § 216(b), as that statute and other "prevailing party" fee-shifting statutes are interpreted from relevant case law.

      e.      Defendants object to the claimed hourly rates for Marc J. Siegel, Lorraine T. Peeters, Madeline K. Engel, Joanna Germann Zalewski, and Lennie Moscoso-Smith.

**For PLAINTIFFS**

/s/ Bradley Manewith
Bradley Manewith
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Suite 3150
Chicago, IL 60601
Telephone: (312) 540-1230
Facsimile: (312) 540-1231

**For DEFENDANTS**

/s/ Jeffry J. Knuckles
Jeffry J. Knuckles
Nyberg & Cassioppi, LLC
1111 S. Washington St.
Naperville, IL 60540
Telephone: (630) 428-8888
Facsimile: (630) 428-8890

# Exhibit
# B

Westlaw.

Not Reported in F.Supp.2d, 2010 WL 1571192 (S.D.Fla.)
**(Cite as: 2010 WL 1571192 (S.D.Fla.))**

**H**
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. Florida.
Alissa LEVIN, et al., Plaintiffs,
v.
LEVANS, INC., et al., Defendants.

No. 08-61730-Civ.
March 15, 2010.

Michael Alan Levin, Weston, FL, for Plaintiffs.

### REPORT AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS (DE 34)

JAMES M. HOPKINS, United States Magistrate Judge.

**\*1 THIS MATTER** has come before this Court upon an Order Referring Plaintiffs' Motion for Attorney's Fees and Costs to the undersigned United States Magistrate Judge for a Report and Recommendation. (DE 36). Presently before the Court is Plaintiffs' Motion for Attorney's Fees and Costs (DE 34), Defendant Howard A. Levine's response (DE 37),[FN1] and Plaintiffs' reply (DE 43). The matter is now ripe for this Court's review.

> FN1. The corporate defendant, Levans Inc., did not file a response to the motion and Plaintiffs seek the entry of a default judgment for attorney's fees and costs against it. (DE 43).

### BACKGROUND

In October of 2008, Plaintiff Alissa Levin filed the underlying complaint on behalf of herself and other employees alleging that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay them their wages. (DE 1). Shortly thereafter,

on November 12, 2008, Defendant Levine filed a petition for bankruptcy in the United States Bankruptcy Court. (DE 10). *See In re Howard Levine,* 08-27202-RBR (Bkrtcy.S.D.Fla.2008). On November 25, 2008, the District Court, noting that the filing of a Chapter 13 bankruptcy petition required an automatic stay of the proceedings before it, ordered that the FLSA case against Defendant Levine be stayed. (DE 12).

Although Plaintiffs' FLSA action in this Court was stayed, the proceedings in Bankruptcy Court continued and Plaintiffs' counsel, Michael Levin, Esq., sought to have his clients' wages and liquidated damages, as well as his attorney's fees, treated as non-dischargeable priority claims based upon Defendant Levine's purportedly fraudulent conduct in failing to pay Plaintiffs' wages. Defendant Levine initially objected to each of these applications, although he later withdrew his objections to Plaintiffs' claims for their wages and liquidated damages, and maintained only his objection to the claimed attorney's fees receiving any priority. Ultimately, the Bankruptcy Court concluded that it could not resolve Levine's bankruptcy petition without a "judgment and determination" of Plaintiffs' counsel's fees by the District Court and it ordered that the stay be lifted. *See* Bankruptcy Court Order dated August 25, 2009. Accordingly, the District Court re-opened the FLSA case against Defendant Levine on September 29, 2009. (DE 25).

Shortly thereafter, the parties negotiated a settlement of Plaintiffs' FLSA claims, and the agreement was approved by the District Court on December 17, 2009. (DE 32). In the settlement agreement, Defendants stipulated that Plaintiffs are entitled to an award of reasonable attorney's fees and costs, and left the amount to be decided by the District Court. (DE 30, ¶ 7).

With the instant motion, Plaintiffs seek reimbursement for: (a) $26,530.00 in attorney's fees; and (b) $550.00 in costs. (DE 34). In his response

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1571192 (S.D.Fla.)
**(Cite as: 2010 WL 1571192 (S.D.Fla.))**

to the motion, Defendant Levine does not specifically object to the $350.00 hourly rate charged by Plaintiffs' counsel. (DE 37). However, Levine objects to Plaintiffs' attempt to seek reimbursement for fees incurred during the period that the stay was in effect. Levine also objects to purported "defects" in counsel's billing statements such as block billing, excessive time entries and the inclusion of clerical work.

*DISCUSSION*

*I. Plaintiffs' Motion*

 *2 As to Plaintiff's entitlement to attorney's fees, it is well settled that a court's "approval of a settlement ... is a judicially sanctioned change in the legal relationship of the parties." *Goss v. Killian Oaks House of Learning.* 248 F.Supp.2d 1162, 1167 (S.D.Fla.2003) (*citing American Disability Assoc. v. Chmielarz,* 289 F.3d 1315, 1320 (11th Cir.2002)). Thus, where a court approves a settlement under the FLSA and "specifically reserved the right to award attorney's fees, [the][p]laintiff is the prevailing party" and "the entitlement to attorney's fees is triggered." *Goss,* 248 F.Supp.2d at 1167. Here, the parties' court-approved settlement agreement specifically states that Defendants would pay Plaintiffs for their costs and reasonable attorneys' fees in an amount to be determined by the Court. (DE 30 at ¶ 7). Therefore, Plaintiffs' entitlement to such fees cannot be disputed.

 However, Defendant Levine now seeks to avoid paying a significant portion of Plaintiffs' counsel's fee, claiming that Plaintiffs are not entitled to reimbursement for time their attorney spent protecting their FLSA claims in Bankruptcy Court because there was a stay order in effect. This Court disagrees and finds that Plaintiffs are entitled to reimbursement of their attorney's fees for such time.

 Notably, it is not for this Court to decide whether or how the Bankruptcy Code applies to the fees sought by Plaintiffs' counsel. Rather, that issue will be resolved by the Bankruptcy Court. *See In re*

*Community Lending. Inc.,* 2010 WL 596445 (Bankr.N.D.Cal. Feb.16. 2010) (after finding defendant violated ERISA, district court granted plaintiffs' request for attorney's fees, but declined to determine how bankruptcy court should classify or prioritize the award). Accordingly, this Report and Recommendation will be limited to a determination as to the reasonable amount of fees that Plaintiffs are entitled to recover as prevailing parties under the FLSA and in accordance with the agreement entered into by the parties.

 As a threshold matter, the Court rejects Defendant Levine's position that Plaintiffs' counsel's efforts to protect the priority of his clients' claims between November of 2008 and August of 2009 violated the District Court's order staying the proceedings in this case. In accordance with the stay, Plaintiffs' counsel did not pursue his clients' FLSA claims against Defendant Levine in this Court during that time. However, this Court finds that counsel's work to protect his clients' claims during the pendency of Defendant Levine's bankruptcy petition warrants reimbursement. Moreover, the work performed by Plaintiffs' counsel during the bankruptcy proceeding was necessitated by Defendant Levine, who repeatedly attempted to thwart Plaintiffs' efforts to have their claims treated as non-dischargeable priority claims. Because the Court finds that the legal work performed by Plaintiffs' counsel in the bankruptcy action was critical to achieving Defendant Levine's acknowledgment of liability and ultimately a settlement in this case, the Court finds that such fees should be included in the judgment. *See Barrett v. Fields,* 1996 WL 571385, *2 (D.Kan. Aug.8, 1996) (where plaintiff was the prevailing party in his civil rights lawsuit, court found he was entitled to attorney's fees incurred during defendants' intervening bankruptcy action; "attorneys fees incurred in the bankruptcy case through the time the stay was lifted were reasonably necessary to plaintiff's efforts to have a judgment entered"). *Cf. Felker v. Southwestern Emergency Medical Service. Inc.,* 584 F.Supp.2d 1120, 1121-22 (S.D.Ind. Oct.20, 2008)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1571192 (S.D.Fla.)
**(Cite as: 2010 WL 1571192 (S.D.Fla.))**

(where plaintiffs obtained judgment on their FLSA claims, court found they were not entitled to attorneys' fees for legal work performed in defendant's subsequent bankruptcy action; court found that such work was not a prerequisite for determining FLSA liability and, thus, any recovery of those fees should be addressed in the post-judgment collection process).

### 2. Calculation of the Attorney's Fee Award

**\*3** A reasonable attorney's fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *American Civil Liberties Union v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999) (*citing Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1994)). This "lodestar" may then be adjusted for the results obtained. *See Barnes,* 168 F.3d at 427 (*citing Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994)). The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes,* 168 F.3d at 436 (*quoting Norman v. HousingAuth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1999)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes,* 168 F.3d at 427.

As to the type of evidence that the fee claimant should produce in support of a fee claim, in *Barnes,* the Eleventh Circuit stated:

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman,* 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity ... A well-

prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (*citations omitted* ).

168 F.3d at 427.

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Barnes,* 168 F.3d at 428 (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel,*" the court must exercise billing judgment for them. *See Barnes,* 168 F.3d at 428 (*quoting Norman,* 836 F.2d at 1301 (*emphasis in original* )).

### A. Counsel's Hourly Rate

In seeking reimbursement for their attorney's fees, Plaintiffs rely on the billing records of their attorney, Michael A. Levin, Esq ., who charges $350.00 an hour. (DE 34, Ex. A). In support of this rate, Plaintiffs submit an expert affidavit of Gordon C. Watt, Esq., a civil litigator in this District since 1989. *See* Watt Aff. at ¶ 1-2 (DE 34). Watt, who has litigated employment actions including FLSA matters, has known Levin since 2001 and is familiar with Levin's "well-deserved reputation in the local legal community as an experienced and well-prepared litigator." *Id.* at ¶ 2-3. According to Watt, the hourly rate charged by Levin is a "reasonable prevailing market rate in the local legal community" for services of this nature. *Id.* at ¶ 9.

**\*4** As is noted above, Defendant Levine does not object to the hourly rate charged by Levin in this case. However, because courts have the duty to avoid awarding excessive fees and expenses, this Court will briefly discuss counsel's qualifications to determine the reasonableness of the claimed hourly rate. *See Barnes,* 168 F.3d at 428.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1571192 (S.D.Fla.)
**(Cite as: 2010 WL 1571192 (S.D.Fla.))**

According to Plaintiffs' Motion, Levin was admitted to the Florida Bar in 1981. (DE 34 at ¶ 20). Levin has been in private practice for 25 years and has "extensive experience in both civil and criminal litigation at both the trial and appellate levels" in federal and state court. *Id.* Levin has previously represented plaintiffs and defendants in FLSA lawsuits and has obtained "favorable results" for his clients. *Id.*

Based on the qualifications and lengthy litigation experience of counsel, and noting that Defendant does not object to the claimed hourly rate, this Court finds that Levin's hourly rate of $350.00 is reasonable. *See Parness v. Piazza Benvenuto Ristorante, Pizzeria and Market, Inc.,* 2009 WL 1117362, *2 (S.D.Fla. April 24, 2009) (court awarded hourly rate of $350.00 to attorney in FLSA action); *see also Perez v. Sanford-Orlando Kennel Club, Inc.,* 2009 WL 2500290 (M.D.Fla. Aug.14, 2009) (FLSA attorney with sixteen years experience awarded hourly rate of $300.00); *Godoy v. New River Pizza, Inc.,* 565 F.Supp.2d 1345, 1347 (S.D.Fla.2008) (FLSA attorney with fourteen years experience awarded hourly rate of $300.00).

**B. Number of Hours Reasonably Expended**
According to the motion, Levin billed a total of 75.8 hours in this matter. (DE 34, Ex. A). In the expert affidavit relied upon by Plaintiffs, Attorney Watt states that the hours spent in this litigation were "reasonable and necessary." *See* Watt Aff. at ¶ 5.

The Court has reviewed Levin's billing records and finds that his hours are, for the most part, reasonable especially in light of the fact that he represented ten named Plaintiffs. To the extent Defendant Levine contends that Attorney Levin's billing entries are vague, inconsistent and excessive, this Court disagrees and finds that most of the time spent by Attorney Levin was directly related to Defendant Levine's tactical decisions in litigating the case. *See Powell v. Carey Intern., Inc.,* 547 F.Supp.2d 1281, 1297 (S.D.Fla.2008) (court found "defendants' conduct in vigorously defending this

case did contribute to the price tag on the attorneys' fees award").

However, the Court will deduct 3.4 hours from Levin's time because certain activities listed on his time sheet for March 18, 2009 and March 25, 2009 are of a clerical nature. *See Inman v. Apfel,* 2000 WL 1221858, *2 (M.D.Fla. Jul.14, 2000) ("tasks of a clerical nature are not compensable as attorney's fees").

**3. Litigation Expenses and Costs**
In addition to attorney's fees, the parties' settlement agreement also provides that Defendants will reimburse Plaintiffs for their costs. It is well settled that courts may only tax costs as authorized by statute. *See EEOC v. W & O, Inc.,* 213 F.3d 600,620 (11th Cir.2000) (*citing Crawford Fitting Co. v. J.T. Gibbons, Inc. .. 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)*).

**\*5** "Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-442, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). This section provides in part,

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1571192 (S.D.Fla.)
(Cite as: 2010 WL 1571192 (S.D.Fla.))

expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Here, Plaintiff seeks to recover $550.00 in costs, which includes the filing fees for the District Court and Bankruptcy Court actions and $50.00 for service of process on the Defendants. (DE 34, Ex. A). Since both categories of costs are allowable under § 1920, and Defendant Levine has not objected to them, the Court will **RECOMMEND** that they be awarded. *See Davis v. Sailormen, Inc.,* 2007 WL 1752465, *2-3 (M.D.Fla. June 15, 2007) (party is entitled to fees that would have been incurred had the United States Marshal's Office effected the service); *see also Wish v. MSC Crociere S.A.,* 2009 WL 347793, * 1 (S.D.Fla. Feb.11, 2009) (based on 28 C.F.R. § 0.114, court determined that U.S. Marshal charges $55.00 per hour for personal service).

**4. Joint and Several Liability**
  In his response to the motion, Defendant Levine contends that "[f]airness demands a pro-rata distribution of allowable attorney's fees" among all of the Defendants so that he is not "solely burdened." (DE 37 at page 11). This Court disagrees.

First, despite Defendant Levine's claim that Plaintiffs "struck an agreement" with his partner, Defendant Jeffrey Evans (DE 37 at page 11), no such agreement was presented to or approved by this Court. Rather, the record indicates that Plaintiffs voluntarily dismissed their claims against Defendant Evans with prejudice. Indeed, the District Court's Order specifically states that Plaintiffs and Defendant Evans will each bear their own attorney's fees and costs. (DE 33, 35). Thus, there is no basis for this Court to apportion the attorney's fees award between Defendant Levine and a former Defendant who was not a party to the underlying settlement agreement and, in fact, was dismissed from the lawsuit.

