# Exhibit H

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 9 C 5803 | **DATE** | 2/10/2011 |
| **CASE TITLE** | | Berg vs. Culhane | |

**DOCKET ENTRY TEXT**

Defendant's motion for sanctions is granted in the amount of $3,685.00.

■[ For further details see text below.]                                        Docketing to mail notices.

---

## STATEMENT

Before the Court is Defendants Officer Thomas Culhane and the Village of Oak Law's ("the Defendants") Motion for Sanctions against Plaintiff Christopher Berg's attorney, Scott T. Kamin ("Kamin"). Pursuant to Federal Rule of Civil Procedure 16(f), the Defendants seek to recover reasonable fees and costs associated with the preparation of the final pretrial order, jury instructions, verdict forms, special interrogatories, communications providing these documents to Kamin, and the fees for preparing this Motion. The Defendants assert that sanctions are warranted in this case because Kamin failed to work with the Defendants' attorney, Brandon K. Lemley ("Lemley") to draft and file a joint final pretrial order. The Court agrees and grants sanctions against Kamin in the amount of $3,685.00.

On July 29, 2010, the Court set a trial date and a schedule for pretrial filings. Specifically, the Court ordered the parties to submit their joint final pretrial order by August 16, 2010. Knowing that the Local Rules place the burden on the plaintiff to draft the joint final pretrial order, over the course of the next two weeks, Lemley repeatedly asked Kamin when he was planning on completing his draft pretrial order. Kamin responded that he would supply Lemley with a draft before leaving for a long-scheduled vacation with his children on August 6, 2010. Having still not seen a draft of the final pretrial order from Kamin, Lemley began to prepare his own draft on August 10, 2010. With no input from Kamin, Lemley also prepared jury instructions, verdict forms, and special interrogatories. On the morning of August 16, 2010, the date the joint final pretrial order was due, Lemley still had not received an initial draft from Kamin. That afternoon, in a string of emails exchanged between the two attorneys, Kamin indicated that he planned to finalize the draft order by 6:00 p.m., and that he would submit it electronically prior to the midnight deadline. Lemley responded to explain that he had already filed the pretrial order he had prepared. On August 20, 2010, the Court struck the parties' individually-filed final pretrial orders and ordered the parties to prepare and file a joint order.

Pursuant to Local Rule 16.1, this Court has adopted a standing order that establishes pretrial procedure.

Case: 1:09-cv-05803 Document #: 93 Filed: 02/10/11 Page 2 of 3 PageID #:1015

## STATEMENT

According to the standing order, "[i]t is the obligation of counsel for plaintiff to prepare . . . a draft Order for submission to opposing counsel. Included in plaintiff's obligation for preparation of the Order is submission of it to opposing counsel in ample time for revision and timely filing." Standing Order Establishing Pretrial Procedure § 6(c). The standing order calls for "[f]ull cooperation and assistance of all other counsel . . . to fulfill both the substance and spirit of this Standing Order." *Id.* Federal Rule of Civil Procedure 16(f)(1)(C) allows the Court, on a motion or on its own, to sanction a party for failing to obey a scheduling or other pretrial order. Specifically, the Rule provides that "the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

Here, Kamin violated this Court's standing order without substantial justification. As plaintiff's counsel, Kamin bore the burden of preparing an initial draft of the final pretrial order and had the responsibility to allow Defense counsel to review the order and make any necessary changes or edits. The process of preparing a final pretrial order is intended to be collaborative. Nevertheless, Kamin failed to make any arrangements to ensure that the order was developed jointly. Instead, he delayed any work on the order until an unreasonably late hour. This failure on the part of Kamin constitutes "noncompliance" with Rule 16. In light of such a failure to obey, the Rule requires that the Court issue sanctions unless the noncompliance was justified, or an award of expenses is unjust. *Id.*

Kamin offers his long-planned family vacation as an explanation for his delay and notes that Lemley had been informed of the vacation dates. This explanation does not justify the unreasonable delay in preparing the final pretrial order, nor does it persuade the Court that the issuance of sanctions would be "unjust." Kamin had the opportunity to recommend a different due date, or, alternatively, to schedule his work on the order during the six days before he left on his vacation. Given Kamin's unjustified delay in preparing the final pretrial order, the Court finds that the Defendants should be awarded attorney's fees to compensate them for Lemley's preparation of the final pretrial order, jury instructions, verdict forms, and special interrogatories, as well as for the time spent communicating with Kamin and preparing the Motion for Sanctions at issue here.

Having determined that sanctions are appropriate in this case, the Court moves to the question of whether the fees requested by the Defendants are reasonable. When calculating attorney's fee awards, the Court relies primarily on the "lodestar" method, which begins with the determination of the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *People Who Care v. Rockford Bd. of Ed., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). Kamin does not contest the reasonableness of the eleven hours Lemley spent preparing the pretrial order and other documents. Therefore, the only remaining issue is whether Lemley's hourly rate is reasonable.