The Court will impose joint and several liabil-

ity on the remaining Defendants to the lawsuit: Levans, Inc. and Levine. Under the terms of the settlement agreement, both Defendants agreed to pay Plaintiffs' attorney's fees and costs as determined by the Court. Additionally, under the FLSA, employers are jointly and severally liable. *See Patel v. Wargo,* 803 F.2d 632, 637-38 (11th Cir.1986) ("[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA"); *Fields v. Luther,* 1988 WL 121791, *4, n. 10 (D.Md. July 12, 1988) (where damages under the FLSA were awarded against defendants jointly and severally, "it is appropriate that the award of attorney's fees also be joint and several"). Finally, by failing to respond to the instant motion, Defendant Levans, Inc. is precluded from objecting to the amount of attorney's fees sought by Plaintiffs. *See* S.D. Fla. L.R. 7. 1.C (April 2009) (failure to file an opposing memorandum of law is sufficient cause for granting a motion by default). Accordingly, this Court **RECOMMENDS** that the District Court find Defendant Levine and Defendant Levans, Inc. jointly and severally liable for Plaintiffs' attorney's fees and costs as follows:

**CALCULATION OF TOTAL AWARD**
  **\*6** 1. Total Attorney's Fees (72.4 hours at $350.00): $ 25,340.00:

  2. Total Litigation Expenses and Costs: $ 550.00

**CONCLUSION**
  In light of the foregoing, this Court **RECOMMENDS** that the District Court **GRANT IN PART** Plaintiffs' Motion for Attorney's Fees and Costs, and award Plaintiff's their attorney's fees and costs in the amount of $25,890.00. (DE 34).

**NOTICE OF RIGHT TO OBJECT**
  A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T.K. Hurley, United States District Court Judge for the Southern District of Flor-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2010 WL 1571192 (S.D.Fla.)
**(Cite as: 2010 WL 1571192 (S.D.Fla.))**

ida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* Statutory Time-Periods Technical Amendments Act of 2009, H.R. 1626, sec. 6, amending 28 U.S .C. § 636(b)(1) to provide that "... within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). *See also* Fed.R.Civ.P. 72(b) (2009) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy.") Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).

**DONE and SUBMITTED** in Chambers this 15 day of March, 2010, at West Palm Beach in the Southern District of Florida.

S.D.Fla.,2010.
Levin v. Levans, Inc.
Not Reported in F.Supp.2d, 2010 WL 1571192 (S.D.Fla.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit C

Westlaw.

Slip Copy, 2009 WL 212122 (N.D.Ill.)
**(Cite as: 2009 WL 212122 (N.D.Ill.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Brenda URNIKIS-NEGRO, Plaintiff,
v.
AMERICAN FAMILY PROPERTY SERVICES,
INC., Nicole Lash, and Todd Lash, Defendants.

No. 06 C 6014.
Jan. 26, 2009.

Aaron Benjamin Maduff, Christina D. Hatzidakis, Michael Lee Maduff, Maduff & Maduff, LLC, Chicago, IL, Jason M. Johnson, Law Office of Jason M. Johnson, Deerfield, IL, for Plaintiff.

Charles L. Bretz, Cosmo J. Tedone, Erin Webster O'Sullivan, Chuck Bretz & Associates, P.C., Joliet, IL, Linzey D. Jones, Jr., John M. Broderick, Pugh, Jones, Johnson & Quandt, P.C., Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*
MATTHEW F. KENNELLY, District Judge.

\*1 Brenda Urnikis-Negro sued her former employer, American Family Property Services, Inc., and two of its principals under the Fair Labor Standards Act, seeking to recover for unpaid overtime wages. At the bench trial held after the Court denied Urnikis-Negro's motion for summary judgment, she contended that she was entitled to be compensated for over 2,500 hours of overtime at a rate of $37.50 per hour, or over $90,000, and she sought a doubling of this pursuant to FLSA's liquidated damages provision.

The Court found in Urnikis-Negro's favor regarding liability but found her testimony regarding the hours she had worked "significantly exaggerated and largely lacking in credibility." *Urnikis-Negro v. Am. Family Prop. Servs. Inc.,* No. 06 C 6014, slip op. at 17 (N.D.Ill. July 21, 2008). The Court found that Urnikis-Negro had worked approximately 1,490 overtime hours and, as defendants urged, calculated the unpaid wages using the "fluctuating hours" method described in Department of Labor regulations. *See id.* at 19-20. The Court concluded that the unpaid overtime compensation amounted to $12,233 and awarded Urnikis-Negro an equal amount of liquidated damages, for a total of $24,466.

Urnikis-Negro then petitioned for an award of attorney's fees and expenses pursuant to 29 U.S.C. § 216(b). In her petition for fees, Urnikis-Negro alleged that her "unedited" attorney's fees and expenses amounted to $154,710. However, after the information-exchange process mandated by Local Rule 54.3, she reduced her request to $126,327. Defendants, who paid their legal counsel approximately $70,000 in attorney's fees and expenses to defend the case, made specific objections to $46,647 of the amount Urnikis-Negro's counsel requested (leaving a little under $80,000) and also argued that Urnikis-Negro should not be awarded fees greater than the amount of damages the Court had awarded. In her reply brief, Urnikis-Negro reduced the amount she requested to $117,504. Urnikis-Negro also stated that her counsel had spent significant time in connection with the petition for fees and said she would file a supplemental request later.

On December 15, 2008, the Court issued a preliminary ruling, dealing with certain disputed points. *Urnikis-Negro v. Am. Family Prop. Servs., Inc.,* No. 06 C 6014, 2008 WL 5227179 (N.D.Ill.Dec.15, 2008). The Court rejected defendants' contention that the fee award should not exceed the damage award but stated that it would, as required by law, consider "the degree of success [Urnikis-Negro] achieve[d] in deciding how generous a fee award should be." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 558 (7th Cir.1999), *cited in Urnikis-Negro,* 2008 WL 5227179, at \*1.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 212122 (N.D.Ill.)
**(Cite as: 2009 WL 212122 (N.D.Ill.))**

The Court stated, however, that it was unable to assess the reasonableness of Urnikis-Negro's fee request completely due to the fact that plaintiffs had submitted only day-by-day information regarding attorney time without any overall statement of the time spent or, more particularly, an activity-based breakdown of the time spent per attorney. *Id.* at *2. The Court found that it was not unreasonable to have two attorneys work on, prepare for trial, and try the case, but that certain tasks (e.g. preparation for and attendance at depositions) did not reasonably require two lawyers; it was unreasonable to have more than two attorneys working on the case at a particular time; and that it was unreasonable to shift to defendants *both* the time required for the second-chair trial attorney to learn the case *and* the overlapping time her predecessor spent on the case. *Id.* The Court sought further information geared toward quantifying these factors and also directed Urnikis-Negro to quantify the time claimed for preparing and briefing the fee petition. *Id.* at *3.

*2 The parties have provided the additional information the Court has requested. In her final submission, plaintiff has reduced her fee request by about $5,000, to $112,424.25. The Court rules on the fee petition as stated below.

### Discussion

As a prevailing plaintiff, Urnikis-Negro is entitled to an award of reasonable attorney's fees. 29 U.S.C. § 216(b); *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir.2001). The Court begins by determining the so-called "lodestar"-a reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir.2001). Defendants have not objected to the hourly rates proposed by Urnikis-Negro, so the Court turns to the question of whether the attorney time requested for her counsel was reasonably expended.

In response to the Court's request for an activity-based breakdown of each attorney's time, Urnikis-Negro's counsel provided the chart that appears on page six of this decision. The chart does not include time spent working on the fee petition. The chart reflects that five attorneys expended significant time working on the case at various stages: Aaron Maduff, an experienced partner in the firm of Maduff & Maduff who served as lead counsel; Michael Maduff, a partner with even more experience who appears to have focused primarily on settlement negotiations and review of the summary judgment motion, as well as on litigation of the fee petition; Christine Hatzidakis, an associate who second-chaired the trial and came into the case only at the trial preparation phase; and two other associates, Jason Johnson and Meaghen Russell, who appear to have worked on the case throughout its duration.

Plaintiffs' counsel provide an explanation for why so many lawyers worked on the case-claimed efficiencies from division of labor-but it does not render reasonable the time spent by five lawyers working on a case that was perhaps more complicated than some FLSA cases but, all in all, not a particularly complex case. The Seventh Circuit has noted, in the related context of determining the reasonableness of an attorney's hourly rate, that judges in this District have noted that "FLSA cases are less complex than Title VII and other employment-related civil rights litigation." *Small,* 264 F.3d at 708. Though the Court would hesitate to go quite that far, the comparison is accurate as a general rule, and this case was not terribly complex: with regard to liability, it largely boiled down to a credibility determination concerning the nature of the work Urnikis-Negro performed.

Given these circumstances, the Court adheres to its earlier determination that *in this case* (though not in every case, as plaintiff suggests the Court is saying), two lawyers were plenty, and more than two were excessive, with some exceptions noted below. Though the Court acknowledges plaintiff's division-of-labor point, we are not talking about an assembly line here. When labor on particular legal tasks is divided among different attorneys, some

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 212122 (N.D.Ill.)
(Cite as: 2009 WL 212122 (N.D.Ill.))

Page 3

overlap is virtually inevitable, and some inefficiencies are likely. In a large and/or complex case, it is not unreasonable, from a fee-shifting perspective, to incur some such inefficiencies, but the same is not true in a modestly-sized and relatively uncomplicated case like this one.

**\*3** The chart provided by Urnikis-Negro's counsel follows:

| Initial Pleading | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 4.36% | 2.8 | $1,118.54 |
| Christina D. Hassakis | 0.00% | 0 | 0.00 |
| Jason M. Johnson | 8.15% | 11.5 | $2,877.16 |
| Meaghan A. Russell | 6.99% | 4.5 | $682.34 |
| Michael L. Maduff | 6.47% | 1.8 | $769.72 |
| Other | 2.19% | — | 339.14 |
| **Total** | | **20.63** | **$4,436.94** |

| Settlement Negotiations | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 2.24% | 1.4 | $606.13 |
| Christina D. Hassakis | 0.00% | 0 | 30.00 |
| Jason M. Johnson | 0.00% | 0 | $1,086.58 |
| Meaghan A. Russell | 3.24% | 1.3 | $327.70 |
| Michael L. Maduff | 20.52% | 5.9 | $2,417.51 |
| Other | 0.00% | — | 30.00 |
| **Total** | | **13.60** | **$4,438.56** |

| Discovery | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 6.55% | 11.3 | $4,466.77 |
| Christina D. Hassakis | 0.00% | 0 | 30.00 |
| Jason M. Johnson | 8.01% | 8.3 | $1,454.45 |
| Meaghan A. Russell | 36.70% | 19.6 | $3,840.03 |
| Michael L. Maduff | 1.86% | 0.6 | $319.81 |
| Other | 16.12% | — | $829.53 |
| **Total** | | **39.60** | **$10,440.63** |

| Motion for Summary Judgment | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 5.11% | 3.7 | $1,466.14 |
| Christina D. Hassakis | 0.00% | 0 | 30.00 |
| Jason M. Johnson | 24.11% | 17.5 | $4,343.62 |
| Meaghan A. Russell | 38.51% | 21.1 | $4,136.14 |
| Michael L. Maduff | 42.73% | 11.7 | $5,062.44 |
| Other | 32.12% | — | 3676.14 |
| **Total** | | **55.10** | **$14,374.04** |

| Trial Trial Preparation | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 83.64% | 98.5 | $39,384.04 |
| Christina D. Hassakis | 100.00% | 147.51 | $36,936.01 |
| Jason M. Johnson | 24.95% | 17.5 | $3,176.11 |
| Meaghan A. Russell | 14.24% | 7.7 | $1,446.99 |
| Michael L. Maduff | 28.44% | 7.3 | $3,409.55 |
| Other | 30.57% | — | $566.47 |
| **Total** | | **279.70** | **$76,781.23** |
| | | **Overall Total** | **$112,424.00** |

| Attorney | Total Hours | Total Charge |
|---|---|---|
| Aaron B. Maduff | 117.6 | $47,363.84 |
| Christina D. Hassakis | 147.4 | $36,936.01 |
| Jason M. Johnson | 54.3 | $12,748.89 |
| Meaghan A. Russell | 54.9 | $10,805.91 |
| Michael L. Maduff | 27.6 | $11,895.34 |
| Other | | $1,978.91 |
| **Total** | **404.7** | **$112,424.00** |

For the reasons stated above, the Court will exclude, as duplicative and/or excessive and unreasonably shifted to defendants, the following:

1) the 4.5 hours spent by Ms. Russell and the 1.8 hours spent by Michael Maduff working on the "initial pleading," in light of the fact that Mr. Johnson and Aaron Maduff spent, respectively, 11.5 hours and 2.8 hours on that task;

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 212122 (N.D.Ill.)
**(Cite as: 2009 WL 212122 (N.D.Ill.))**

2) the 21.1 hours spent by Ms. Russell and the 11.7 hours spent by Michael Maduff on the motion for summary judgment, in light of the significant time spent on that task by Aaron Maduff and Mr. Johnson, the two lawyers with primarily responsibility for the case at that point; and

3) the 13.6 hours spent by Mr. Johnson, 7.9 hours by Ms. Russell, and 7.9 hours spent by Michael Maduff on trial preparation, in light of the total of over 245 hours spent on pretrial order preparation, trial preparation, and trial (for a two-day trial) by Aaron Maduff and Ms. Hatzidakis, the two lawyers who tried the case.

These reductions amount to $1,587.11 for point 1); $8,984.89 for point 2); and $8,031.54 for point 3), a total of $18,603.54. The Court will not exclude the time spent by Ms. Russell or Michael Maduff on settlement negotiations and discovery, as that time does not appear to have been duplicative or unnecessarily overlapping of time spent by others on those phases of the case.

In addition, as suggested earlier, Ms. Hatzidakis essentially took over the second-chair role as the case approached the trial preparation phase. Though plaintiffs' counsel contend that the change of attorneys did not result in any duplication of effort, that contention does not hold water. It is virtually certain that some start-up time was required for Ms. Hatzidakis to get up to the speed that Mr. Johnson already would have had if he had continued with the case. Given Ms. Hatzidakis charging of just under 148 hours for preparing for and participating in a two-day bench trial (including, to be sure, preparation of a final pretrial order), the Court will reduce that aspect of the time claimed by thirty hours, a total of $5,850 given Ms. Hatzidakis's rate of $195 per hour.

This amounts to a reduction of the revised "lodestar" figure proposed by UrnikisNegro by about twenty percent, from $112,424.25 to $87,970.71. The Court rejects defendants' remaining challenges to the particulars of the time claimed

by plaintiff's counsel.

The Court turns next to defendants' contention that the fees requested are disproportionate compared to the amount recovered at trial and should be reduced for that reason and because Urnikis-Negro covered far less than she sought. As noted earlier, there is no rule that attorney's fees in a fee-shifting case must be proportional to the damage recovered. *Spegon,* 175 F.3d at 558. On the other hand, the degree of a prevailing party's success is a factor a court may, and perhaps must, consider in determining an attorney's fee award. *See, e.g., Deicher v. City of Evansville,* 545 F.3d 527, 545-46 (7th Cir.2008); *Spegon,* 175 F.3d at 558. The Seventh Circuit has stated that

**\*4** [i]n a case involving a single claim or related claims, the court is directed to ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." In so doing, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." When a plaintiff has obtained an excellent result, his attorney should recover a fully compensable fee (i.e., the modified lodestar amount), and the fee "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." However, "[i]f ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." In such a case, the district court has the discretion to reduce the modified lodestar amount to reflect the degree of success obtained.