The reasonable hourly rate is considered equal to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In calculating the reasonable market rate, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum*, 465 U.S. at 896 n. 11. After a fee applicant has produced satisfactory evidence of the reasonable hourly rate, the burden shifts to the party opposing the award of attorney's fees to present evidence indicating that the requested rate is unreasonable. *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 596 (7th Cir.1999).

Lemley's law firm has a fixed-fee agreement with the Village of Oak Lawn, under which the Village pays a flat monthly rate in exchange for any legal services required during the month. Because he has no true billing rate for his work for the Village, Lemley relies on the Laffey Matrix to establish his hourly rate. The Laffey

## STATEMENT

Matrix is prepared annually by the United States Attorney's Office, and is intended to estimate reasonable attorney's fees. *See* Laffey Matrix 2003-2010, U.S. Attorney's Office, http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html (last visited February 3, 2011). According to the Matrix, the market hourly rate in 2010 for an attorney in his ninth year of practice, such as Lemley, is $335.00 per hour. *Id.* The Court finds that, given the fixed-fee system in place here, the Laffey Matrix constitutes "satisfactory evidence" of the reasonable market rate. *See, e.g., Hadnott v. City of Chicago*, No. 07 C 6754, 2010 WL 1499473 at *6 (N.D. Ill. April 12, 2010) (Schenkier, M.J.) (collecting cases and stating that "[a]lthough the Seventh Circuit has not addressed the utility of the Laffey Matrix, numerous judges in this district have considered the Laffey Matrix as at least one factor in determining the reasonableness of hourly rates sought"); *Lopez v. City of Chicago*, No. 01 C 1823, 2007 WL 4162805 at *8 (N.D. Ill. Nov. 20, 2007) (Bucklo, J.) (considering the Laffey Matrix, among other evidence, to establish a reasonable rate and noting that the opposing party failed to adequately counter such evidence).

The burden thus shifts to Kamin to show why a "lower rate is essential." *Connolly*, 177 F.3d at 596. Kamin has not met that burden. Kamin's only objection to the Matrix is that it was initially established with reference to the Washington, D.C. legal market, as opposed to the Chicago market. The Chicago market, however, may actually be *more* expensive than the Washington, D.C. market, resulting in an upward adjustment of reasonable rates, which Lemley has not requested in this case. *See, e.g., Trans Union Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954 at *19 and n. 35 (N.D. Ill Dec. 9, 2009) (Gettleman, J.) (adjusting the Laffey Matrix figure upward by 1.1%); *Schultz v. City of Burbank*, No. 06 C 5646, 2007 WL 1099479 at *2 (N.D. Ill. Apr. 10, 2007) (Soat Brown, M.J.) (adding 4% to the figure provided by the Laffey Matrix). Because Kamin has failed to establish that the requested attorney's fees are unreasonable, the Court grants the Defendants' Motion for Rule 16(f) Sanctions, and awards the Defendants the $3,685.00 requested (eleven hours multiplied by $335.00 per hour).

# Group Exhibit I

### Alejandro Caffarelli Biography

Alejandro Caffarelli is one of the founding shareholders of Caffarelli & Siegel Ltd., a boutique employment law firm located in downtown Chicago and the current President of NELA-Illinois, the largest plaintiff employment lawyers' group in Illinois. With over ten years of experience, he has achieved success on behalf of his clients for a range of claims, including discrimination, retaliation, wages, medical leave, employment contracts, and class actions. A native of Argentina, he is fluent in Spanish and has earned a strong reputation for vigorously defending the rights of Hispanic employees. His firm has negotiated numerous six-figure settlements, including a $920,000.00 settlement in the case of **Sanchez et al. v. Stampede Meat, Inc.** (N.D.Ill. No. 02C5452) and a $2.6 million settlement in the case of **Cardenas et al. v. John B. Sanfilippo & Sons, Inc.** (N.D.Ill. No. 10C1354).

What distinguishes Mr. Caffarelli from many of his peers in the plaintiffs' bar is that he has also handled high level management-side work. He is a lawyer's lawyer who, along with the co-founder Marc Siegel, takes pride in representing a number of law firms in their own employment disputes. Prior to founding Caffarelli & Siegel Ltd. in 2001, he worked at a mid-size management-side only firm, where, among other things, he helped draft the successful appellate brief in support of enforcing a confidentiality agreement on behalf of Oprah Winfrey's production company, Harpo, Inc. The appellate court's decision is now viewed as one of the seminal resources for defining the proper parameters of employee confidentiality agreements. **Coady v. Harpo, Inc.**, 719 N.E.2d. 244 (Ill. Ct. App. 1999). In 2008, the City of Chicago awarded Mr. Caffarelli the position of Special Assistants Corporation Counsel and appointed him to defend the City in two class action cases brought against the City with combined total potential damages in the millions of dollars.