*Spegon,* 175 F.3d at 557-58 (internal citations omitted; quoting *Hensley v. Eckerhardt,* 461 U.S. 424, 434, 435, 436-37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

Were the Court to consider Urnikis-Negro's degree of success in a vacuum, there would be a solid

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 212122 (N.D.Ill.)
**(Cite as: 2009 WL 212122 (N.D.Ill.))**

basis to reduce further the amount of the attorney's fees award. But the Seventh Circuit has made it clear that degree of success is not to be considered in a vacuum; a court must also consider the significance of the legal issue involved and the public purpose of the litigation. *Deicher,* 545 F.3d at 546. In its December 15 decision, the Court discussed the important public policy considerations underlying the FLSA and the resulting justification for awarding a fee that exceeds the damage award. Recoveries in individual FLSA suits like this one typically are modest; they involve cases in which a law-flouting employer has, in essence, tried to nickle-and-dime his employee. With that backdrop, limiting recoverable fees when a plaintiff recovers relatively modest damages in a FLSA case would create a significant disincentive for lawyers to take on such litigation, which, in turn, would undermine Congress' intent in creating the statute and authorizing private enforcement actions. For these reasons, the Court declines to make a further reduction in plaintiff's recoverable fees on the ground of limited success on the merits.

The final question concerns the amount of fees to be awarded for preparing and litigating the fee petition. Plaintiff seeks $28,625, representing just 10.9 of Aaron Maduff's time, 37.4 hours of Michael Maduff's time, 43.5 hours of the time of Walker Lawrence as a clerk, and 5.6 hours of Mr. Lawrence's time as an attorney. The Court is constrained to say that this is unreasonable in the extreme. Plaintiff attributes the extra work to defendants' failure to cooperate in the information-exchange process under Local Rule 54.3 and the large number of objections by defendants to attorney time claimed by plaintiff. The Court acknowledges that Rule 54.3 can be unduly cumbersome, and it is certainly true that defendants objected to a large number of the time entries claimed by plaintiff's counsel. But those objections were meritorious in significant part; they largely concerned claims of unnecessary duplication of effort. Had the appropriate culling been done by plaintiff's counsel in the first instance, the Rule 54.3 process would have

been far less time-consuming.

**\*5** Rather than address the fee-litigation hours item by item, the Court believes it more appropriate to impose a blanket reduction and award an amount it believes represents the reasonable amount of fees in view of the factors noted above. The Court will award plaintiff one-fourth of the fees requested for litigating the fee petition, or $7,160.

### Conclusion

For the reasons stated above, the Court grants in part plaintiff's motion for attorney's fees [docket no. 89] and awards plaintiff attorney's fees and expenses in the amount of $95,130.71.

N.D.Ill.,2009.
Urnikis-Negro v. American Family Property Services, Inc.
Slip Copy, 2009 WL 212122 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
(Cite as: 2009 WL 2986122 (N.D.Ill.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Saul H. CATALAN and Mia Morris, Plaintiffs,
v.
RBC MORTGAGE CO. d/b/a RBC Centura Bank and
GMAC Mortgage Corp., Defendants.

No. 05 cv 6920.
Sept. 16, 2009.

Keith James Keogh, Ainat Natalie Margalit, Law Offices of Keith J. Keogh, Alastar Sean Mcgrath, Law Offices of Alastar S. Mcgrath, Chicago, IL, for Plaintiffs.

Steven P. Blonder, Cassandra M. Crane, Matthew S. Miller, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL, Thomas Justin Cunningham, Simon A. Fleischmann, Locke Lord Bissell & Liddell LLP, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER
ROBERT M. DOW, JR., District Judge.

**\*1** Before the Court are Plaintiffs' petition for attorneys' fees and costs [281], Defendant RBC Mortgage Company d/b/a RBC Centura Bank's ("RBC") response [288], and Plaintiffs' reply [289].[FN1] For the reasons stated below, Plaintiffs' petition is granted in part and denied in part.

> FN1. In addition to the initial briefing on the petition, the parties have submitted and discussed [see 299, 309, 312, 313] the applicability of several Seventh Circuit decisions addressing attorneys' fees that have been issued since the initial briefing was concluded.

## I. Background
In December 2005, Plaintiffs Saul Catalan and Mia Morris filed a complaint against Defendants RBC Mortgage Company ("RBC") and GMAC Mortgage Corpor-

ation ("GMAC"). Before the case was transferred to this Court's docket, Judge Lindberg granted summary judgment in favor of GMAC [see 118]. The case proceeded to trial on three claims against RBC: (i) violation of the Real Estate Settlement Practices Act ("RESPA"), (ii) breach of contract, and (iii) negligence. Following a seven-day trial, the jury returned a verdict in Plaintiffs' favor on the RESPA and negligence claims and in RBC's favor on the breach of contract claim. The jury awarded damages in the amount of $1,100 on the RESPA claim and $10,000 on the negligence claim, for a total award to Plaintiffs of $11,100.[FN2]

> FN2. The Court denied RBC's Rule 50(b) motion seeking judgment as a matter of law on the negligence claim [see 291]. RBC did not appeal the verdict and it is the Court's understanding that RBC has paid the $11,100 judgment. Plaintiffs filed a notice of appeal [292] of Judge Lindberg's November 15, 2006 order [118] granting summary judgment in favor of GMAC.

Currently before the Court is Plaintiffs' fee petition [281]. In that petition, Plaintiffs request fees and costs as follows:

$234,643.30 in attorneys' fees;

$1,904.00 in "recaptured telephone calls";

$25,364.00 for "fee petition related matters";

$7,162.00 in additional fees also related to objections to the fee petition; and $7,066.85 in costs.[FN3]

> FN3. RBC does not contest Plaintiffs' costs.

RBC-which, according to the parties' Local Rule 54.3 joint statement, incurred $369,000 in attorneys' fees and $31,000 in costs in this litigation-responds that Plaintiffs should receive little or no attorneys' fees because of their limited success at trial.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
(Cite as: 2009 WL 2986122 (N.D.Ill.))

Mindful of the Supreme Court's admonition that "[i]deally, of course, litigants will settle the amount of the fee" ( *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)), the Court referred the fee dispute to Magistrate Judge Nolan for a settlement conference. Unfortunately, the parties were unable to reach accord, and the tail thus has continued to wag the dog in this case. See *Estate of Enoch v. Tienor,* 570 F.3d 821, 823 (7th Cir.2009). It therefore is incumbent on this Court to resolve the ongoing fee dispute and to provide a "concise but clear" explanation for its ultimate ruling. *Hensley,* 461 U.S. at 437; see also *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.,* 574 F.3d 852, 857 (7th Cir.2009) (explaining that a district court "must provide a clear and concise explanation for its award, and may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive" and that the court of appeals "review[s] an award of attorney's fees under a highly deferential abuse-of discretion standard").

## II. Analysis

The impetus for Plaintiffs' fee petition is the RESPA's fee-shifting provision, 12 U.S.C. § 2605(f)(3), which is designed "to ensure the effective prosecution of meritorious claims." *Pedraza v. United Guar. Corp.,* 313 F.3d 1323, 1332-33 (11th Cir.2002). By "permitting attorneys fees and costs as part of each allowable recovery," Congress sought to "encourage [ ] individual customers to raise valid RESPA claims." *Glover v. Standard Fed. Bank,* 283 F.3d 953, 965 (8th Cir.2002). As the Seventh Circuit has observed more generally, "Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated." *Tolentino v. Friedman,* 46 F.3d 645, 652-53 (7th Cir.1995).[FN4]

FN4. As Defendants have noted, courts have endeavored to apply fee-shifting statutes uniformly and frequently follow Section 1988 precedents in analyzing fee claims under con-

sumer protection statutes like the RESPA. See, e.g., *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S. 598, 602-03 & n. 4, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Crabill v. Trans Union, LLC,* 259 F.3d 662, 666-67 (7th Cir.2001).

## A. RBC's Threshold Objections

*2 As an initial matter, RBC contends that Plaintiffs should not be entitled to any fee at all because their recovery at trial was so small. In other words, in RBC's view, even if Plaintiffs' were "prevailing parties," the reasonable fee award for a trifling victory is zero (or an amount very close to it).

The Seventh Circuit has read *Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), as "holding that a plaintiff who wins any measure of damages is a prevailing party for the purposes of fee-shifting statutes." *Moriarty v. Svec,* 233 F.3d 955, 966 (7th Cir.2000). Thus, "[a] plaintiff achieves 'prevailing party' status by recovering *any* judgment, even for nominal damages." *Johnson v. Daley,* 339 F.3d 582, 587 (7th Cir.2003) (en banc). Under that standard, Plaintiffs are prevailing parties.

Nevertheless, because fee-shifting statutes generally authorize only "reasonable" attorneys' fees, the case law indicates that, in some circumstances, parties who obtain an extremely small victory-described variously as "Pyrrhic," "nominal," "technical," or "de minimis"-may not be entitled to an award of fees. See, e.g., *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp .,* 233 F.3d 585, 592 (7th Cir.2000); see also *Farrar,* 506 U.S. at 114-15. In those circumstances, there is at least a presumption that any fee award would be unreasonable. See *Cole v. Wodziak,* 169 F.3d 486, 488 (7th Cir.1999) ("a paltry jury award * * * implies that the only reasonable fee is zero").[FN5] But, after careful review of the applicable Seventh Circuit precedent, the Court concludes that the jury award in this case, although modest, cannot be considered either "paltry" or "de minimis." See *Moriarty,* 233 F.3d at 592 (party awarded a judgment of $2,400 was entitled to reasonable attorneys' fees); *Cole,* 169 F.3d at 488 (recoveries by one plaintiff

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

of $3,500 and by the other plaintiff of $1,000 in compensatory and punitive damages were "more than a pittance" and qualified both plaintiffs as "prevailing parties" who were "entitled to 'reasonable' fees").[FN6]

> FN5. To be sure, the correlation between the damages awarded and the availability of attorneys' fees is not absolute. Recognizing that "[n]ominal relief does not necessarily a nominal victory make" ( *Farrar,* 506 U.S. at 121 (O'Connor, J., concurring)), courts sometimes award substantial fees in cases that involve a small monetary victory, yet are significant for legal or public purpose reasons.

> FN6. The Court also rejects any suggestion by RBC that there is a "rule" in this circuit foreclosing any fee award if a plaintiff fails to obtain at least 10 percent of the damages that it had sought. The weight of authority in this circuit treats the 10 percent threshold "merely as a factor to consider along with other factors weighing for or against an award of attorneys' fees." *Tuf Racing,* 233 F.3d at 592; see also *Stant Mfg. v. Gerdes GmbH,* 2008 WL 687312, at *2 (S.D.Ind. Mar.11, 2008) ("The 'ten percent' threshold is not a rule; rather, it is merely a factor for the court to consider in making its decision to award attorneys fees"). Moreover, the Seventh Circuit recently commented that "[t]his type of proportionality seems to be losing favor," noting that in a recent case the court had held that "recovering less than 7% of [the] amount sought is not reason to apply *Farrar* if damages are not nominal." *Anderson v. AB Painting & Sandblasting, Inc.,* 2009 WL 2525571, at *2 (7th Cir. Aug.20, 2009). In any event, it seems unlikely that any "10 percent rule" would apply here. *Tuf Racing* makes clear that a plaintiff who "scale[s] back its claims before trial" and obtains "more than 10 percent of the scaled-back demand from the jury" has done "enough to take the case out of" any 10 percent rule. 233 F.3d at 592. Here, Plaintiffs requested $65,000 at trial and recovered

$11,100. Of course, the absence of any mathematical rule premised on a 10 percent threshold in no way eliminates the issue of "proportionality"-that is, the difference between the amount requested by Plaintiffs and the amount awarded-from the Court's analysis. To the contrary, as explained below, the Seventh Circuit has held that "proportionality concerns are a factor in determining what a reasonable attorney's fee is." *Moriarty,* 233 F.3d at 968; see also *Anderson,* 2009 WL 2525571, at *3 (reaffirming that a fee request that is several times the amount of actual damages "raises a red flag" that requires the district court to give "increased reflection" in determining a proper fee award).

**B. Computation of the lodestar**

Having rejected RBC's threshold contentions that a minimal fee (or no fee at all) is appropriate in this case, the court now begins the analysis of determining a reasonable fee. See *Anderson v. AB Painting & Sandblasting, Inc.,* 2009 WL 2525571, at *2 (7th Cir. Aug.20, 2009) ("If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing" and the Court then "must limit itself to determining whether the hours spent were a reasonable means to that necessary end"). As the Seventh Circuit recently reiterated, "[a]lthough there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar-the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher,* 574 F.3d at 856 (citing *Hensley,* 461 U.S. at 433-37).

**\*3** Before determining the hours and rates in this case, however, the Court notes a few basic principles that apply in generating the lodestar in a fee-shifting case. First, it is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically, if "the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

by-claim basis." *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir.1988).

Second, a fee award "should not be reduced simply because the plaintiff failed to prevail on every conten-tion raised in the lawsuit." *Hensley,* 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 873 (7th Cir.1995). As the court of appeals has summar-ized, " *Hensley* makes clear that when claims are interre-lated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be com-pensable if it also contributed to the success of other claims." *Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir.1998).

Third, the fact that the amount yielded by comput-ing the "lodestar" exceeds the amount of the judgment does not necessarily indicate that the prevailing party has made an unreasonable fee request. To the contrary, recognizing the importance of vindicating constitutional rights through the fee shifting vehicles created by Con-gress, it is not unusual for district courts to grant, and courts of appeals to affirm, attorneys' fees that substan-tially exceed the amount of the judgment when doing so is reasonable in the circumstances. See, *e.g., Robinson v. City of Harvey,* 489 F.3d 864, 872 (7th Cir.2007) (affirming $507,000 fee award on $275,000 verdict); *Tuf Racing,* 223 F.3d at 592 (affirming $391,000 fee award on $137,000 verdict). As the Seventh Circuit re-affirmed just last month, "[b]ecause Congress wants even small violations of certain laws to be checked through private litigation and because litigation is ex-pensive, it is no surprise that the cost to pursue a con-tested claim will often exceed the amount in contro-versy." *Anderson,* 2009 WL 2525571, at *2.

**1. Objections to hours claimed**

Before submitting a fee application, the claimant "is expected to exercise reasonable billing judgment in calculating its fees by eliminating charges that are re-dundant, excessive or otherwise unnecessary." *Harper v. City of Chicago Heights,* 1994 WL 710782, at *2 (N.D.Ill.Dec.16, 1994). Here, Plaintiffs appear to have done some prudent pruning of their fee request. To be-gin with, they "reduced much of Mr. Burke's time in this matter and all of the time that he spent observing

the trial" (Pet. at 8 n. 3), which was appropriate given his relative responsibilities and level of experience and the fact that they seek recovery for two principal trial lawyers (Mr. Keogh and Mr. McGrath). Plaintiffs also have removed from their claim all fees associated with their claims against GMAC. *Id.* at 9 n. 5.

**\*4** In regard to the time for which Plaintiffs do seek recovery, RBC objects to numerous entries on the grounds of "insufficient detail; work not necessary for trial; work related to other claims; time that is excessive for the work performed; and work that was duplicative." After review of those objections, the Court finds most of them unfounded.

As a preliminary matter, an objection that work was not necessary for *trial* appears to be ill-advised, because prevailing parties may recover for work expended lead-ing up to trial as well. For example, in many cases (including this one), work at the discovery and sum-mary judgment stages is critical in marshalling support for claims and ensuring that they survive for trial. Sim-ilarly, because each of Plaintiffs' claims centered on common facts and related legal theories-in particular, allegations that RBC mishandled Plaintiffs' mortgage resulting in emotional distress to Plaintiffs (and primar-ily to Ms. Morris)-this is not a case in which the hours expended are susceptible to evaluation "on a claim-by-claim basis." *Ustrak,* 851 F.2d at 988; see also *Mun-son v. Milwaukee Bd. of Sch. Dirs.,* 969 F.2d 266, 272 (7th Cir.1992) (explaining that, under circuit precedent, "denying the prevailing plaintiff compensation for work done on unsuccessful pendent state law claims in a civil rights action, even if the pendent claims were not dir-ectly compensable under a fee-shifting statute, would be 'contrary to the precepts established in *Hensley* ' "); *Zabkowicz v. West Bend Co., Div. of Dart Indus., Inc.,* 789 F.2d 540, 551 (7th Cir.1986) ("Where several claims arise out of a common factual core or are based on related legal theories, separating out the legal ser-vices rendered with respect to these overlapping claims would be an exercise in futility"); *cf. Sottoriva v. Claps,* 2009 WL 211170, at *4 (C.D.Ill. Jan.28, 2009) (finding that work on claims on which plaintiff did not succeed "was intertwined with Plaintiff's other claims such that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

the Court cannot easily separate out the time attributable to the successful claim," but noting that an adjustment would be made "to reflect the level of success" on the overall litigation).