Although he has successfully served as lead counsel in both jury and bench trials, Mr. Caffarelli takes particular pride in the writing and analytical abilities of his firm's litigation practice. He has successfully defeated the vast majority of his opponents' motions for summary judgment – most of them brought by large national firms. He has prevailed on many issues of first impression in federal court, such as establishing that a police chief is subject to individual liability under the Family and Medical Leave Act, and that an employees' sleeping on the job does not alone constitute a breach of fiduciary duty in Illinois. **See Rasic v. City of Northlake** (N.D.Ill. No. 08C0104) and **Beltran v. Brentwood North Healthcare Center, LLC**, (N.D.Ill. No. 05C2558) respectively. In the **Rasic** case, Mr. Caffarelli subsequently obtained a jury verdict at trial against both the police chief and the municipality.

In addition to his trial work, Mr. Caffarelli also has argued before the Seventh Circuit Court of Appeals, as well as handling cases before the Illinois Court of Appeals. For example, in **Loudermilk v. Best Pallet** (7th Cir. 10-1846) Mr. Caffarelli obtained the reversal of a Summary Judgment against his client. Authored by Chief Judge Easterbrook, this seminal decision reaffirms an employee's right to gather information to support a discrimination claim, and establishes that temporal proximity alone may be enough to support a retaliation claim.

In recognition of his achievements, Mr. Caffarelli has been awarded an "AV" rating by LexisNexis' Martindale-Hubbell, one of the oldest and most respected peer-review based rating

services for attorneys. According to Martindale-Hubbell, the attainment of an "AV" rating is "a testament to the fact that a lawyer's peers rank him or her at the highest level of professional excellence." As of 2008, Mr. Caffarelli was rated "superb," a perfect 10 out of 10 on a numerical scale, by Avvo. Avvo is an online attorney rating service with an algorithm based upon an objective mathematical model. In 2010, Mr. Caffarelli was one of the very few plaintiffs' employment lawyers to be named a "Rising Star" by Super Lawyers Magazine. The following year, in 2011, he was named an "Illinois Super Lawyer". Each year, only a very small percentage of Illinois attorneys receive the honor of being named a Super Lawyer. Caffarelli & Siegel Ltd. has also earned an A+ rating from the Better Business Bureau ("BBB").

Mr. Caffarelli is frequently invited to speak before lawyers' groups. Recent engagements include:

American Bar Association, Panel Moderator: **Hot Topics in the Supreme Court**, 2010.

Chicago Bar Association, Panel: **The Intersection between the FMLA, the ADA, and Retaliatory Discharge**, 2010.

Chicago Bar Association, Panel: **Intersection of Employment/Immigration Law Issues**, 2010.

ABA Journal Podcast, Management Panel on Social Media: **Good Employee Communication Tool or Liability**, 2010.

DePaul University College of Law, ICE Enforcement Conference: **Employment Panel**, 2009.

American Immigration Lawyers' Association, Regional Conference: **Employment Enforcement Alert**, 2009.

Chicago Volunteer Legal Services Foundation, YLS Seminar: **The Interplay Between Employment Law and Immigration Law**, 2008.

The Labor Employment Relations Association, Seminar: **The American with Disabilities Act Amendments**, 2008.

American Immigration Lawyers' Association, Regional Conference: **Employment Enforcement Alert**, 2007.

Chicago Bar Association, Panel: **Common Immigration Issues in Employment Law**, 2006.

Chicago Bar Association, Panel: **The Undocumented in America**, 2006.

In addition to his current position as President, Mr. Caffarelli has for many years served on the Board of Directors for the Illinois chapter of the National Employment Lawyers' Association and previously served on the Board of Directors for the Hispanic Lawyers' Association of Illinois. For the past several years, Mr. Caffarelli has provided pro bono services on behalf of indigent workers through the Workers' Center at the Chicago Interfaith Committee on Worker Issues. In 2001, he volunteered to provide legal assistance for the City of Chicago's immigration workshops, sponsored by Mayor Richard M. Daley.

Mr. Caffarelli received a B.A. from the University of Michigan in Ann Arbor, with a double major of History and Spanish Literature, and was awarded a Juris Doctor from the University of Minnesota Law School, where he served as Note & Comment Editor of the Minnesota Law Review. During that time, he authored an article on criminal asset forfeitures, which subsequently was accepted for publication. In 1995, he served as an intern for the Honorable

2

Judge Michael Davis of the United States District Court for the District of Minnesota. Since graduation, Mr. Caffarelli has been admitted to practice law before the Seventh Circuit Court of Appeals, the United States District Court for the Northern District of Illinois, the Illinois Supreme Court, and the trial bar of the Northern District of Illinois. In 2005, Mr. Caffarelli honed his trial skills by participating in the National Institute for Trial Advocacy's Midwest Regional Workshop in St. Paul, Minnesota.