Most of Defendants' other objections relate either to the necessity of the work performed, the amount of time devoted to specific tasks, or the lack of detail provided in counsel's time records. The standard for evaluating the amount of itemization and detail in time entries in a fee petition, to the extent that there can be said to be one, appears to be based on the market-that is, "the level of detail paying clients find satisfactory." *Garcia v. City of Chicago,* 2003 WL 22175620, at *3 (N.D.Ill. Sept.19, 2003). In addition, the time entries must be sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation. Here, while the time entries of Plaintiff's counsel are not as detailed as they might have been, they are not outside the boundaries of what paying clients would accept, nor are they so cryptic as to preclude reasonable analysis. In fact, while the time entries on the bills that Defendants' counsel submitted to its paying client, RBC, are more detailed, they are only marginally so. As Judge Zagel has written, in words that apply equally here, "there is no binding standard on how hours should be described and how great the detail should be. If, on the face of it, the hours seem out of line, there is some weight to a claim that descriptions are too sparse, but the hours are not out of line here." *Kunz v. City of Chicago,* No. 01 C 1753, Memorandum Opinion and Order, at 3 (N.D.Ill. Aug. 14, 2008).

**\*5** It is true that there is some repetition and duplication of effort reflected in the time entries of both sides in this case. But in evaluating those records, it is important to keep in mind that when "a case goes on for many years, a lot of legal work product will grow stale." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir.2008). This case was set for trial three times and was transferred from Judge Lindberg to Judge Der-Yeghiayan and finally to this Court after substantial pre-trial proceedings had taken place. As the Ninth Circuit sensibly has noted, the kind of duplication of effort

that occurs in these circumstances is *"necessary* duplication; it is inherent in the process of litigating over time." *Id.* at 1112 (emphasis in original). And it affects both sides, not just Plaintiffs.

It also bears repeating the observation that "[t]he reasonableness of the requested hours and fees varies in every case, often in direct proportion to the ferocity of an adversaries handling of the case." *Krumwiede v. Brighton Assocs.,* 2006 WL 2349985, at *1 (N.D.Ill. Aug.9, 2006). Although this Court has been involved in the case for only a fraction of its existence, the docket sheet and transcripts, as well as the Court's personal recollection, attest to the hotly contested nature of the proceedings before, during, and after trial. When parties that do not bear the burden of proof at trial mount a spirited defense of the case, they can hardly complain when their adversaries spend at least as much time and effort to surmount the defense, nor can they validly object to paying the adversaries' reasonable fees when the defense fails.

Finally, in regard to objections to attorneys' fees petitions on excessiveness grounds, the Ninth Circuit also has persuasively explained that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees" because "[t]he payoff is too uncertain, as to both the result and the amount of the fee." *Moreno,* 534 F.3d at 1112. For that reason, the court advised that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.;* see also *Mohr v. Chicago Sch. Reform Bd. of Trs.,* 194 F.Supp.2d 786, 789 (N.D.Ill.2002) ("If the winning counsel had taken less time, he might not be in a position to ask for attorneys' fees as the prevailing party's representative"). Here, that observation rings especially true in regard to the RESPA claim, as to which there is very little in the way of reported case law and thus almost no road map for litigation, either at the summary judgment stage or at trial. Nevertheless, if RBC had demonstrated that its lawyers performed similar tasks with similar results in substantially less time, the Court may well have reduced or eliminated certain

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
(Cite as: 2009 WL 2986122 (N.D.Ill.))

entries from the lodestar. But RBC made no such at-tempt-which may have been futile in any event given that its lawyers charged their client approximately 50% more than Plaintiffs seek in their petition.

**\*6** For all of these reasons, with one exception,[FN7] the Court sees no basis for excluding from the lodestar calculation any of the hours to which RBC objects. Those hours appear to have been reasonably devoted to the case in light of the issues raised, their novelty and complexity, the lawyers' experience levels, the level of resistance from RBC, the burden of proof that Plaintiff bore at trial, and the risk that inadequate preparation at any stage could have led to no recovery (and, correspondingly, no attorneys' fees). RBC's fees and costs were higher than Plaintiffs', each side had two principal trial lawyers, and the billing rates charged by RBC's lawyers actually were comparable to (or slightly higher than) the rates charged by their counterparts on Plaintiffs' side of the case.

> FN7. The exception relates to Plaintiffs' efforts to recover $1,904 in attorney time for what they call "recaptured telephone calls." It appears that these sums were not initially in-cluded in Plaintiffs' petition, but were added on the basis of an examination of defense coun-sel's bills to RBC. Plaintiffs' lawyers are oblig-ated to keep accurate time records and if they fail to do so, they cannot recover amounts that are not fairly encompassed within their own re-cords, such as the $1,904 in telephone corres-pondence time.

**2. Objections to hourly rates**

In regard to the other component of a lodestar, "[c]ounsel's actual billing rate for comparable work is presumptively appropriate for use as the market rate." *Matteson v. Baxter Healthcare Corp .,* 2005 WL 1204616, at \*1 (N.D.Ill. Feb.11, 2005). Plaintiffs have requested (with one exception) compensation at the hourly rates that their attorneys ordinarily charge their clients. Plaintiffs appropriately have supported those rates with reference to state and federal court orders re-flecting court approval of those rates in prior consumer litigation. See, *e.g., Spegon v. Catholic Bishop of*

*Chicago,* 175 F.3d 544, 556-57 (7th Cir.1999) (approving the submission of fee awards that the attor-ney has received in similar cases as evidence of an at-torney's market rate). In addition, the rates requested for Plaintiffs' principal lawyer, Mr. Keogh, are close to or within the range of rates suggested as reasonable in the *Laffey* Matrix that many courts in this district have used in fee-shifting cases. Finally, the hourly rates charged by Plaintiffs' attorneys in this case are comparable to-and in the main a bit lower than-the rates charged to RBC by their principal lawyers and associates, who were litigating the same issues in the same case. Moreover, to the extent that the rates among the lawyers who litigated the case differ, those differences correlate fairly closely to their experience levels.[FN8]

> FN8. The rate charged by RBC's lead lawyer, Mr. Blonder, who was admitted to the Bar in 1993, increased from $330.00 to $400.00 per hour during the pendency of the case. Mr. Blonder's trial partner, Mr. Miller, who joined the Bar in 1996 and did not begin working on the case until a few months before trial, billed at a rate of $360.00 per hour. Both principal lawyers for RBC thus have a few years more experience and billed at slightly higher rates than Plaintiffs' principal lawyers, Mr. Keogh and Mr. McGrath, both of whom were admitted to the Bar in 1999. For the most part, the other partners and associates who worked on the matter for RBC charged between $230.00 and $350.00 per hour-amounts that are in the same range as (or, again, slightly higher than) the hourly rates at which Plaintiffs' secondary law-yers seek to be compensated in the fee petition.

All of the preceding observations counsel in favor of adhering to the presumption that counsel's actual billing rate is the market rate for purposes of computing a lodestar for the work performed by Plaintiffs' lawyers on the case. However, consistent with that principle, the Court is compelled to make an adjustment to the per hour rate sought for Mr. McGrath's work in this case.[FN9] As noted in the petition, Mr. McGrath's usual rate is $275.00 per hour. Plaintiffs seek recovery for his

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
(Cite as: 2009 WL 2986122 (N.D.Ill.))

Page 7

hours at a rate of $340.00 to reflect the risk that Mr. McGrath assumed in accepting the work without any guarantee of being paid. But because Mr. McGrath came late to the case, it seems counterintuitive to assume that he would have been able to provide *more* value in a case that he joined shortly before trial than he is able to provide for his typical clients in typical cases, most of which he likely works up from the start. If anything, his lack of familiarity with the case might suggest a discount from his usual rate. But because his usual rate is lower than the rates charged by any of the other principal trial lawyers in the case, the Court will accept Mr. McGrath's customary rate of $275.00 per hour rate

for his work on this case.

> FN9. The Court stresses that the adjustment is not meant to reflect unfavorably on the quality of Mr. McGrath's work in the case.

**\*7** Having considered the hours and rates submitted by Plaintiffs, along with RBC's objections, the Court arrives at the following lodestar:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Keith Keogh | 411.3 | $340 | $139,842.00 |
| Alexander Burke | 98.6 | $288 | $28,396.80 |
| Elizabeth Monkus | 38.6 | $270 | $10,422.00 |
| Alastar McGrath | 145 | $275 | $39,875.00 |
| Greg Goetz | 33.5 | $175 | $5,862.50 |
| Linda Barksdale | 8.2 | $100 | $820.00 |
| **Total Lodestar** | | | **$225,218.30** |

**C. Adjustments to the lodestar**

In many fee-shifting cases, computation of the lodestar is both the beginning and essentially the end of the fee analysis. As the Supreme Court has observed, when litigation of a fee-shifting case leads to "excellent results" for the prevailing party, the plaintiff's attorney "should recover a fully compensatory fee." *Hensley,* 461 U.S. at 435. In the Supreme Court's view, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.*

By contrast, where it cannot be said that the results obtained were "excellent," the lodestar figure remains the point of initial departure, but the "district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest ad-

vanced by the litigation." *Schlacher,* 574 F.3d at 856-57; see also *Estate of Enoch,* 570 F.3d at 823-24 ("The lodestar figure is the 'starting point,' " but other factors that properly may bear on the calculus include "whether, in addition to the claims on which plaintiffs prevailed, there are other claims on which they did not prevail," as well as the overall "results obtained in the litigation"); *Connolly v. Nat'l Sch. Bus. Svc., Inc.,* 177 F.3d 593, 597 (7th Cir.1999) (noting that the court has used a three-part test "in determining the degree of success a plaintiff has obtained": (i) the difference between the actual judgment and the recovery sought, (ii) the significance of the legal issues on which the plaintiff prevailed, and (iii) the public interest at stake in the litigation).[FN10] And of these factors, "success is the most significant \* \* \* for a judge to consider in deciding what is a reasonable fee." *Connolly,* 177 F.3d at 597.

> FN10. In other cases, the Seventh Circuit has

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

referenced the twelve factor set forth in *Hensley-*"(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases"-while noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Anderson,* 2009 WL 2525571, at *1 & n. 1.

Here, the Court easily concludes that Plaintiffs did not obtain anywhere near the "excellent" result that would justify an award of all (or even substantially all) of the claimed attorneys' fees. As *Moriarty, Cole,* and a host of other Supreme Court and Seventh Circuit cases teach, where a party obtains a result that is substantially less than its demand and/or the fees that it requests in compensation, a "reasonable" fee may be less than the full lodestar amount. "Once the district court reaches an amount using the lodestar determination, it may then adjust that award in light of the plaintiff's 'level of success.' " *Spegon,* 175 F.3d at 557; see also *Shea v. Galaxie Lumber & Constr. Co.,* 152 F.3d 729, 736 (7th Cir.1998) ("district courts both can and should look to the degree of success a party achieves in deciding how generous a fee award should be").

**1. Proportionality**

*8 While the court of appeals repeatedly has declined to adopt "any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered," it has been equally consistent in noting that "proportionality concerns are a factor in determining what a reasonable attorney's fee is." *Moriarty,* 233 F.3d at 968; see also *Tuf*

*Racing,* 233 F.3d at 592 (noting that if a party "had incurred attorney's fees that were disproportionate to a reasonable estimate of the value of its claim, it could not recover all those fees, but only the reasonable proportion, which is to say the amount that would have been reasonable to incur had the value of the claim been estimated reasonably rather than extravagantly"). Thus, a district court's attorney's fee order "should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Moriarty,* 233 F.3d at 968.[FN11]

> **FN11.** In a recent opinion, *Anderson v. AB Painting & Sandblasting, Inc.,* 2009 WL 2525571 (7th Cir. Aug.20, 2009), the Seventh Circuit discussed at some length the issue of "proportionality" in attorney's fee cases. As the court of appeals explained, "[p]roportionality can refer to multiple concepts in the realm of attorney's fees." *Id.* at *2. In *Anderson,* for example, the "proportionality" at issue involved "a comparison between a plaintiff's damages and his attorney's fees." *Id.* The district court had drastically reduced the plaintiffs' attorney's fee request as excessive, even though the plaintiffs recovered the entire amount of the claimed deficiency in pension fund contributions that gave rise to the litigation in the first place. *Id.* at *1. On appeal, the Seventh Circuit reversed, reasoning that even though the fee request was more than seven times the amount of damages, there may have been good cause for the expenditure of fees. *Id.* at *4. In that vein, the court of appeals observed that the claim "could have been resolved at a greatly reduced cost if [defendant] had cooperated with discovery requests and settlement discussions, obeyed the district court's orders, and not filed a serious of frivolous motions after the court had already entered judgment for the [plaintiffs]." *Id.* The court thus concluded that the district court's reduction of the fee request lacked adequate explanation and remanded for a new calculation. *Id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

This case involves a different conception of "proportionality" than that at issue in *Anderson*-one that arises because Plaintiffs "recover[ed] a very small percentage of the damages claimed." Nothing in *Anderson* undermines the analysis set forth in *Moriarty*. To the contrary, *Anderson* expressly reaffirmed the statement in *Moriarty* that a district court "should give 'increased reflection' before awarding attorney's fees that are several times the amount of the actual damages" and echoed *Moriarty*'s concern that such "a comparatively large fee request raises a red flag" (*id.* at *3).

Here, the fees requested (more than $234,000) are "large multiples" of the damages recovered ($11,100, including only $1,100 on the RESPA claim) and "multiples" of the damages claimed at trial ($65,000), and thus the Court must adhere to the Seventh Circuit's guidance on the "proportionality concerns" addressed in *Moriarty*. Perhaps the claim initially was viewed as worth more than Plaintiffs actually requested at trial; the six-figure settlement offer that RBC contends was made at the time that RBC and GMAC both remained in the case (see below) provides some support for the view that even Defendants at one time valued the case higher than $65,000. Nevertheless, the size of the fee award relative to the damages sought and awarded at trial clearly "raises a red flag" ( *Anderson,* 2009 WL 2525571, at *3) and thus makes this fee petition a candidate for scrutiny on proportionality grounds.