## Marc J. Siegel Biography

Marc J. Siegel is one of the founding partners of Caffarelli & Siegel Ltd., and has practiced labor and employment law in Chicago for fifteen years. Mr. Siegel has a unique labor and employment background, representing both individuals and businesses in a variety of matters.

Prior to co-founding the firm in 2002, Mr. Siegel spent approximately seven years practicing at Laner Muchin, a mid-size Chicago management-side boutique labor and employment firm. There, he advised employers on all types of employment matters, conducted audits of employment practices, ran organizing campaigns, handled collective bargaining, and defended numerous employment cases before the EEOC and unfair labor practices before the NLRB. Representative clients include Marmon Corporation, HARPO (Oprah Winfrey's company), Allied Waste, and numerous other small and medium-sized businesses.

After co-founding Caffarelli & Siegel, Mr. Siegel has focused the vast majority of his work on representing employees in employment matters. He particularly enjoys the negotiation and counseling aspects of employment law. Mr. Siegel negotiates separation packages, reviews employment agreements, and advises clients on all work-related matters. He has drafted employment agreements on behalf of chief executive officers, physicians, university faculty, and other professionals. Mr. Siegel has successfully negotiated six-figure severance packages for numerous former executives, and is especially proud of the results he has achieved for his lower-waged clients. Both Mr. Siegel and co-founder Alejandro Caffarelli are fluent in Spanish, and have the distinction to be among very few fluent labor and employment lawyers in Chicago. They are especially pleased to have successfully represented numerous Hispanic workers in wage and hour disputes and other employment-related matters. Caffarelli & Siegel Ltd. has earned an A+ rating from the Better Business Bureau ("BBB").

**Accolades:**

- Has been named as a "Super Lawyer" in the 2009, 2010, 2011 *Illinois Super Lawyers* publications.
- "AV" peer reviewed rated by LexisNexis' Martindale-Hubbell. According to Martindale-Hubbell, "AV" is the highest possible rating, achievable only after admission to the bar for at least ten years, and indicating the highest level of legal ability and ethics. An "AV" rating is the pinnacle of professional excellence.
- Highly respected and oft-demanded speaker for a wide variety of audiences, on emerging topics in labor and employment law.

3

Mr. Siegel has successfully negotiated employment contracts, separation agreements, and better terms and conditions of employment for his clients. He has developed a niche practice from his negotiation experience, and has spoken before hundreds of other employment lawyers about his negotiation strategies and techniques. Mr. Siegel uses a customized approach, based upon each client's unique goals, to maximize the chances for success.

Mr. Siegel has assisted executives and professionals by negotiating the terms and conditions of their employment prior to their beginning a new job. For example, he represented a surgeon, with a very unique specialty, whose employer wanted him to agree to a broad non-compete agreement as a condition of employment. This non-compete agreement would have prohibited the client from working anywhere in the state of Illinois were he to separate from employment. Mr. Siegel successfully negotiated a drastic reduction of the scope of the agreement, which gave the client the security of knowing he would be able to work again if he were to resign or was terminated. If the situation calls for it, some of Mr. Siegel's work on employment agreements involves his "working behind the scenes" to assist the client in negotiating his or her own agreement.

Mr. Siegel also works with clients who have been presented with separation or severance agreements. He has negotiated six-figure separation packages for executive clients, and has greatly increased the amount of his clients' separation pay over the amount originally offered. Further, he often negotiates non-economic changes in separation agreements, including amending the client's record to reflect that the client resigned instead of being terminated - thus ensuring that the employer does not contest unemployment; or securing outplacement services for his client. These types of non-economic changes enable Mr. Siegel's clients to transition more smoothly from their previous positions and find re-employment with greater ease. In formulating a negotiation strategy, Mr. Siegel assesses both potential legal claims and other negotiation "levers" that assist clients in meeting their goals

Mr. Siegel also litigates clients' claims in federal and state court with regularity.

- Representative litigation matters for executive clients
    - Obtained the prompt dismissal of counterclaims brought against his client in federal court for breach of fiduciary duty.
    - Filed counterclaims against an employer who sued his client, resulting in not only the dismissal of the employer's claims against the client, but payment to the client as well.
    - Filed state law claim of breach of contract to seek recovery of six-figure severance payment in complex change of control situation. **Zarazinski v. ACCO Brands Corp. and General Binding Corp.**, Circuit Court of Cook County No. 2006-L-8297.
- Representative wage and hour matters
    - Obtained a $920,000 settlement on behalf of a class of meat-processing plant workers who had not been paid for the time spent putting on and taking off required safety equipment. **Sanchez et al. v. Stampede Meat, Inc.,** N.D. Ill. No. 02-C-5452.