In the seminal case on fee-shifting, the Supreme Court stressed that "[t]here is no precise rule or formula" for making adjustments to the requested fee. *Hensley,* 461 U.S. at 436-37. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* And "[t]he court necessarily has discretion in making this equitable judgment," so long as that discretion is exercised in light of the permissible factors under controlling law. *Id.*

As Judge Shadur observed, the Seventh Circuit has upheld on many occasions "a reduction of the award

without parsing the specific hours to be eliminated" where such a reduction is warranted in light of the relevant circumstances, including the limited success achieved at trial. *Tauber v. City of Chicago,* 33 F.Supp.2d 699, 701 (N.D.Ill.1999) (citing cases). In *Tauber,* for example, Judge Shadur reduced the requested fee award by 40%, taking into account the positive ("the great value of counsel's services in having obtained substantial success in the face of a war of attrition that very probably would have defeated less dedicated adversaries") and the negative ("the substantial degree of [Plaintiff's] lack of success on her total claims (even though those claims were not frivolous as such)"). *Id.* at 702-03. Similarly, in *Cooke v. Stefani Mgmt. Svcs., Inc.,* 250 F.3d 564, 570 (7th Cir.2001), the Seventh Circuit ruled that "the district court's 50 percent limited-success reduction [was] entirely justified" where the plaintiff requested nearly $300,000 from the jury, but recovered only $7,500. As the court noted, because the award to the plaintiff was "hardly an overwhelming success" in a "simple case with no broad social impact," counsel should have been "happy to receive fees of nearly seven times the amount of their client's recovery." *Id.;* See also *Spegon,* 175 F.3d at 558-59 (affirming reduction of lodestar by 50% in light of limited success); *Garcia v. Oasis Legal Fin. Oper. Co.,* 608 F.Supp.2d 975, 980 (N.D.Ill.2009) (reducing lodestar amount by 50% because the degree of success obtained by plaintiff, "while not entirely insignificant, is partial at best"); *Sottoriva,* 2009 WL 211170, at *4 (reducing lodestar by 67% "to reflect Plaintiff's limited degree of success"); *Cannella v. Anodyne Corp.,* 1997 WL 573398, at *2-*3 (N.D.Ill. Sept.11, 1997) (reducing lodestar by additional 35% after initial item-specific reductions).

**\*9** The Court finds this case to be much like *Tauber,* at least in the sense that determining an appropriate fee reduction based on "overall success" requires a balance of positive and negative considerations. On the one hand, Plaintiffs did prevail on two of the three counts on which they went to trial. One of the claims that the jury resolved in Plaintiffs' favor, the RESPA claim, upholds a consumer protection statute, and thus has at least some public interest value beyond this case.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

In addition, the fact that Defendants litigated tooth-and-nail at every stage of the case, expending one-and-a-half times the fees that Plaintiffs seek, places the number of hours claimed by Plaintiffs in perspective. On the other hand, there is no escaping the obvious: the damage award of $11,100 pales in comparison to the amount that Plaintiffs initially sought, the value of the case as assessed by both parties at the time of the early settlement discussions to which RBC alludes (see below), and even the "scaled-down" damages request that Plaintiffs submitted to the jury at trial. On balance, the Court determines that a reduction in the lodestar on "proportionality" grounds is appropriate in light of the limited success that Plaintiffs achieved in this case.

**2. Settlement history**

Another factor that may affect a fee award is the settlement history of the case. RBC contends that in February 2006, not long after the complaint was filed, an offer was made to settle the case as to both RBC and GMAC for $105,000. See Pet. at 9; Resp. at 7 & n .4; Reply at 8. Plaintiff appears to dispute whether a formal settlement offer was made and notes that the materials before the Court include no concrete evidence of an offer or its rejection. Plaintiffs also contend that RBC never made an offer to settle separate from GMAC and that RBC failed to respond to any of Plaintiffs' settlement offers after the initial February 2006 conference.

Plaintiffs are incorrect in asserting that "the parties' past settlement discussions are irrelevant" and that "the Seventh Circuit has not listed settlement offers as a factor for this Court to consider." Reply at 8. The Seventh Circuit has stated that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees even where Rule 68 does not apply." *Moriarty,* 233 F.3d at 967. To be sure, as Plaintiffs also argue, "settlement offers are not determinative," and the Court "need not reduce the lodestar calculation because of any settlement offers." Reply at 8. In fact, "[t]he district court must only *consider* the substantial settlement offer; it need not reduce the lodestar calculation because of the offer." *Moriarty,* 233 F.3d at 967. In addition, the court of appeals "stress[ed] that a substantial offer is

only one of the factors that a district court should evaluate in making an attorney's fee award and (absent an offer complying with Rule 68 where that Rule applies) is not necessarily determinative." *Id.*

**\*10** Under circuit precedent, "an offer is substantial if * * * the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Moriarty,* 233 F.3d at 967. Here, the offer to which RBC refers-to settle on behalf of both defendants-was almost ten times the amount of the damages recovered from RBC in this case.[FN12] "In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer." *Id.;* see also *Lohman v. Duryea Borough,* 574 F.3d 163, 169 & n. 5 (3d Cir.2009) (affirming district court's award of "roughly one-half of the lodestar" where the district court considered, among other things, "the degree of [plaintiff's] success" and the fact that plaintiff rejected a settlement offer of more than six times the amount awarded by the jury).

> FN12. Plaintiffs received nothing from GMAC, because GMAC prevailed at summary judgment. As noted above, Plaintiffs' appeal of that ruling, entered by Judge Lindberg before the transfer of this case to this Court, remains pending in the Seventh Circuit.

In view of the actual verdict, it is easy to conclude that Plaintiffs overvalued their case. But RBC's statement (Resp. at 8) that "[t]his case never had a six-figure value" rings hollow in view of its willingness to pay-by its own account-$75,000 of a $105,000 settlement offer on behalf of both Defendants. All of the parties, it seems, overvalued the case. And while it is tempting to penalize Plaintiffs for walking away from what appears in hindsight to have been a generous early settlement offer, RBC does not contest Plaintiffs' contention that Defendants did not return to the bargaining table in any meaningful sense at any point between the rejection of the initial settlement offer in February 2006 and the trial in June 2008. Instead, RBC appears to have dug in its heels, spending more than $350,000 in defense of the case. See *Tuf Racing,* 233 F.3d at 592 (affirming

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

$391,000 fee award on $137,000 damage award and noting that amount expended by prevailing party was "little more than a third as great as [the losing party's] expenditure in defending" the case).

The upshot is that both sides may well have missed further opportunities to settle the case and the substantial number of hours that Plaintiffs' counsel devoted to the case in an effort to win it were driven in large part by (i) the burden of proof that they bore and (ii) the even greater resources that Defendants devoted to defeating Plaintiffs' claims. In consideration of all of these circumstances, the Court concludes that while Defendants "should not have to shoulder the *entire* financial burden occasioned by [Plaintiffs' counsel's] failure to make a reasonable assessment of the value of their case" ( *Altergott v. Modern Collection Techniques*, 864 F.Supp. 778, 783 (N.D.Ill.1994) (emphasis added)), both sides must share in the responsibility for generating approximately $600,000 in legal fees on what the jury determined was an $11,000 case.[FN13]

> FN13. In addition to the major objections to the fee petition that the Court has addressed above, the Court has reviewed a number of other less significant objections pertaining to, among other things, the competency of Plaintiffs' counsel and individual time entries by Plaintiffs' counsel and paralegal. The Court concludes that none of these objections are well taken and need not belabor the analysis. See *Moriarty*, 233 F.3d at 968 ("unlike in the case of substantial settlement offers or disproportionality, the district court need not demonstrate in a fee order that it has considered each individual objection," particularly those "less significant objections").

In view of the foregoing analysis, and bearing in mind that the degree of success obtained is the most important factor in determining a reasonable fee (see *Connolly*, 177 F.3d at 597), the Court concludes that a 40% reduction in the lodestar is appropriate to account for the wide gulf between the amount of damages requested at every stage of this litigation and the actual jury award

after trial. In view of that substantial reduction, the Court determines that no additional reduction is warranted for Plaintiffs' failure to appropriately value the case at the outset-particularly in view of the absence of a clear record of the settlement offer to which RBC refers and both parties' apparent inability to meaningfully revisit settlement possibilities after the initial offer to which RBC alludes. The Court will set forth the amount of the fee award below, after taking into account Plaintiffs' request for the fees incurred in litigating the fee petition itself.

**D. Work on the fee petition**

*11 Plaintiffs also seek to recover for the time spent on the fee petition. "Ample case law supports the proposition that when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition." *Trs. of the Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897, at *6 (N.D.Ill. Mar.18, 2008). RBC does not dispute that general proposition, nor did it submit any specific objections to the hours for which Plaintiffs seek compensation in connection with the dispute over the fee petition. Those reasons alone provide ample basis for awarding all of the petition-related fees sought by Plaintiffs.

In addition, the Court has reviewed the documentation submitted by Plaintiffs in support of their request for fees related to the fee petition. Although Plaintiffs seek reimbursement for an unusually large number of hours at the petition stage, RBC mounted an unusually fervent campaign to resist the fee petition. Plaintiffs were forced to spend time and effort compelling RBC's compliance with the Local Rule 54.3 process and responding to objections to the majority of time entries. While the Court has reduced the lodestar significantly, it has done so on the basis of two well established principles-proportionality and settlement history-that would not have been difficult to articulate succinctly. In addition to making those points, RBC has articulated a litany of minor objections, the vast majority of which were not well taken.

The Supreme Court has expressed the view that "[a]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**

request for attorneys' fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437. But that is what happened in this case. For all of the reasons stated above, the Court finds that all of the "time expended in preparing and litigating the fee petition" (*Trs. of the Chicago Plastering Inst. Pension Trust,* 2008 WL 728897, at *6) was reasonably spent and will include that time, charged at each lawyer's usual rate, in the fee award.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' fee petition [281] in part and denies it in part.[FN14] Specifically, the Court awards the following attorneys' fees

and costs through the date of judgment on the verdict in this case:

> FN14. RBC's motion to strike and to bar undisclosed material from Plaintiffs' fee petition [283] is denied as moot; the Court had no need to rely on the evidence to which RBC objected because the other materials cited above provided adequate support for the hourly rates used to compute the lodestar.

| Attorney | Hours | Rate | Amount |
|----------|-------|------|--------|
| Keith Keogh | 411.3 | $340 | $139,842.00 |
| Alexander Burke | 98.6 | $288 | $28,396.80 |
| Elizabeth Monkus | 38.6 | $270 | $10,422.00 |
| Alastar McGrath | 145 | $275 | $39,875.00 |
| Greg Goetz | 33.5 | $175 | $5,862.50 |
| Linda Barksdale | 8.2 | $100 | $820.00 |
| **Lodestar sum** | | | **$225,218.30** |
| **Less 40% reduction** | | | **$ 90,087.32** |
| **Sum total through date of judgment** | | | **$135,130.98** |

**\*12** The Court also awards the following in attorneys' fees incurred in connection with litigating this fee petition:

| Attorney | Hours | Rate | Amount |
|----------|-------|------|--------|
| Keith Keogh | 46.3 | $340 | $15,742.00 |
| Ainat Margalit | 19.7 | $288 | $5,673.60 |
| Alastar McGrath | 8.3 | $275 | $2,282.50 |
| **Fee litigation award** | | | **$23,698.10** |

Finally, the Court awards Plaintiffs' costs in the amount of $7,066.85. Adding these components, the total fee award to Plaintiffs is $165,895.93.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)
**(Cite as: 2009 WL 2986122 (N.D.Ill.))**


N.D.Ill.,2009.
Catalan v. RBC Mortg. Co.
Not Reported in F.Supp.2d, 2009 WL 2986122 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit
# E

| Date | Staff | Description | Dur/Qty | Rate/Price | Billed Amt |
|---|---|---|---|---|---|
| 5/12/2009 | AC | Review file, prep for conference with opposing consel | 1 | $375.00 | $375.00 |
| 5/19/2009 | AC | Review and revise letter to opposing consel | 0.75 | $375.00 | $281.25 |
| 5/19/2009 | AC | Telephone conference with opposing consel | 0.5 | $375.00 | $187.50 |
| 6/1/2009 | AC | Review potential damages; Review and revise demand letter | 2 | $375.00 | $750.00 |
| 8/2/2009 | AC | Review and revise opt in motion | 2.25 | $375.00 | $843.75 |
| 8/6/2009 | AC | Review and revise reply on motion to send opt-in notice | 1.5 | $375.00 | $562.50 |
| 11/19/2009 | AC | Review and revise initial round of discovery to defendants | 1.75 | $375.00 | $656.25 |
| 12/1/2009 | AC | RR renewed motion for order authorizing opt-in notice | 1.5 | $375.00 | $562.50 |
| 2/19/2010 | AC | Review and revise responses to discovery | 0.25 | $375.00 | $93.75 |
| 3/2/2010 | AC | Meeting with BM regarding potential witness REDACTED PER LR54.3(d)(1) | 1.5 | $375.00 | $562.50 |
| 3/2/2010 | AC | Review and revise discovery responses | 0.25 | $375.00 | $93.75 |
| 9/7/2010 | AC | Review and revise summary judgment | 2 | $375.00 | $750.00 |
| 9/7/2010 | AC | Review motion to prep for court call and attend court regarding motion to amend | 1.75 | $375.00 | $656.25 |
| 11/8/2010 | AC | Review and revise motion for summary judgment | 3 | $375.00 | $1,125.00 |
| 1/3/2011 | AC | Review and revise response to summary judgment motion | 5.75 | $375.00 | $2,156.25 |
| 1/3/2011 | AC | Review and revise summary judgment briefing | 3.75 | $375.00 | $1,406.25 |
| 7/1/2011 | AC | Meeting with BM regarding strategy | 0.25 | $375.00 | $93.75 |
| 7/11/2011 | AC | Meeting with client to prepare for settlement client | 0.25 | $375.00 | $93.75 |
| 7/11/2011 | AC | Attend settlement conference with Judge Cole | 3 | $375.00 | $1,125.00 |
| 8/9/2011 | AC | Meeting with BM regarding last court hearing and fee petition schedule | 0.25 | $375.00 | $93.75 |
| 8/16/2011 | AC | Telephone conference with affiants regarding affidavits for fee petition | 0.75 | $375.00 | $281.25 |
| 8/16/2011 | AC | Prep materials to send to opposing counsel regarding fee petition | 2.75 | $375.00 | $1,031.25 |
| 8/18/2011 | AC | Review and revise material to opposing counsel for purposes of fee petition | 2.25 | $375.00 | $843.75 |
| | AC | Future: Discussion with Knuckles | 1 | $375.00 | $375.00 |
| | AC | Future: Review Defendants' materials | 2 | $375.00 | $750.00 |
| | AC | Future: Review and revise motion for fees | 2 | $375.00 | $750.00 |
| | AC | Future: Prep for oral argument | 4 | $375.00 | $1,500.00 |
| | AC | Future: Oral argument | 1 | $375.00 | $375.00 |
| | | **Total for AC:** | **49.25** | | **$18,468.75** |
| 4/22/2009 | BM | Review client responses to questionnaire, research company | 0.5 | $290.00 | $145.00 |
| 4/23/2009 | BM | Draft complaint | 1.75 | $290.00 | $507.50 |
| 4/24/2009 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 4/24/2009 | BM | Draft complaint | 1 | $290.00 | $290.00 |
| 4/28/2009 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 4/29/2009 | BM | Review and revise complaint | 0.5 | $290.00 | $145.00 |
| 4/30/2009 | BM | Research additional addresses for service | 0.25 | $290.00 | $72.50 |
| 4/30/2009 | BM | Review filed complaint | 0.25 | $290.00 | $72.50 |
| 5/8/2009 | BM | Draft document requests | 0.5 | $290.00 | $145.00 |
| 5/8/2009 | BM | Draft interrogatories | 1.25 | $290.00 | $362.50 |
| 5/8/2009 | BM | Review Judge Castillo's standing orders, review MJ Cole's standing orders | 0.5 | $290.00 | $145.00 |
| 5/12/2009 | BM | Draft discovery matrix/case outline | 1.25 | $290.00 | $362.50 |
| 5/12/2009 | BM | Calculate potential damages | 1 | $290.00 | $290.00 |
| 5/12/2009 | BM | Telephone conference with Knuckles regarding extension and settlement | 0.25 | $290.00 | $72.50 |
| 5/12/2009 | BM | Draft document requests | 0.25 | $290.00 | $72.50 |