4

- o Brought national class-action opt-in suit for failure of employer to properly utilize available tip credit for sky caps. **Barreda v. Prospect Airport Services, Inc.,** N.D. Ill. No. 08-C-3239.
- o Obtained a consent judgment in favor of a group of landscaping employees who sued their employer for failure to pay overtime wages under the Fair Labor Standards Act, Illinois Minimum Wage Law, and Illinois Wage Payment and Collection Act. **Palmerin, *et al.* v. Serra Landscaping, Inc., f/k/a John Serra Landscaping, Inc., and John Serra, individually**, N.D. Ill. No. 06-C-1115.

- Other representative matters
  - o Represented an employee diagnosed with bipolar disorder and depression who had been terminated after taking a medical leave. The employee alleged that she was terminated in violation of the Family and Medical Leave Act and the Americans with Disabilities Act. The case was settled to the employee's satisfaction.
  - o Brought suit on behalf of a nurse suing her former employer, a nursing home, for failure to pay owed overtime and retaliation in violation of the Illinois Whistleblower Act. The case settled to the client's satisfaction.

## Educational Background

- J.D., *cum laude,* University of Illinois College of Law
  - o Taught courses in negotiation skills and written and oral communications to Masters Business Administration students
  - o Winner of the law school's Client Counseling Competition
  - o Received award for excellent legal writing ability
  - o Member of the Moot Court Bench

- B.A. in Political Science, *cum laude,* Duke University
  - o Dispute mediator for the Durham Dispute Settlement Center

## Admissions & Professional Affiliations

- Bar Admissions:
  - o Illinois

- Court Admissions:
  - o United States District Court for the Northern District of Illinois
  - o Illinois Supreme Court

## Bradley Manewith Biography

Bradley Manewith as a Senior Associate with Caffarelli & Siegel. He joined the Firm in 2003. Mr. Manewith's practice concentrates on litigation and negotiation of claims for failure to pay overtime and minimum wages, as well as issues related to employee non-compete agreements,

the Family and Medical Leave Act, and workplace discrimination. In particular, Mr. Manewith has extensive experience representing tipped employees who have not been paid the proper wages. He also has achieved numerous successes on behalf of foreign-born workers with employee non-compete agreements. Additionally, Mr. Manewith regularly handles business-related immigration matters such as H-1B petitions, PERM petitions, and employment-based permanent residency petitions.

Mr. Manewith is licensed to practice before the <u>Illinois Supreme Court</u> and the United States District Court for the Northern District of Illinois. He has successfully represented individuals in federal and state courts, as well as the U.S. Equal Employment Opportunity Commission, and the Illinois Human Rights Commission. He also has extensive experience representing immigration clients before the U.S. Citizenship and Immigration Services and U.S. Department of Labor.

Mr. Manewith graduated from the University Of Illinois College Of Law, *cum laude*. While at law school he was a member of the National Moot Court Team and received several honors for writing advocacy. Additionally, during law school Mr. Manewith interned for the Office of the Speaker of the Illinois House of Representatives, as well as the U.S. Equal Employment Opportunity Commission. Prior to law school, Mr. Manewith attended the University of Illinois at Urbana/Champaign where he received a Bachelor of Arts in Political Science and History. During his undergraduate schooling, he was appointed to serve two terms on the Student Election Commission.

Mr. Manewith is a member of the National Employment Lawyers Association, Chicago Bar Association, and American Immigration Lawyers Association. He has assisted with voter protection efforts, and regularly travels to speak with law students about the practice of law. Mr. Manewith also volunteers for the <u>Board of Jewish Education of Metropolitan Chicago</u>.

### <u>Lorraine T. Peeters Biography</u>

Lorrie T. Peeters joined Caffarelli & Siegel as an Associate in 2007. Prior to joining the firm, Ms. Peeters gained experience as a summer associate and clerk working in the employment law group of a mid-size Chicago firm. At Caffarelli & Siegel, she concentrates her practice in the areas of employment litigation and negotiation. Ms. Peeters has experience with issues stemming from violations of the FMLA, FLSA, IMWL, ADEA, ADA, and Title VII. She has participated in numerous severance negotiations, federal litigation proceedings, employment arbitrations, mediations, and proceedings before the federal and state administrative agencies. Ms. Peeters has experience filing federal claims for both individual and collective actions, and has participated in every stage of litigation – from case selection through resolution of a federal jury trial. She has also performed substantive litigation defense work on behalf of the <u>City of Chicago</u>.

Ms. Peeters earned her undergraduate degree from <u>Northwestern University</u>. During her time at Northwestern, she worked as an intern with Northwestern University School of Law's Bluhm Legal Clinic and focused on providing representation to juveniles during school expulsion hearings. Following graduation, she worked in the products liability group in the Chicago office

of a large national law firm.

In 2006, Ms. Peeters received her J.D. from Loyola University Chicago School of Law. While a student at Loyola, she served as the Articles Editor on the executive board of the school's renowned Children's Legal Rights Journal, was selected by faculty to tutor a course in legal writing, and volunteered as a legal rights educator within the Cook County Juvenile Detention Center.