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 5/13/2009 | BM | Calculate overtime damages | 1 | $290.00 | $290.00 |
| 5/15/2009 | BM | Review and revise settlement letter | 0.25 | $290.00 | $72.50 |
| 5/15/2009 | BM | Draft document requests | 1 | $290.00 | $290.00 |
| 5/15/2009 | BM | Research opposing counsel McGurk | 0.25 | $290.00 | $72.50 |
| 5/15/2009 | BM | Review Defendants motion for extension of time | 0.25 | $290.00 | $72.50 |
| 5/20/2009 | BM | Draft demand letter | 0.25 | $290.00 | $72.50 |
| 5/29/2009 | BM | Calculate damages, research taxes for tipped employee | 2 | $290.00 | $580.00 |
| 6/4/2009 | BM | Review Answer | 1 | $290.00 | $290.00 |
| 6/10/2009 | BM | Telephone conference with client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 6/18/2009 | BM | Telephone conference with Knuckles regarding joint status report | 0.25 | $290.00 | $72.50 |
| 6/19/2009 | BM | Contact witnesses regarding potential statements | 0.25 | $290.00 | $72.50 |
| 6/23/2009 | BM | Telephone conference with McGurk's office | 1.5 | $290.00 | $435.00 |
| 6/25/2009 | BM | Discuss case strategy w/AC | 0.25 | $290.00 | $72.50 |
| 6/25/2009 | BM | Correspondence and telephone conference w/Knuckles regarding joint status report | 0.25 | $290.00 | $72.50 |
| 6/25/2009 | BM | Draft joint status report | 0.5 | $290.00 | $145.00 |
| 6/26/2009 | BM | Telephone conference regarding REDACTED PER LR54.3(d)(1) | 1.25 | $290.00 | $362.50 |
| 6/26/2009 | BM | Telephone conference and correspondnece w/Knuckles and McGurk regarding status hearing | 0.25 | $290.00 | $72.50 |
| 6/26/2009 | BM | Draft consent to magistrate | 0.25 | $290.00 | $72.50 |
| 7/15/2009 | BM | Telephone conference with Knuckles and clerk regarding consent to magistrate judge | 0.25 | $290.00 | $72.50 |
| 7/15/2009 | BM | Telephone conference with McGurk regarding initial status | 0.25 | $290.00 | $72.50 |
| 7/15/2009 | BM | Draft and file initial status report | 1.25 | $290.00 | $362.50 |
| 7/15/2009 | BM | Review, revise, and file motion to send opt-in notice | 1.5 | $290.00 | $435.00 |
| 7/17/2009 | BM | Status hearing | 1 | $290.00 | $290.00 |
| 7/17/2009 | BM | Prep for status hearing | 1 | $290.00 | $290.00 |
| 7/17/2009 | BM | Prep for hearing on motion to send opt-in notice | 0.25 | $290.00 | $72.50 |
| 7/22/2009 | BM | Correspondence w/Knuckles regarding tolling agreement | 0.75 | $290.00 | $217.50 |
| 7/22/2009 | BM | Draft tolling agreement | 0.25 | $290.00 | $72.50 |
| 7/30/2009 | BM | Review defendants' memo in response to opt-in motion | 0.25 | $290.00 | $72.50 |
| 8/5/2009 | BM | Draft reply to motion to send opt-in notice | 0.5 | $290.00 | $145.00 |
| 8/19/2009 | BM | Draft reply in support of motion to send opt-in notice | 8.25 | $290.00 | $2,392.50 |
| 8/19/2009 | BM | Correspondence w/Knuckles regarding tolling agreement | 0.25 | $290.00 | $72.50 |
| 9/17/2009 | BM | Correspondence w/Knuckles regarding tolling order | 0.25 | $290.00 | $72.50 |
| 9/17/2009 | BM | Draft tolling order | 0.25 | $290.00 | $72.50 |
| 9/18/2009 | BM | Correspondence w/Judge regarding proposed tolling order | 0.25 | $290.00 | $72.50 |
| 10/15/2009 | BM | Review opt-in affidavit and draft amended opt-in affidavit | 0.5 | $290.00 | $145.00 |
| 10/16/2009 | BM | Research payroll withholdings, draft second opt-in affidavit | 0.5 | $290.00 | $145.00 |
| 10/16/2009 | BM | Draft opt-in second affidavit and motion to send opt-in notice | 1 | $290.00 | $290.00 |
| 10/20/2009 | BM | Status hearing | 0.75 | $290.00 | $217.50 |
| 10/28/2009 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 11/5/2009 | BM | Draft second affidavit regarding opt-in, follow up w/client regarding REDACTED PER LR54.3(d)(1) | 1 | $290.00 | $290.00 |
| 11/11/2009 | BM | Contact Holdren regarding statement | 0.25 | $290.00 | $72.50 |
| 11/11/2009 | BM | Telephone conference with client regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 11/17/2009 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 11/18/2009 | BM | Review and revise interrogatories | 0.5 | $290.00 | $145.00 |
| 11/18/2009 | BM | Review and revise second opt-in affidavit, correspondence w/client regarding REDACTED PER LR54.3(1) | 0.25 | $290.00 | $72.50 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 11/18/2009 | BM | Telephone conference with Holdren regarding Quigley's wage practices, draft affidavit for Holdren | 2.5 | $290.00 | $725.00 |
| 11/19/2009 | BM | regarding same, correspondence w/Holdren regarding same | | | |
| 11/19/2009 | BM | Draft deposition notice | 0.25 | $290.00 | $72.50 |
| 11/19/2009 | BM | Review and revise document requests | 0.75 | $290.00 | $217.50 |
| 11/19/2009 | BM | Review and revise second opt-in affidavit, correspondence w/client regarding same | 0.25 | $290.00 | $72.50 |
| 11/20/2009 | BM | Draft 30(b)(6) deposition notice | 0.5 | $290.00 | $145.00 |
| 11/20/2009 | BM | Review and revise interrogatories and document requests | 0.25 | $290.00 | $72.50 |
| 12/1/2009 | BM | Draft renewed motion to send opt-in notice | 1 | $290.00 | $290.00 |
| 12/2/2009 | BM | Correspondence w/Knuckles regarding discovery | 2 | $290.00 | $580.00 |
| 12/2/2009 | BM | Review and revise discovery requests | 0.25 | $290.00 | $72.50 |
| 12/2/2009 | BM | Correspondence w/Knuckles regarding Rule 26 Disclosures | 2 | $290.00 | $580.00 |
| 12/4/2009 | BM | Review and revise renewed motion to send opt-in notice | 1 | $290.00 | $290.00 |
| 12/7/2009 | BM | Hearing on motion to send opt-in notice | 0.25 | $290.00 | $72.50 |
| 12/10/2009 | BM | Draft Rule 26 Disclosures | 1 | $290.00 | $290.00 |
| 12/10/2009 | BM | Draft Rule 26 Disclosures, correspondence w/Knuckles regarding same | 2.25 | $290.00 | $652.50 |
| 12/30/2009 | BM | Telephone conference with Knuckles regarding depositions | 0.5 | $290.00 | $145.00 |
| 1/5/2010 | BM | Telephone conference with client regarding potential deposition dates | 0.25 | $290.00 | $72.50 |
| 1/5/2010 | BM | Telephone conference with Knuckles regarding depositions | 0.25 | $290.00 | $72.50 |
| 1/8/2010 | BM | Review Defendants' response to opt-in motion | 0.25 | $290.00 | $72.50 |
| 1/8/2010 | BM | Correspondence w/Knuckles regarding depositions | 0.25 | $290.00 | $72.50 |
| 1/12/2010 | BM | Review documents produced by Defendants, review Defendants' interrogatory responses | 1 | $290.00 | $290.00 |
| 1/15/2010 | BM | Correspondence w/Knuckles regarding deposition schedule | 0.25 | $290.00 | $72.50 |
| 1/15/2010 | BM | Correspondence w/AC regarding Defendants contacting potential opt-in plaintiffs | 0.25 | $290.00 | $72.50 |
| 1/15/2010 | BM | Draft letter to client regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 1/15/2010 | BM | Review Defendants' requests to admit | 0.25 | $290.00 | $72.50 |
| 1/18/2010 | BM | Discuss notice to employees regarding C&S with REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 1/26/2010 | BM | Correspondence from client REDACTED PER LR54.3(d)(1) | 1 | $290.00 | $290.00 |
| 1/27/2010 | BM | Correspondence w/Knuckles regarding depositions | 0.25 | $290.00 | $72.50 |
| 1/27/2010 | BM | Telephone conference with client REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 1/28/2010 | BM | Draft reply to opt-in motion | 1.5 | $290.00 | $435.00 |
| 1/28/2010 | BM | Draft reply in support of opt-in motion | 6.25 | $290.00 | $1,812.50 |
| 1/29/2010 | BM | Review defendants' interrogatories | 0.25 | $290.00 | $72.50 |
| 2/2/2010 | BM | Draft reply in support of opt-in motion | 0.25 | $290.00 | $72.50 |
| 2/4/2010 | BM | Correspondence w/Knuckles regarding depositions | 4.25 | $290.00 | $1,232.50 |
| 2/5/2010 | BM | Prep for hearing on motion to send opt-in notice | 0.25 | $290.00 | $72.50 |
| 2/8/2010 | BM | Court hearing on motion to send opt-in notice | 1.75 | $290.00 | $507.50 |
| 2/9/2010 | BM | Correspondence w/Knuckles regarding opt-in notice and draft order | 0.25 | $290.00 | $72.50 |
| 2/9/2010 | BM | Draft order regarding non contact by defendant | 0.25 | $290.00 | $72.50 |
| 2/9/2010 | BM | Review and revise opt-in notice | 0.5 | $290.00 | $145.00 |
| 2/12/2010 | BM | Review defendants' discovery requests | 0.25 | $290.00 | $72.50 |
| 2/12/2010 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 2/12/2010 | BM | Correspondence w/court regarding draft order | 0.25 | $290.00 | $72.50 |
| 2/17/2010 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 2/17/2010 | BM | Telephone conference with REDACTED PER LR54.3(d)(1) regarding conversation w/Nosek | 0.25 | $290.00 | $72.50 |
| 2/18/2010 | BM | Correspondence from client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 2/19/2010 | BM | Review time records, payroll records, and other documents produced by Defendants | 2 | $290.00 | $580.00 |
| 2/19/2010 | BM | Draft response to requests to admit | 0.5 | $290.00 | $145.00 |
| 2/22/2010 | BM | Prepare and review opt-in notice for mailing | 0.5 | $290.00 | $145.00 |

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 2/22/2010 | BM | Draft responses to Requests to Admit | 2.5 | $290.00 | $725.00 |
| 2/22/2010 | BM | Telephone conference with client regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 2/23/2010 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 2/26/2010 | BM | Draft response to interrogatories, correspondence with client regarding same | 1.25 | $290.00 | $362.50 |
| 2/27/2010 | BM | Draft response to document requests | 0.75 | $290.00 | $217.50 |
| 3/2/2010 | BM | Correspondence w/Knuckles regarding discovery | 0.25 | $290.00 | $72.50 |
| 3/3/2010 | BM | Draft interrogatories | 0.75 | $290.00 | $217.50 |
| 3/3/2010 | BM | Draft document requests | 0.75 | $290.00 | $217.50 |
| 3/3/2010 | BM | Draft notice of inspection | 0.25 | $290.00 | $72.50 |
| 3/3/2010 | BM | Review and revise discovery responses | 0.25 | $290.00 | $72.50 |
| 3/3/2010 | BM | Correspondence w/Knuckles regarding opt-in notice | 0.75 | $290.00 | $217.50 |
| 3/3/2010 | BM | Correspondence from Knuckles regarding discovery | 0.25 | $290.00 | $72.50 |
| 3/4/2010 | BM | Review and revise discovery requests | 0.25 | $290.00 | $72.50 |
| 3/4/2010 | BM | Research REDACTED PER LR54.3(d)(1) current address | 0.25 | $290.00 | $72.50 |
| 3/8/2010 | BM | Review and revise discovery requests, correspondence w/Knuckles regarding same | 0.5 | $290.00 | $145.00 |
| 3/9/2010 | BM | Correspondence w/Knuckles regarding discovery | 0.25 | $290.00 | $72.50 |
| 3/9/2010 | BM | Follow up with client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 3/15/2010 | BM | Telephone conference with client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 3/15/2010 | BM | Correspondence w/Holdren | 0.25 | $290.00 | $72.50 |
| 3/15/2010 | BM | Review case strategy and opt-in plaintiffs | 0.5 | $290.00 | $145.00 |
| 3/15/2010 | BM | Telephone conference with Knuckles regarding inspection | 0.25 | $290.00 | $72.50 |
| 3/16/2010 | BM | Correspondence w/Holdren | 0.25 | $290.00 | $72.50 |
| 3/18/2010 | BM | Review and file Holdren opt-in notice | 0.25 | $290.00 | $72.50 |
| 3/19/2010 | BM | Research updated addresses for potential opt-in plaintiffs | 0.25 | $290.00 | $72.50 |
| 3/26/2010 | BM | Follow up w/Knuckles regarding inspection and depositions | 0.25 | $290.00 | $72.50 |
| 3/31/2010 | BM | Research e-discovery | 0.25 | $290.00 | $72.50 |
| 3/31/2010 | BM | Review letter from Knuckles regarding discovery, correspondence w/Knuckles in response | 0.75 | $290.00 | $217.50 |
| 3/31/2010 | BM | Telephone conference with Knuckles regarding discovery | 0.5 | $290.00 | $145.00 |
| 4/6/2010 | BM | Correspondence w/Knuckles regarding electronic discovery and inspection | 0.75 | $290.00 | $217.50 |
| 4/12/2010 | BM | Correspondence from Knuckles regarding e-discovery | 0.25 | $290.00 | $72.50 |
| 4/13/2010 | BM | Correspondence w/Knuckles regarding electronic discovery | 0.5 | $290.00 | $145.00 |
| 4/14/2010 | BM | Research e-discovery, correspondence w/computer forensics experts | 0.75 | $290.00 | $217.50 |
| 4/14/2010 | BM | Review defendants' motion for protective order | 0.25 | $290.00 | $72.50 |
| 4/15/2010 | BM | Telephone conference with Murray regarding electronic discovery and point of sales systems, research Defendants' point of sales systems | 1.25 | $290.00 | $362.50 |
| 4/15/2010 | BM | Review defendants' discovery responses | 1 | $290.00 | $290.00 |
| 4/20/2010 | BM | Hearing on motion for protective order | 1.25 | $290.00 | $362.50 |
| 4/21/2010 | BM | Discuss settlement strategy w/AC | 0.25 | $290.00 | $72.50 |
| 4/21/2010 | BM | Telephone conference with Knuckles regarding electronic time records and settlement possibilities | 0.25 | $290.00 | $72.50 |
| 4/22/2010 | BM | Calculate potential damages | 0.25 | $290.00 | $72.50 |
| 4/23/2010 | BM | Correspondence w/Murray regarding e-discovery issues | 0.25 | $290.00 | $72.50 |
| 4/27/2010 | BM | Correspondence w/Murray regarding audit trail | 0.25 | $290.00 | $72.50 |
| 4/28/2010 | BM | Telephone conference with client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 5/10/2010 | BM | Calculate damages, discuss settlement strategy w/AC | 1.75 | $290.00 | $507.50 |
| 5/10/2010 | BM | Correspondence w/Murray regarding inspection | 0.25 | $290.00 | $72.50 |
| 5/12/2010 | BM | Draft amended inspection notice | 0.25 | $290.00 | $72.50 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 5/12/2010 | BM | Correspondence w/Knuckles regarding inspection | 0.25 | $290.00 | $72.50 |
| 5/14/2010 | BM | Telephone conference with Murray regarding inspection | 0.25 | $290.00 | $72.50 |
| 5/14/2010 | BM | Draft demand letter | 2 | $290.00 | $580.00 |
| 5/18/2010 | BM | Travel to and from Naperville for inspection | 3 | $290.00 | $870.00 |
| 5/18/2010 | BM | Inspection | 1.25 | $290.00 | $362.50 |
| 5/18/2010 | BM | Review inspection w/Murray and client | 0.5 | $290.00 | $145.00 |
| 5/21/2010 | BM | Prep w/Murray and client for inspection | 0.25 | $290.00 | $72.50 |
| 5/24/2010 | BM | Correspondence w/Knuckles regarding audit trail | 0.25 | $290.00 | $72.50 |
| 5/28/2010 | BM | Review audit trail of time record changes | 1.25 | $290.00 | $362.50 |
| 5/28/2010 | BM | Telephone conference with client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 6/2/2010 | BM | Review and analyze time record changes | 0.75 | $290.00 | $217.50 |
| 6/10/2010 | BM | Status hearing | 1 | $290.00 | $290.00 |
| 6/10/2010 | BM | Telephone conference with Holden regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 6/10/2010 | BM | Telephone conference with Knuckles regarding deposition dates | 0.25 | $290.00 | $72.50 |
| 6/10/2010 | BM | Telephone conference with Holden regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 6/10/2010 | BM | Review and analyze changes in clock in records | 0.25 | $290.00 | $72.50 |
| 6/17/2010 | BM | Correspondence w/Knuckles regarding settlement and depositions | 0.25 | $290.00 | $72.50 |
| 6/21/2010 | BM | Telephone conference with Knuckles regarding deposition schedule | 0.5 | $290.00 | $145.00 |
| 6/30/2010 | BM | Correspondence w/Knuckles regarding deposition notices | 0.25 | $290.00 | $72.50 |
| 6/30/2010 | BM | Draft deposition notices | 0.25 | $290.00 | $72.50 |
| 6/30/2010 | BM | Review defendants' requests to admit | 0.5 | $290.00 | $145.00 |
| 7/7/2010 | BM | Correspondence w/Dominguez regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 7/7/2010 | BM | Correspondence w/Holden regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/14/2010 | BM | Correspondence with Dominguez regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/16/2010 | BM | Prep for depositions | 2.5 | $290.00 | $725.00 |
| 7/18/2010 | BM | Prep for depositions | 2 | $290.00 | $580.00 |
| 7/19/2010 | BM | Correspondence w/Dominguez regarding REDACTED PER LR54.3(d)(1) | 4.25 | $290.00 | $1,232.50 |
| 7/19/2010 | BM | Meeting w/Dominguez to REDACTED PER LR54.3(d)(1) | 1.75 | $290.00 | $507.50 |
| 7/20/2010 | BM | Draft responses to second set of requests to admit | 0.5 | $290.00 | $145.00 |
| 7/20/2010 | BM | Prep for deposition, Quigley deposition | 3.25 | $290.00 | $942.50 |
| 7/21/2010 | BM | Calculate damages | 0.25 | $290.00 | $72.50 |
| 7/21/2010 | BM | Correspondence w/Holden regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/21/2010 | BM | Michael deposition | 3.75 | $290.00 | $1,087.50 |
| 7/21/2010 | BM | Meeting w/Dominguez regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/21/2010 | BM | Prep for Michael deposition | 0.5 | $290.00 | $145.00 |
| 7/21/2010 | BM | Status hearing | 0.5 | $290.00 | $145.00 |
| 7/22/2010 | BM | Review and revise response to requests to admit | 1.5 | $290.00 | $435.00 |
| 7/22/2010 | BM | Correspondence w/Holden regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/22/2010 | BM | Nosek deposition | 2.75 | $290.00 | $797.50 |
| 7/23/2010 | BM | Correspondence with Dominguez regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/22/2010 | BM | Prep for Nosek deposition | 0.5 | $290.00 | $145.00 |
| 7/22/2010 | BM | Prep for Baggett deposition | 0.5 | $290.00 | $145.00 |
| 7/22/2010 | BM | Baggett deposition | 1 | $290.00 | $290.00 |
| 7/23/2010 | BM | Telephone conference with Dominguez regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 7/23/2010 | BM | Correspondence w/Knuckles regarding depositions | 0.25 | $290.00 | $72.50 |
| 7/23/2010 | BM | Correspondence w/Knuckles regarding depositions | 0.5 | $290.00 | $145.00 |
| 7/23/2010 | BM | Correspondence w/Holden regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 7/27/2010 | BM | Correspondence w/Holden regarding deposition | 0.25 | $290.00 | $72.50 |