In addition to her legal work at Caffarelli & Siegel, Ms. Peeters is the associate member of the firm's marketing committee. She is a member of the Chicago Bar Association, the National Employment Lawyers Association, and the California Bar Association. Ms. Peeters is admitted to practice in Illinois and California.

## Madeline K. Engel

Madeline K. Engel joined the firm as a law clerk in February 2010. Ms. Engel received her J.D. in May 2010 from Chicago-Kent College of Law, where she completed the law school's Labor & Employment certificate program. Prior to joining Caffarelli & Siegel, she worked for two other plaintiff-side employment law firms, and served as a legal intern for the employment law clinic, at Chicago-Kent.

As a student at Chicago-Kent, Ms. Engel was a member of the Labor & Employment Law Society and the Chicago-Kent Law Review. Her case note addressing recent Seventh Circuit case law on the anti-retaliation provision of the Fair Labor Standards Act is scheduled to be published in the Law Review, in late 2010. Ms. Engel also received the CALI Award in her Work & Family seminar.

Ms. Engel graduated from Tulane University, in 2005, where she received a Bachelor of Science in psychology, with a double major in Spanish. Ms. Engel is proficient in Spanish, and is a member of the National Employment Lawyers Association as well as the Chicago Bar Association. Ms Engel is admitted to practice before the Illinois Supreme Court and the United States District Court for the Northern District of Illinois.

# Group Exhibit J

LAW OFFICES

# Caffarelli &Siegel Ltd.

Matter: ███████████████

**PAYMENT DUE ON THE 15TH OF THE MONTH**

Invoice Date: 8/01/2011

Invoice No: ███████

Attorney: MJS

---

## *For Legal Services Rendered:* ███████████

| Staff | Description | Hours | Rate | Charges |
|-------|-------------|-------|------|---------|
| LTP | Review documents in file and draft appeal Telephone conference | 4.75 | $240.00 | $1,140.00 |
| LTP | Finalize | 0.25 | $240.00 | $60.00 |
| MJS | Review and revise letter | 1.00 | $375.00 | $375.00 |
| MKE | Review and revise letter | 0.25 | $190.00 | $47.50 |
| MKE | Review transcript and documents regarding | 1.00 | $190.00 | $190.00 |
| LTP | Finalize letter | 0.50 | $240.00 | $120.00 |
| MJS | Review and revise letter | 0.25 | $375.00 | $93.75 |
| MKE | Review, revise and finalize response to client regarding same | 1.50 | $190.00 | $285.00 |

Total Fees    $2,311.25

## *Client Expenses:* ███████████

| Description | Charges |
|-------------|---------|
| ███████████████ | $7.25 |

Total Expenses    $7.25

Total New Charges    $2,318.50

Invoice No: ████    ██████████████        Date: 8/01/2011        Page: 2



Previous Balance                                                    $750.00

7/13/2011     Payment            ██████████                        $-750.00
         ████████████████████████

Total Payments and Credits                                         $-750.00

Balance Due                                                      $2,318.50

| *A/R Aging* | Balance Due | 30 | 60 | 90 | 120 | Balance Before Payments |
|---|---|---|---|---|---|---|
| | $2,318.50 | $2,318.50 | $0.00 | $0.00 | $0.00 | $2,318.50 |

**PLEASE PAY BY THE 15TH OF THE MONTH -- THANK YOU**

**ATTORNEY CLIENT PRIVILEGED DOCUMENT**

LAW OFFICES

# Caffarelli  Siegel Ltd.

Matter: 

**PAYMENT DUE ON THE 15TH OF THE MONTH**

Invoice Date: 8/01/2011

Invoice No:

Attorney:

---

## For Legal Services Rendered:

| Staff | Description | Hours | Rate | Charges |
|-------|-------------|-------|------|---------|
| MJS | Review affidavit conference with | 0.75 | $375.00 | $281.25 |
| MJS | Draft email to ██████ avit | 0.25 | $375.00 | $93.75 |
| MJS | Telephone conference with | 0.25 | $375.00 | $93.75 |
| LTP | Draft | 1.75 | $240.00 | $420.00 |
| MJS | TCW | 0.25 | $375.00 | $93.75 |
| MJS | Review | 0.25 | $375.00 | $93.75 |
| MJS | Review | 0.50 | $375.00 | $187.50 |
| MJS | Telephone conference with ██████ avit | 0.25 | $375.00 | $93.75 |
| MJS | Telephone conference with for partners | 0.25 | $375.00 | $93.75 |
| LTP | Finalize | 0.25 | $240.00 | $60.00 |
| MJS | Review and revise letter | 0.50 | $375.00 | $187.50 |
| MJS | Telephone conference with documentation regarding | 0.25 | $375.00 | $93.75 |
| MJS | Review | 0.50 | $375.00 | $187.50 |
| MJS | Telephone conference with | 0.50 | $375.00 | $187.50 |
| MJS | Telephone conference with | 0.25 | $375.00 | $93.75 |
| MJS | Review | 0.25 | $375.00 | $93.75 |
| AC | Telephone conference with | 0.25 | $375.00 | $93.75 |
| AC | Telephone conference with | 0.25 | $375.00 | $93.75 |
| AC | Review and revise | 0.50 | $375.00 | $187.50 |
| AC | Review ██████ issue and advise | 0.25 | $375.00 | $93.75 |