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 7/28/2010 | BM | Correspondence w/Knuckles regarding depositions and trial dates | 0.25 | $290.00 | $72.50 |
| 7/29/2010 | BM | Correspondence w/Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 8/4/2010 | BM | Telephone conference with Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 8/5/2010 | BM | Calculate damages | 0.25 | $290.00 | $72.50 |
| 8/6/2010 | BM | Calculate damages | 0.25 | $290.00 | $72.50 |
| 8/13/2010 | BM | Telephone conference with Holdren regarding REDACTED PER LR54.3(d)(1) | 1 | $290.00 | $290.00 |
| 8/16/2010 | BM | Correspondence w/Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 8/17/2010 | BM | Correspondence w/Dominguez regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 8/18/2010 | BM | Research calculating overtime for tipped employees | 0.25 | $290.00 | $72.50 |
| 8/18/2010 | BM | Holdren Deposition | 0.25 | $290.00 | $72.50 |
| 8/18/2010 | BM | Dominguez Deposition | 1 | $290.00 | $290.00 |
| 8/20/2010 | BM | Travel to and from Naperville for client depositions | 1.5 | $290.00 | $435.00 |
| 8/26/2010 | BM | Review client depositions w/AC | 2 | $290.00 | $580.00 |
| 8/30/2010 | BM | Analyze and develop strategy for summary judgment | 0.25 | $290.00 | $72.50 |
| 9/3/2010 | BM | Review and analyze damages chart | 0.5 | $290.00 | $145.00 |
| 9/21/2010 | BM | Draft motion to amend complaint and amended complaint | 1.75 | $290.00 | $507.50 |
| 9/22/2010 | BM | Review client depositions | 0.25 | $290.00 | $72.50 |
| 9/22/2010 | BM | Telephone conference with clerk regarding summary judgment extension | 0.25 | $290.00 | $72.50 |
| 9/22/2010 | BM | Telephone conference with McGurk regarding summary judgment extension | 0.25 | $290.00 | $72.50 |
| 9/28/2010 | BM | Correspondence w/Knuckles regarding summary judgment extension | 0.25 | $290.00 | $72.50 |
| 9/28/2010 | BM | Correspondence w/McGurk regarding revisions to motion to extend summary judgment extension | 0.25 | $290.00 | $72.50 |
| 9/28/2010 | BM | Review and revise motion to extend summary judgment deadline | 0.25 | $290.00 | $72.50 |
| 9/28/2010 | BM | Correspondence w/McGurk regarding motion to extend summary judgment | 0.25 | $290.00 | $72.50 |
| 11/2/2010 | BM | Draft memo in support of motion for summary judgment | 3.25 | $290.00 | $942.50 |
| 11/3/2010 | BM | Draft memo in support of motion for summary judgment | 9.5 | $290.00 | $2,755.00 |
| 11/4/2010 | BM | Draft 56.1 statement of facts | 6.75 | $290.00 | $1,957.50 |
| 11/5/2010 | BM | Draft 56.1 statement of facts | 3.5 | $290.00 | $1,015.00 |
| 11/5/2010 | BM | Review and revise memo in support of summary judgment | 1 | $290.00 | $290.00 |
| 11/7/2010 | BM | Review and revise memo in support of summary judgment | 1.25 | $290.00 | $362.50 |
| 11/7/2010 | BM | Draft LR 56.1 statement of facts | 2 | $290.00 | $580.00 |
| 11/8/2010 | BM | Draft LR 56.1 statement of facts | 2 | $290.00 | $580.00 |
| 11/9/2010 | BM | Review defendants' motion for summary judgment | 2.5 | $290.00 | $725.00 |
| 11/9/2010 | BM | Review and revise memo in support of motion for summary judgment and LR 56.1 statement of facts, prep exhibits for filing | 0.75 | $290.00 | $217.50 |
| 11/9/2010 | BM | Draft motion for summary judgment | 3.5 | $290.00 | $1,015.00 |
| 12/2/2010 | BM | Draft motion for summary judgment | 0.5 | $290.00 | $145.00 |
| 12/3/2010 | BM | Correspondence w/Knuckles regarding LR 56.1 statement | 0.25 | $290.00 | $72.50 |
| 12/4/2010 | BM | Draft response to summary judgment | 6 | $290.00 | $1,740.00 |
| 12/6/2010 | BM | Draft response to summary judgment | 3.5 | $290.00 | $1,015.00 |
| 12/7/2010 | BM | Draft response to summary judgment | 1.75 | $290.00 | $507.50 |
| 12/10/2010 | BM | Draft LR 56.1(b)(3) statement of facts and respond to Defendants' statement of facts | 3.25 | $290.00 | $942.50 |
| 12/10/2010 | BM | Prep Exhibit J to LR 56.1(b)(3) statement of facts for filing | 0.25 | $290.00 | $72.50 |
| 12/14/2010 | BM | Review defendant's response to summary judgment | 0.25 | $290.00 | $72.50 |
| 12/21/2010 | BM | Review final response to defendants' motion for summary judgment | 0.5 | $290.00 | $145.00 |
| 12/22/2010 | BM | Draft reply in support of motion for summary judgment | 4.75 | $290.00 | $1,377.50 |
| 12/22/2010 | BM | Draft reply in support of motion for summary judgment | 5.25 | $290.00 | $1,522.50 |
| 1/11/2011 | BM | Prep for status hearing | 1.5 | $290.00 | $435.00 |
| 2/24/2011 | BM | Telephone conference with McGurk regarding continued status | 0.25 | $290.00 | $72.50 |

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 5/19/2011 | BM | Correspondence w/client regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 5/25/2011 | BM | Review order granting summary judgment in part | 0.75 | $290.00 | $217.50 |
| 6/7/2011 | BM | Calculate damages | 0.5 | $290.00 | $145.00 |
| 6/7/2011 | BM | Telephone conference with Knuckles regarding damages | 0.25 | $290.00 | $72.50 |
| 6/9/2011 | BM | Status hearing | 0.25 | $290.00 | $72.50 |
| 6/9/2011 | BM | Telephone conference with Dominguez regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 6/13/2011 | BM | Correspondence w/Holdren regarding REDACTED PER LR54.3(d)(1) | 1 | $290.00 | $290.00 |
| 6/15/2011 | BM | Research settlement conference w/trial judge | 1 | $290.00 | $290.00 |
| 6/15/2011 | BM | Review fees | 0.25 | $290.00 | $72.50 |
| 6/17/2011 | BM | Correspondence w/Knuckles regarding settlement conference | 0.25 | $290.00 | $72.50 |
| 6/17/2011 | BM | Discuss settlement conference w/AC | 0.25 | $290.00 | $72.50 |
| 6/17/2011 | BM | Correspondence from Knuckles regarding waiver for settlement conference | 0.25 | $290.00 | $72.50 |
| 6/17/2011 | BM | Correspondence w/Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 6/17/2011 | BM | Correspondence w/Knuckles regarding waiver | 0.25 | $290.00 | $72.50 |
| 7/6/2011 | BM | Discuss strategy regarding Holdren w/AC | 0.25 | $290.00 | $72.50 |
| 7/6/2011 | BM | Draft waiver | 0.25 | $290.00 | $72.50 |
| 7/6/2011 | BM | Correspondence w/Knuckles regarding W-9 | 0.25 | $290.00 | $72.50 |
| 7/7/2011 | BM | Draft letter to Holdren regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 7/7/2011 | BM | Prep for settlement conference | 0.25 | $290.00 | $72.50 |
| 7/7/2011 | BM | Prep for settlement conference | 0.25 | $290.00 | $72.50 |
| 7/8/2011 | BM | Correspondence w/Knuckles regarding waiver | 0.25 | $290.00 | $72.50 |
| 7/8/2011 | BM | Correspondence w/Dominguez REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/8/2011 | BM | Correspondence w/Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/11/2011 | BM | Correspondence w/Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/12/2011 | BM | Correspondence w/Knuckles regarding W-9 | 0.25 | $290.00 | $72.50 |
| 7/12/2011 | BM | Settlement conference | 4 | $290.00 | $1,160.00 |
| 7/12/2011 | BM | Prep for settlement conference | 0.5 | $290.00 | $145.00 |
| 7/12/2011 | BM | Research settling claims of missing clients | 1.25 | $290.00 | $362.50 |
| 7/14/2011 | BM | Discuss settlement strategy regarding Holdren w/AC | 0.25 | $290.00 | $72.50 |
| 7/14/2011 | BM | Draft letter and email to Holdren regarding REDACTED PER LR54.3(d)(1) | 1.5 | $290.00 | $435.00 |
| 7/14/2011 | BM | Telephone conference with Holdren regarding REDACTED PER LR54.3(d)(1) | 0.5 | $290.00 | $145.00 |
| 7/25/2011 | BM | Telephone conference with Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/25/2011 | BM | Correspondence w/Holdren regarding REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 7/26/2011 | BM | Draft motion to voluntarily dismiss Holdren's claims and supporting affidavit | 4.75 | $290.00 | $1,377.50 |
| 7/29/2011 | BM | Telephone conference with Holdren re dismissing claims | 0.25 | $290.00 | $72.50 |
| 7/29/2011 | BM | Discuss case strategy w/AC | 0.25 | $290.00 | $72.50 |
| 7/29/2011 | BM | Hearing on motion to voluntary dismiss | 1 | $290.00 | $290.00 |
| 8/4/2011 | BM | Review and revise correspondence to REDACTED PER LR54.3(d)(1) | 0.25 | $290.00 | $72.50 |
| 8/5/2011 | BM | Discuss telephone hearing w/MJS | 0.25 | $290.00 | $72.50 |
| 8/5/2011 | BM | Telephone conference with MJ Cole and Knuckles regarding dismissal | 0.25 | $290.00 | $72.50 |
| 8/10/2011 | BM | Telephone conference with Knuckles regarding dismissal | 0.25 | $290.00 | $72.50 |
| 8/10/2011 | BM | Discuss fee petition w/AC | 0.25 | $290.00 | $72.50 |
| 8/11/2011 | BM | Draft fee petition | 2.25 | $290.00 | $652.50 |
| 8/12/2011 | BM | Draft fee petition | 0.25 | $290.00 | $72.50 |
| 8/12/2011 | BM | Correspondence w/Holdren regarding dismissal | 0.25 | $290.00 | $72.50 |
| 8/15/2011 | BM | Draft fee petition and affidavits in support of fee petition | 2 | $290.00 | $580.00 |
| 8/15/2011 | BM | Telephone conference with Wood regarding declaration for fee petition | 0.25 | $290.00 | $72.50 |
| 8/15/2011 | BM | Draft declaration for Wood | 0.5 | $290.00 | $145.00 |
| 8/15/2011 | BM | Draft declaration for Brennan | 0.25 | $290.00 | $72.50 |
| 8/15/2011 | BM | Telephone conference with Brennan regarding declaration | 0.5 | $290.00 | $145.00 |