Total Fees $2,823.75

Total New Charges

$2,823.75



Invoice No: ██████    ███████████████    Date: 8/01/2011    Page: 2

Previous Balance                                                                  $2,058.75

7/25/2011    Payment    ██████████████████████████    $-2,058.75

Total Payments and Credits                                                       $-2,058.75

Balance Due                                                                       $2,823.75

**A/R Aging**

| | Balance Due | 30 | 60 | 90 | 120 | Balance Before Payments |
|---|---|---|---|---|---|---|
| | $2,823.75 | $2,823.75 | $0.00 | $0.00 | $0.00 | $2,823.75 |

**PLEASE PAY BY THE 15TH OF THE MONTH -- THANK YOU**

**ATTORNEY CLIENT PRIVILEGED DOCUMENT**

LAW OFFICES

# Caffarelli ▓ Siegel Ltd.

Matter: ████████

**PAYMENT DUE ON THE 15TH OF THE MONTH**

Invoice Date: 8/01/2011

Invoice No: ████

Attorney: AC

---

## *For Legal Services Rendered:* ████████

| Staff | Description | Hours | Rate | Charges |
|-------|-------------|-------|------|---------|
| AC | Initial meeting with client | 2.00 | $375.00 | $750.00 |
| AC | Research ████████ review client materials | 3.75 | $375.00 | $1,406.25 |
| LTP | Research ████████ correspondence to AC regarding same | 1.50 | $240.00 | $360.00 |
| AC | Telephone conference ████ | 1.00 | $375.00 | $375.00 |
| AC | Telephone conference with client | 0.25 | $375.00 | $93.75 |
| AC | Review client correspondence and authority | 0.75 | $375.00 | $281.25 |
| AC | Telephone conference with client | 0.25 | $375.00 | $93.75 |
| AC | Telephone conference with client | 0.25 | $375.00 | $93.75 |
| AC | Review ████ | 1.00 | $375.00 | $375.00 |
| BM | Review ████████ | 4.75 | $290.00 | $1,377.50 |
| AC | Review ████ document created by client | 2.25 | $375.00 | $843.75 |
| BM | Draft complaint | 4.25 | $290.00 | $1,232.50 |
| AC | Review and revise draft complaint | 1.25 | $375.00 | $468.75 |
| AC | Review ████████ Letter | 1.75 | $375.00 | $656.25 |
| AC | Telephone conference with client | 0.50 | $375.00 | $187.50 |
| AC | Review ████ | 3.50 | $375.00 | $1,312.50 |
| BM | Review and revise draft complaint | 2.00 | $290.00 | $580.00 |
| AC | Research and Review ████ | 3.25 | $375.00 | $1,218.75 |
| BM | Discuss draft complaint and strategy w/AC | 0.25 | $290.00 | $72.50 |
| AC | Review and revise complaint | 1.00 | $375.00 | $375.00 |

Total Fees $12,153.75

Total New Charges

$12,153.75

Invoice No: ██      ████████                          Date: 8/01/2011      Page: 2



| | |
|---|---:|
| Previous Balance of Trust Account | $0.00 |
| 7/06/2011 Deposit | $750.00 |
| 7/07/2011 Deposit | $1,750.00 |
| 7/25/2011 Deposit | $7,500.00 |
| 7/25/2011 Withdrawal | $-2,500.00 |
| 8/01/2011 Apply Funds to AR | $-7,500.00 |
| New Balance of Trust Account | $0.00 |

| | |
|---|---:|
| Previous Balance | $0.00 |
| 8/01/2011    Apply Funds to AR | $-7,500.00 |
| Total Payments and Credits | $-7,500.00 |
| Balance Due | $4,653.75 |

| *A/R Aging* | Balance Due | 30 | 60 | 90 | 120 | Balance Before Payments |
|---|---|---|---|---|---|---|
| | $4,653.75 | $12,153.75 | $0.00 | $0.00 | $0.00 | $12,153.75 |

**PLEASE PAY BY THE 15TH OF THE MONTH -- THANK YOU**

**ATTORNEY CLIENT PRIVILEGED DOCUMENT**

# Exhibit K

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MELODY DOMINGUEZ, STEPHANIE
HOLDREN, and all other Plaintiffs similarly
situated known and unknown,

          Plaintiffs,

v.