| Date | Initials | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/15/2011 | BM | Correspondence w/Wood regarding declaration | 0.25 | $290.00 | $72.50 |
| 8/15/2011 | BM | Correspondence w/Brennan regarding declaration | 0.25 | $290.00 | $72.50 |
| 8/16/2011 | BM | Correspondence from Wood regarding declaration | 0.25 | $290.00 | $72.50 |
| 8/17/2011 | BM | Prep fee petition supporting documents | 0.25 | $290.00 | $72.50 |
| | BM | Future: Discussion with Knuckles | 1 | $290.00 | $290.00 |
| | BM | Future: Review Defendants' materials | 2 | $290.00 | $580.00 |
| | BM | Future: Preparation of motion for fees | 6 | $290.00 | $1,740.00 |
| | | **Total for BM:** | 262.75 | | **$76,197.50** |
| 6/2/2010 | JGZ | Review documents produced by Defendants and prepare damages spreadsheet | 3.5 | $120.00 | $420.00 |
| 8/5/2010 | JGZ | Review documents produced by Defendants and prepare damages spreadsheet for Stephanie Holdren | 3 | $120.00 | $360.00 |
| 8/18/2011 | JGZ | Draft letter to Knuckles and prepare documents for fee petition, update fee chart | 1.5 | $120.00 | $180.00 |
| | | **Total for JGZ:** | **8** | | **$960.00** |
| 2/19/2010 | LMS | Prepare and mail out opt-in notices to 49 current and former Quigley's Irish Pub servers and bartenders (postage costs: mailing 49 x $1.05 = $51.45 and self-addressed return envelope 49 x $0.44 = $21.56. Total: $73.01. | 4 | $120.00 | $480.00 |
| | | **Total for LMS:** | **4** | | **$480.00** |
| 9/16/2009 | LTP | Attend motion call, brief attys on appearance, strategy | 1.25 | $240.00 | $300.00 |
| 11/17/2009 | LTP | Discuss opt-in complaint and affidavits with BM | 0.25 | $240.00 | $60.00 |
| 1/7/2010 | LTP | Review response to opt-in motion | 0.25 | $240.00 | $60.00 |
| 1/29/2010 | LTP | Review and redline reply supporting motion for opt-in | 0.75 | $240.00 | $180.00 |
| 3/26/2010 | LTP | Case and discovery strategy with BM | 0.25 | $240.00 | $60.00 |
| 7/21/2010 | LTP | Strategy discussions with BM | 0.5 | $240.00 | $120.00 |
| 7/23/2010 | LTP | Strategy discussions with BM | 0.25 | $240.00 | $60.00 |
| | | **Total for LTP:** | **3.5** | | **$840.00** |
| 4/23/2009 | MJS | Review and revise complaint | 0.5 | $375.00 | $187.50 |
| 4/23/2009 | MJS | Draft complaint, review legal and strategy issues with BM | 0.5 | $375.00 | $187.50 |
| 7/9/2009 | MJS | Review and revise opt in notice | 0.75 | $375.00 | $281.25 |
| 7/16/2009 | MJS | Prep for motion to send notice to similarly situated employees | 0.75 | $375.00 | $281.25 |
| 5/14/2010 | MJS | Review settlement letter | 0.75 | $375.00 | $281.25 |
| 9/3/2010 | MJS | Review and revise Amended Complaint | 0.5 | $375.00 | $187.50 |
| 6/2/2011 | MJS | Review Memorandum Opinion and Order | 0.5 | $375.00 | $187.50 |
| | | **Total for MJS:** | **4.25** | | **$1,593.75** |
| 12/21/2010 | MKE | Research on effect of good faith on back pay under FLSA | 1.5 | $190.00 | $285.00 |
| 6/6/2011 | MKE | Discuss status with BM | 0.25 | $190.00 | $47.50 |
| | | **Total for MKE:** | **1.75** | | **$332.50** |
| | | **Total:** | **329.5** | | **$98,872.50** |
| 5/12/2009 | AC, BM | 04/28/2009 Filing Fee - Complaint | 1 | $350.00 | $350.00 |
| 5/22/2009 | AC, BM | Service fee- Summons and Complaint - Nancy Quigley | 1 | $100.00 | $100.00 |

| Date | | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 5/22/2009 | AC,BM | Service fee- Summons and Complaint - Irish Pub, M. Michael and non-service on N Quigley | 1 | $330.00 | $330.00 |
| 2/2/2010 | AC,BM | Research/Westlaw Charges 01/31/2010-01/31/2010 | 1 | $133.27 | $133.27 |
| 6/28/2010 | AC,BM | 05/18/2010 Site meeting/demonstration of POS software/Inspection at Quigly's/Elijah Technologies | 1 | $325.00 | $325.00 |
| 10/14/2010 | AC,BM | 07/21/2010 Deposition Transcript/Exhibits/Court Reporter - Baggett | 1 | $615.30 | $615.30 |
| 10/14/2010 | AC,BM | 07/21/2010 Deposition Transcript/Exhibits/Court Reporter - Quigley | 1 | $525.95 | $525.95 |
| 10/14/2010 | AC,BM | 07/20/2010 Deposition Transcript/Exhibits/Court Reporter - Michael | 1 | $1,002.80 | $1,002.80 |
| 10/14/2010 | AC,BM | 07/21/2010 Deposition Transcript/Exhibits/Court Reporter - Nosek | 1 | $304.15 | $304.15 |
| 10/14/2010 | AC,BM | Deposition Transcript - Dominguez and Holdren/Inv 102602 | 1 | $256.60 | $256.60 |

**Non-Taxable Expenses:** **$3,943.07**

# Group Exhibit F

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MELODY DOMINGUEZ, STEPHANIE
HOLDREN, and all other Plaintiffs similarly
situated known and unknown,

        Plaintiffs,

v.

QUIGLEY'S IRISH PUB, INC., NANCY
QUIGLEY, and MICHELLE MICHAEL,
individually,

        Defendants.

No. 09 CV 2583

Magistrate Judge Cole

## DECLARATION OF ALEJANDRO CAFFARELLI

I, Alejandro Caffarelli, hereby certify as follows:

1.      I am personally familiar with the matters hereinafter set forth and certify that the same are true in substance and in fact.

2.      I am a founder and Partner at the law offices of Caffarelli & Siegel, Ltd. ("the Firm").

3.      I am one of the attorneys of record in the above-captioned matter.

4.      Plaintiff Melody Dominguez's payment of any attorneys' fees is contingent upon (among other things) a settlement in her favor, and entitles the Firm to its hourly fees.

5.      My time and billing entries are recorded under my initials "AC" in the Firm's time tracking system.

6.      Attached to this Declaration are the true and accurate entries of time ("Entries"), redacted to protect client confidentiality, for my work in the above-captioned case.

7.      I did not bill more time to any task listed in the attached Entries, than I spent performing work in furtherance of the listed task.

8.    I made a concerted effort to perform all work in a thorough but efficient manner.

9.    I believe that the amount of time I spent performing work in this case, for each discrete task listed in the attached Entries, was both reasonable and necessary.

10.    Lennie Moscoso-Smith (reflected as "LMS" in the Firm's billing entries) was employed by the Firm as a paralegal from approximately 2005 through May 2011. While employed by the Firm, Ms. Moscoso-Smith performed work at my direction on the above-captioned matter, as reflected in the attached Entries. Ms. Moscoso-Smith was instructed by me to bill her work accurately, and I believe her billing entries are true and accurate. I moreover believe that the amount of time that Ms. Moscoso-Smith spent performing work in this case, for each discrete task listed in the attached Entries, was both reasonable and necessary.

11.    I have reviewed the time entries and hours worked by all the attorneys and staff who performed work in the above-captioned matter, and to the best of my knowledge I believe that the time reflected in the Firm's time tracking system is both true and accurate.

Further Declarant Sayeth Not,

_____
Signature

8/18/11
_____
Date

## VERIFICATION BY CERTIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: 8/18/11
_____
Date

Alejandro Caffarelli

2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MELODY DOMINGUEZ, STEPHANIE
HOLDREN, and all other Plaintiffs similarly
situated known and unknown,

          Plaintiffs,

v.

QUIGLEY'S IRISH PUB, INC., NANCY
QUIGLEY, and MICHELLE MICHAEL,
individually,

          Defendants.

No. 09 CV 2583

Magistrate Judge Cole

## DECLARATION OF MARC J. SIEGEL

I, Marc J. Siegel, hereby certify as follows:

1.    I am personally familiar with the matters hereinafter set forth and certify that the same are true in substance and in fact.

2.    I am a Partner at the law offices of Caffarelli & Siegel, Ltd. ("the Firm"). While at the Firm, I performed work in the above-captioned lawsuit.

3.    My time and billing entries are recorded under my initials "MJS" in the Firm's time tracking system.

4.    Attached to this Declaration are the true and accurate entries of time ("Entries"), redacted to protect client confidentiality, for my work in the above-captioned case.

5.    I did not bill more time to any task listed in the attached Entries, than I spent performing work in furtherance of the listed task.

6.    I made a concerted effort to perform all work in a thorough but efficient manner.

7.    I believe that the amount of time I spent performing work in this case, for each discrete task listed in the attached Entries, was both reasonable and necessary.

Further Declarant Sayeth Not,

_____
Signature

8 - 18 - 11
_____
Date

## **VERIFICATION BY CERTIFICATION**

Pursuant to 28 U.S. C. §1746, I declare under penalty of perjury that the foregoing

statements are true and correct.

Executed on: 8 - 18 - 11
_____
Date

_____
Marc J. Siegel

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MELODY DOMINGUEZ, STEPHANIE
HOLDREN, and all other Plaintiffs similarly
situated known and unknown,

               Plaintiffs,

v.

QUIGLEY'S IRISH PUB, INC., NANCY
QUIGLEY, and MICHELLE MICHAEL,
individually,

               Defendants.

No. 09 CV 2583

Magistrate Judge Cole

## <u>DECLARATION OF BRADLEY MANEWITH</u>

I, Bradley Manewith, hereby certify as follows:

1.    I am personally familiar with the matters hereinafter set forth and certify that the same are true in substance and in fact.

2.    I have been employed as an Associate Attorney at the law offices of Caffarelli & Siegel, Ltd. ("the Firm") since 2003.

3.    I am one of the attorneys of record in the above-captioned matter.

4.    My time and billing entries are recorded under my initials "BM" in the Firm's time tracking system.

5.    Attached to this Declaration are the true and accurate entries of time ("Entries"), redacted to protect client confidentiality, for my work in the above-captioned case.

6.    I did not bill more time to any task listed in the attached Entries, than I spent performing work in furtherance of the listed task.

7.    I made a concerted effort to perform all work in a thorough but efficient manner.

8.    I believe that the amount of time I spent performing work in this case, for each discrete task listed in the attached Entries, was both reasonable and necessary.

Further Declarant Sayeth Not,

_____
Signature

_____
Date  8/17/2011


## VERIFICATION BY CERTIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: _____
Date

_____
8/17/2011
Bradley Manewith

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MELODY DOMINGUEZ, STEPHANIE
HOLDREN, and all other Plaintiffs similarly
situated known and unknown,

               Plaintiffs,

v.

QUIGLEY'S IRISH PUB, INC., NANCY
QUIGLEY, and MICHELLE MICHAEL,
individually,

               Defendants.

No. 09 CV 2583

Magistrate Judge Cole

## <u>DECLARATION OF LORRAINE T. PEETERS</u>

I, Lorraine T. Peeters, hereby certify as follows:

1.     I am personally familiar with the matters hereinafter set forth and certify that the same are true in substance and in fact.

2.     I have been employed as an Associate Attorney at the law offices of Caffarelli & Siegel, Ltd. ("the Firm") since 2007. During my employment, I performed work in the above-captioned lawsuit.

3.     While employed by the Firm, my time and billing entries have been recorded under my initials "LTP" in the Firm's time tracking system.

4.     Attached to this Declaration are the true and accurate entries of time ("Entries"), redacted to protect client confidentiality, for my work in the above-captioned case.

5.     I did not bill more time to any task listed in the attached Entries, than I spent performing work in furtherance of the listed task.

6.     I made a concerted effort to perform all work in a thorough but efficient manner.

7.    I believe that the amount of time I spent performing work in this case, for each discrete task listed in the attached Entries, was both reasonable and necessary.

Further Declarant Sayeth Not,

_____
Signature

_____
Date    8/18/11

## VERIFICATION BY CERTIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: ___8/18/11_____
Date

_____
Lorraine T. Peeters

2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MELODY DOMINGUEZ, STEPHANIE
HOLDREN, and all other Plaintiffs similarly
situated known and unknown,

   Plaintiffs,

v.

QUIGLEY'S IRISH PUB, INC., NANCY
QUIGLEY, and MICHELLE MICHAEL,
individually,

   Defendants.

No. 09 CV 2583

Magistrate Judge Cole

## <u>DECLARATION OF MADELINE K. ENGEL</u>

I, Madeline K. Engel, hereby certify as follows:

1. I am personally familiar with the matters hereinafter set forth and certify that the same are true in substance and in fact.

2. I have been employed as an Associate Attorney at the law offices of Caffarelli & Siegel, Ltd. ("the Firm") since November 2010. During my employment, I performed work in the above-captioned lawsuit.

3. While employed by the Firm, my time and billing entries have been recorded under my initials "MKE" in the Firm's time tracking system.

4. Attached to this Declaration are the true and accurate entries of time ("Entries"), redacted to protect client confidentiality, for my work in the above-captioned case.

5. I did not bill more time to any task listed in the attached Entries, than I spent performing work in furtherance of the listed task.

6. I made a concerted effort to perform all work in a thorough but efficient manner.

7.    I believe that the amount of time I spent performing work in this case, for each discrete task listed in the attached Entries, was both reasonable and necessary.

Further Declarant Sayeth Not,    _____
                                 Signature

                                 _____
                                 Date

## VERIFICATION BY CERTIFICATION

Pursuant to 28 U.S. C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on:    _____
                Date

                _____
                Madeline K. Engel

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MELODY DOMINGUEZ, STEPHANIE
HOLDREN, and all other Plaintiffs similarly
situated known and unknown,

          Plaintiffs,

v.

QUIGLEY'S IRISH PUB, INC., NANCY
QUIGLEY, and MICHELLE MICHAEL,
individually,

          Defendants.

No. 09 CV 2583

Magistrate Judge Cole

## DECLARATION OF JOANNA GERMANN ZALEWSKI

I, Joanna Germann Zalewski, hereby certify as follows:

1.     I am personally familiar with the matters hereinafter set forth and certify that the same are true in substance and in fact.

2.     I have been employed as the Office Manager/Paralegal at the law offices of Caffarelli & Siegel, Ltd. ("the Firm") since 2005. During my employment, I performed work in the above-captioned lawsuit.

3.     While employed by the Firm, my time and billing entries have been recorded under my initials "JGZ" in the Firm's time tracking system.

4.     Attached to this Declaration are the true and accurate entries of time ("Entries"), redacted to protect client confidentiality, for my work in the above-captioned case.

5.     I did not bill more time to any task listed in the attached Entries, than I spent performing work in furtherance of the listed task.

6.     I made a concerted effort to perform all work in a thorough but efficient manner.

7.    I believe that the amount of time I spent performing work in this case, for each discrete task listed in the attached Entries, was both reasonable and necessary.

Further Declarant Sayeth Not,

_____
Signature

_____
Date

## VERIFICATION BY CERTIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: _____
Date

_____
Joanna Germann Zalewski

2