QUIGLEY'S IRISH PUB, INC., NANCY
QUIGLEY, and MICHELLE MICHAEL,
individually,

          Defendants.

No. 09 CV 2583

Magistrate Judge Cole

## DECLARATION OF NOELLE BRENNAN

I, Noelle Brennan, hereby certify as follows:

1.      I am personally familiar with the matters hereinafter set forth and certify that the same are true in substance and in fact.

2.      I am an attorney licensed to practice law in the State of Illinois.

3.      I was admitted to practice in Illinois in 1995, and admitted to the federal bar in 1997.

4.      I have handled numerous employment law matters from 1997 to the present.

5.      I currently am the principal shareholder of Noelle Brennan & Associates. I employ two associate attorneys.

6.      I previously was employed by the U.S. Equal Employment Opportunity Commission, for approximately seven years as a trial attorney and a supervisory attorney. Prior to joining the EEOC, I was an associate at Katten, Muchin & Zavis.

7.      My current customary hourly rate is $375 per hour. My associates' current customary hourly rates are $225-$275 per hour (my associates have one and seven years of experience).

8.      I know Alejandro Caffarelli, Marc Siegel, Bradley Manewith and other attorneys employed by Caffarelli & Siegel Ltd. They are highly competent and well experienced in handling employment law matters, including wage and hour cases.

9.      The rates charged by Caffarelli & Siegel Ltd. of $375 per hour for partner time and $190-$290 per hour for associate time are well within community norms for the experience and expertise of their attorneys.

_____
Noelle Brennan

## VERIFICATION BY CERTIFICATION

Pursuant to 28 U.S. C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: __August 16, 2011__
                        Date

_____
Noelle Brennan

2

# Exhibit L

Case: 1:09-cv-02583 Document #: 90-3 Filed: 09/19/11 Page 24 of 27 PageID #:2420
USDOJ: US Attorney's Office - District of Columbia

Page 1 of 2



THE UNITED STATES ATTORNEY'S OFFICE
# DISTRICT *of* COLUMBIA

SEARCH THE SITE
Search

HOME    ABOUT    NEWS    MEET THE U.S. ATTORNEY    DIVISIONS    PROGRAMS    CONTACT US    CAREERS

Home » Divisions » Civil » Laffey Matrix 2003-2010



United States Attorneys' Offices
HOMEPAGE

United States Attorneys' Offices
BRIEFING ROOM



The United States Attorney's
Office In Your Neighborhood

## LAFFEY MATRIX 2003-2010

(2009-10 rates are unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 |
|---|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 | 475 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 | 420 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 |



## Years

### Explanatory Notes

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. See, e.g., 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. See 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). See Laffey, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in Laffey were for work done principally in 1981-82. The Matrix begins with those rates. See Laffey, 572 F. Supp. at 371 (attorney rates) & 380 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of



Appeals subsequently stated that parties may rely on the updated Laffey Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. See Covington v. District of Columbia, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), cert. denied, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated Laffey Matrix when determining whether fee awards under fee-shifting statutes are reasonable. See, e.g., Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); Jefferson v. Milvets System Technology, Inc., 986 F. Supp. 6, 11 (D.D.C. 1997); Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin., 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); Martini v. Fed. Nat'l Mtg Ass'n, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); Park v. Howard University, 881 F. Supp. 653, 654 (D.D.C. 1995).

Return to Top



HOME    ABOUT    NEWS    MEET THE US ATTORNEY    DIVISIONS    PROGRAMS    CONTACT US    CAREERS

# Exhibit M



CAFFARELLI & SIEGEL
ATTORNEYS AT LAW
TWO PRUDENTIAL PLAZA - 3150
180 NORTH STETSON AVENUE
CHICAGO          IL 60601
ATTN: MR. BRADLEY S. MANEWITH

008689

10/07/10

INVOICE NUMBER
102602

JB#
052764

30-3051-/95

| DATE TAKEN | | | REFERENCE | | | CHARGES |
|---|---|---|---|---|---|---|

08/18/10

RE: DOMINGUE VS. QUIGLEYES
2009 C 2583

THE DISCOVERY DEPOSITION OF MELODY
DOMINGUEZ AND STEPHANIE HOLDRED,
TAKEN IN MR. KNUCKLES' OFFICE ON
AUGUST 18TH, 2010

THANK YOU.

A/R
Dominguel

TRANSCRIPT FEE:
(COPIES)                                    256.60

BILLED

PLEASE ENCLOSE YELLOW COPY WITH
YOUR REMITTANCE

MEG

TOTAL ⇨

| CURRENT | 30 DAYS PAST DUE | 60 DAYS PAST DUE | 90 DAYS PAST DUE | TOTAL BALANCE DUE |
|---|---|---|---|---|
| 256.60 | .00 | .00 | .00 | 256.60 |

CLIENT COPY