IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MELODY DOMINGUEZ | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | No. 09 CV 2583 |
| | ) | |
| vs. | ) | |
| | ) | |
| QUIGLEY'S IRISH PUB, INC., NANCY | ) | Magistrate Judge Jeffrey Cole |
| QUIGLEY, and MICHELE MICHAEL, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### INTRODUCTION

Melody Dominguez seeks an award of $98,872.50 in attorney fees and $3,943.07 in costs

and non-taxable expenses under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b)

(2008), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/12(a) (2011), and Local

Rule 54.3.[1] The defendants are scandalized by the amount of attorneys' fees requested, which is

more than 30 times greater than the amount obtained through the settlement agreement. The

plaintiff's view is quite different, and in any event she argues that the Defendants waived any

objections to the fee petition by failing to comply with Local Rule 54.3.

District courts have considerable discretion to determine what constitutes reasonable

attorneys' fees. *Moriarty ex rel. Local Union No. 727, I.B.T. Pension Trust, and the Teamsters

Local Union No. 727 Health and Welfare Trust v. Svec,* 429 F.3d 710, 717 (7th Cir.2005). *Cf.,*

---

[1] In the Joint Statement required by Local Rule 54.3, Defendants do not object to the $3,943.07 except as they
relate to Stephanie Holdren, who originally was also a plaintiff, but whose case has been dismissed.
However, the Defendants do not raise an objection in their Answer to the Plaintiff's Motion for Attorneys'
Fees and Costs to any costs incurred by the Plaintiff. (Defs.' Resp. Pl.'s Pet. Att'y Fees).

*Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1676 (2010)("Determining a 'reasonable attorney's fee, is a matter that is committed to the sound discretion of a trial judge [under 42 U.S.C. § 1988].""). As explained below, the petition is granted in part and denied in part.

## I.

### FACTUAL BACKGROUND

Melody Dominguez was an employee of Quigley's Irish Pub. (Docket Entry 1 ("D.E.") § 5). Michele Michael is Quigley's secretary and general manager, and Nancy Quigley is the owner. (D.E. 1, §§ 7-9). On April 28, 2009, Plaintiff filed a claim against the Defendants under the FLSA and IMWL, alleging failure to pay minimum and overtime wages. (D.E. 1 § 1). On May 15, 2009, the Plaintiff sent a settlement demand to the Defendants demanding $88,000, which included $10,000 in attorneys' fees. (Defs.' Resp. Pl.'s Pet. Att'y Fees at 8). The Defendants made a counteroffer of $1000 (Pl.'s Rep. Supp. Mot. Att'y Fees Costs at Ex. E), which was promptly rejected.

The Plaintiff filed a Motion for Order Authorizing Notice to Similarly Situated Persons pursuant to 29 U.S.C. 216(b) on July 14, 2009 (D.E. 26). The motion was denied in part on September 14, 2009. (D.E. 34). On December 1, 2009, the Plaintiff renewed the motion. (D.E. 38). The motion was granted on February 5, 2010. (D.E. 44). Only Stephanie Holdren, a former employee of Quigley's, joined the suit as a Plaintiff. (D.E. 62 at §§ 4, 6).

The Defendants assert the Plaintiff possessed all the "relevant time and payroll records" by January of 2010. (Defs.' Resp. Pl.'s Pet. Att'y Fees at 7). Included in those records, they contend, was proof that missed overtime payments for Ms. Dominguez did not exceed $29. *Id.* The Defendants acknowledged their failure to pay this amount and contend that they brought the error to the Plaintiff's attention at that time and agreed to make up the arrearage. *Id.*

2

In May of 2010, the Plaintiffs made a second settlement demand in the amount of $60,000, which included attorneys' fees and costs. (Defs.' Resp. Pl.'s Pet. Att'y Fees at 8). On June 1, 2010, the Defendants offered $1,500. (Pl.'s Rep. Supp. Mot. Att'y Fees Costs at Ex. Affidavit of Bradley Manewith § 4). Once again, the offer was rejected.

The parties filed cross motions for summary judgment in November, 2010. (D.E. 59; D.E. 61). On May 24, 2011, the court denied the Defendants' Motion for Summary Judgment, but granted the Plaintiff's Motion for Summary Judgment with regards to the $29 unpaid overtime wage claim that was not contested by the Defendants and had been conceded in 2010. (D.E. 81, 82, at 38). The remainder of the Plaintiff's motion was denied. *See Dominguez v. Quigley's Irish Pub, Inc.*, 790 F.Supp.2d 803, 819 (N.D.Ill.2011).

The parties participated in a settlement conference on July 11, 2011. (D.E. 84). Stephanie Holdren did not appear at the conference as ordered. *Id.* Plaintiff's counsel represented that they were unable to contact her despite repeated attempts. *Id.* An order was entered requiring Ms. Holdren to appear on August 29, 2011 for a continued settlement conference. *Id.* On July 25, 2011, the Plaintiff filed a motion requesting that Stephanie Holdren's claims be dismissed without prejudice. (D.E. 85, at § 9). On August 4, 2011, the Motion for a Voluntary Dismissal of Stephanie Holdrten's case was granted, except that her claims were dismissed with prejudice. (D.E. 88).

The parties have settled Ms. Dominguez's claims. The amount of the settlement is confidential; however, while it was "significantly more than the twenty-nine dollars" stipulated to by the Defendants, (Pl.'s Rep. Supp. Mot. Att'y Fees Costs at 5, 8), it was rather modest, being less than $4,000. The settlement was exclusive of an award of attorneys' fees to the Plaintiff, which the parties agreed were to be determined by the court at a later time.

The Plaintiff filed her motion for Attorneys' Fees [D.E.89] to which was attached the Joint Statement Regarding Attorney's Fees as required by Local Rule 54.3. *Id.*, at Ex. A. The Plaintiff sought $98,872.50 in fees and $3,943.07 in non-taxable expenses. *Id.* The Defendants generally objected to the hourly rates of two of the Plaintiff's attorneys, all the hours and costs expended in conjunction with Stephanie Holdren's claim, and hours billed after the Pub inspection on May 18, 2010, when, Plaintiff contends, the Plaintiff should have had all the necessary information with regards to the claims. The Plaintiff denies this unexplained assertion. There was no particular objection to the rates charged or the reasonableness of the time expended, except that in the Defendants' Response to the Motion for Attorneys' Fees, the Defendants specifically argued that $20,593, which represents the fees incurred in connection with the opt-in motion and Ms. Holdren's claims, should be deducted, leaving a lodestar of $78,278.75. (Defs.' Resp. Pl.'s Pet. Att'y Fees at 6, Ex. A). But that is not the amount the Defendants think reasonable.

Overall, they seek to have the court reduce the Plaintiff's request for $98,887.25 in attorneys' fees by 90 %, leaving a recommended fee of $9,887.25. (Defs.' Resp. Pl.'s Pet. Att'y Fees at 9). The Defendants argue the reduction is warranted because the Plaintiff's recovery was merely technical, and the award of attorneys' fees should reflect her lack of success. (Id. at 5-6). The Plaintiff is willing to forgo $3,552.50 in fees attributable to matters involving attempts to secure Ms. Holdren's participation in the settlement conference. (Plaintiff's Reply at 3), leaving the final request at $95,320 plus $3,943.07 in costs, for a total of $99,263.07.

## II.
## ANALYSIS

### A.
### The Defendants' Claimed Failure To Object To The Plaintiff's Fee Petition Is Not A Waiver Of The Objections

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action" for violations of the code referring to unpaid minimum wages or unpaid overtime compensation. 29 U.S.C. § 216(b). Similarly, the IMWL provides that an employee may recover the reasonable amount of attorneys' fees in a suit to collect the underpayment of wages. 820 ILCS 105/12(a). The Rules of the United States District Court for the Northern District of Illinois require the parties to discuss and attempt to agree on the amount of attorneys' fees and costs prior to filing a motion to recover fees and costs. Local Rule 54.3(d). If the parties cannot agree, the opposing party must "specifically identify all hours, billing rates, or related nontaxable expenses (if any) that will and will not be objected to, the basis of any objections, and the specific hours, billing rates, and related nontaxable expenses that in the parties respective views are reasonable and should be compensated." *Id.*

A party objecting to a petition for attorneys' fees must state the objections with particularity to prevent parties from dumping voluminous amounts of fee data "on the bench for the judge to sort through and resolve." *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir. 1985). Failure to object to a fee petition with specificity may preclude objection. *See Nilssen v. Gen. Electric*, 2011 WL 633414 at *7 (N.D. Ill. 2011); *Zaghloul v. Daimler Chrysler Servs., LLC*, 2004 WL 2203427 at *2 (N.D. Ill. 2004).

The Plaintiff argues that Defendants failed to state their objections to the petition with specificity in the Joint Statement, (Pls.' Mem. Supp. Mot. Att'y Fees Costs 4-5), and thus waived their objections to the fees related to Stephanie Holdren. *Id.* While Defendants did not state specific objections to the fee petition in the Joint Statement required by Local Rule 54.3 (e), see (Pl.'s Mot. Att'y Fees Costs at Ex. A § 3)(documenting general objection to hours listed in the fee petition), they identified the specific billing entries in the fee petition with which they disagreed in their Response to the Motion. *See* (Defendants.' Resp. Pl.'s Pet. Att'y Fees at Ex. A). In fact, the Defendants identified seventy-seven billing entries to which they objected, thereby alerting the court sufficiently to the issues of disagreement.

A court may exercise "discretion in interpreting and applying their local rules," *Tenner v. Zurek*, 168 F.3d 328, 331 (7th Cir. 1999); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 351, 356 (N.D.Ill.2005)(collecting cases), and courts have often considered a defendant's objections to a plaintiff's fee petition when, as here, the basis for the objection was made known through the Defendant's response to a motion for attorneys' fees. *See, e.g., Angelilli v. Board of Educ. of City of Chi.*, 2001 WL 708922, at *2 (N.D. Ill. 2001); *Sonii v. General Electric*, 2003 WL 21541039 at *3 (N.D.Ill. 2003). Additionally, the Defendants suggestion of a specific amount they think reasonable (i.e., $9,887.25) (Defendants.' Resp. Pl.'s Pet. Att'y Fees at 9) is in direct contrast to *Zaghloul*, where the defendant did not state any specific objections or offer his belief of what a reasonable award should be. Because the Defendants' Response was sufficient to advise the court of the specific disagreements in the Plaintiff's fee petition, the Defendants' non-compliance will not be deemed a waiver of their objections.

**B.**

## The Plaintiff Is The "Prevailing Party" In This Case

The party prevailing on a claim against an employer under the FLSA or the IMWL is entitled to an award of attorneys' fees. 29 U.S.C. § 216(b)(2011); 820 ILCS 105/12(a) (2011). A "prevailing party" is one who has "achieved some success on the merits and can point to a resolution that has changed the legal relationship between herself and defendant." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 595 (7th Cir. 1999). To be a prevailing party, the party must succeed on a significant issue that achieves some benefit the party sought in bringing the suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A plaintiff is a prevailing party if "the lawsuit was casually linked to the relief obtained," and the defendant was not acting gratuitously in settling because the suit was frivolous or groundless. *Connolly*, 177 F.3d. at 595.

The Plaintiff contends that she is the prevailing party because the parties have settled the FLSA and IMWL claims of Plaintiff and because she prevailed on her motion for summary judgement on her claim for $29 in unpaid overtime – an amount the Defendants had conceded in early 2010, before the $60,000 settlement was made and long before the motion for summary judgment was filed. (Pl.'s Mot. Att'y Fees Costs at 3) (D.E. 90).[2]

When the Plaintiff initiated this suit, she sought various forms of relief including restitution for unpaid overtime wages and full minimum wage. (Pl. Compl. § 47). The settlement included a small (less than $4,000) monetary award for the Plaintiff, which of course included the $29. (Pl.'s Rep. Supp. Mot. Att'y Fees Costs at 5). Because the Plaintiff sought reimbursement for unpaid overtime wages and minimum wages, there is a link between the relief sought and the benefit obtained by the Plaintiff in the form of a monetary settlement.

---

[2] Given that concession, only a minimal amount of time was necessary to that aspect of the motion for summary judgment and anything beyond that was unreasonable and unnecessary. Moreover, the motion was not about the $29.

Additionally, the Defendants acknowledged a "clerical error" which resulted in a failure to pay the Plaintiff $29 in overtime wages. (Defendants.' Resp. Pl.'s Pet. Att'y Fees at 2). This admission supports the Plaintiff's claim she did not receive all her wages for overtime that she worked. There were also unresolved issues regarding the extent of the unpaid wages, which had they been resolved at a trial in the Plaintiff's favor could have resulted in damages far exceeding $29. Because there was support for the Plaintiff's claim under FLSA and IMWL, the Defendants were not acting gratuitously in settling a frivolous or groundless suit. Therefore, the Plaintiff was the prevailing party under FLSA and IMWL.[3]

The Seventh Circuit has read *Farrar v. Hobby,* 506 U.S. 103, 112 (1992), as "holding that a plaintiff who wins any measure of damages is a prevailing party for the purposes of fee-shifting statutes." *Moriarty v. Svec,* 233 F.3d 955, 966 (7th Cir.2000). Thus, "[a] plaintiff achieves 'prevailing party' status by recovering *any* judgment, even for nominal damages." *Johnson v. Daley,* 339 F.3d 582, 587 (7th Cir.2003)(*en banc*). Under that standard, Ms. Dominguez is clearly a prevailing party. In *Moriarty,* the judgment was for $2,400 – slightly *less* than the settlement here. Nonetheless, the court held that the plaintiff was a prevailing party, entitled to attorneys' fees. In *Cole v. Wodziak,* 169 F.3d486, 488 (7th Cir 1999), one of the plaintiffs received $2,000 in compensatory and $1,500 in punitive damages, and the other was awarded $500 in compensatory and $500 in punitive damages. The Seventh Circuit held that this was "more than a pittance" and qualified both plaintiffs as "prevailing parties" entitled to reasonable' fees.

---

[3] The summary judgment opinion in this case made clear that there was competing evidence and that if the Plaintiff were to be believed at trial, she could well recover substantially more than the $29 the Defendants admitted she was owed. Of course, it is also true that if she were disbelieved, she would have recovered nothing.

In sum, while the settlement in this case was modest, it cannot be considered either "paltry" or "*de minimis*" thereby precluding an award of fees.

## C.

### The Factors In The Determination Of A Reasonable Attorney's Fee

#### 1.
#### The Lodestar Calculation

The characterization of a plaintiff as a prevailing party is only a "statutory threshold." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The FLSA and the IMWL additionally require that the award of attorneys' fees be reasonable. 29 U.S.C. § 216(b) (2011); 820 ILCS 105/12(a) (2011). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The amount yielded from this calculation must be considered in relation to several other relevant factors, which may result in an increased or decreased award. *Id.* This approach is known as the lodestar approach and requires a two-step analysis. *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651 (7th Cir. 1985).

First, the court considers the number of hours worked, subtracting the hours spent on "unrelated [and] unsuccessful claims and hours which the attorneys would not bill to their clients," as well as any hours for which the plaintiff failed to provided adequate documentation. *Id.* Second, the court considers whether special circumstances exist that would require the court to increase or decrease the lodestar amount. *Id.* In *Hensley*, the court identified twelve factors that aid in the analysis of whether special circumstances exist.[4] 461 U.S. at 429-30. However,

---

[4] The factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and
(continued...)

"many of the factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n.9.

If the court concludes that a reduction in the rate or hours is required to make them reasonable, the court must provide an explanation for the reduction so as to ensure the result was not arbitrary. Reductions based on a purely visceral reaction to the total amount requested will not suffice. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708-09 (7th Cir. 2001).

The reasonable hourly *rate* for an attorney is determined by looking at the rates charged to paying clients by other attorneys in the community with similar experience and skill. *Small*, 264 F.3d at 707. The court may presume that an attorney's actual billing rate for similar work is the market rate. *Id.* Where the attorney does not traditionally charge a billing rate, the attorney may submit affidavits of similarly situated attorneys to prove the market rate for his services. *Id.* The Laffey Matrix, an annual report prepared by the United States Attorney's Office to estimate reasonable attorneys' fees, may also be used to prove the reasonableness of the charged fee. *Berg v. Culhane*, 2011 WL 589631 at *3 (N.D. Ill. 2011). The party requesting an award of attorneys' fee bears the burden of proving the reasonableness of the hourly rate. *Small*, 264 F.3d at 707. The burden will shift to the opposing party once the party seeking fees sustains that burden. *Id.*

The Defendants have not objected to the hourly rate charged by the Plaintiff's attorneys in their Joint Statement. (Pl.'s Mot. Att'y Fees Costs at Ex. A § 2). Similarly, the Defendants do not appear to object to the charged rates in responding to the Plaintiff's Motion for Attorneys' Fees and Costs. *See generally* Defendants' Resp. Pl.'s Pet. Att'y Fees. Nonetheless, the Plaintiff

---

[4](...continued)
length of the professional relationship with the client; and (12) awards in similar cases."*Hensley*, 461 U.S. 424 at 430 n.3.

provided the court with biographies of each of the attorneys who worked on the case, a declaration of a similarly situated attorney who charges comparable rates, and documentation that the Plaintiff's attorneys' rates were within the Laffey Matrix. (Pl.'s Mot. Att'y Fees Costs at Ex. I, K, & L). That information more than justifies the reasonableness of the hourly rates charged, and the rates should not be reduced.

The reasonableness of hours expended requires the exclusion of hours spent which are "excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 434. *See e.g., Goodale v. George S. May Intern. Co.*, 2010 WL 2774013 at *5-6 (N.D. Ill.2010) (reducing the number of hours for the initial lodestar calculation where the attorney reviewed the same document multiple times or spent an excessive amount of time reviewing); *Urnikis-Negro v. Am. Family Prop. Servs.*, 2009 WL 212122 at *2 (N.D. Ill. 2009)(reducing the number of hours because it was unnecessary to have five attorneys work on relatively uncomplicated an FLSA claim). Inevitably, there will be some overlap of hours and unnecessary or inefficient use of time during an attorney's work on a case. However the time spent that is duplicative, unnecessary, or inefficient should be minimal when the case is relatively uncomplicated. *Id.*

The billing records in this case reflect Attorney Alejandro Cafferelli spent 49.25 hours, Attorney Marc Siegel spent 4.25 hours, Attorney Bradley Manewith spent 262.75 hours, Attorney Lorraine Peeters spent 3.5 hours, Paralegal Joanna Germann Zalewski spent 8 hours, and Paralegal Lennie Moscoso-Smith spent 4 hours for a total of 329.5 hours. (Pl.'s Mot. Att'y Fees Costs at Ex. A & E). The Defendants object to 73.5 of the hours billed because of the claimed lack of success of the collective action and the claim related to Stephanie Holdren. The

fees incurred in connection with these endeavors total $20,593.75.. (Defendants.' Resp. Pl.'s Pet. Att'y Fees at 6, Ex. A).[5] More on this later. *See infra* at 22.

Since the Defendants do not appear to object to any of the hours as excessive or duplicative of previously completed work or to the number of Plaintiff's attorneys working on the case., the initial lodestar calculation should not be adjusted for having excessive or duplicative hours. That calculation results in a lodestar of $98,872.50. But, from this must be subtracted $3,552.50 which represents  the hours the Plaintiff has voluntarily withdrawn for work done in connection with Ms. Holdren and the settlement conference. This results in a lodestar of $95,320.

## 2.

**The Reasonableness Of A Fee Request Should Consider Whether The Plaintiff Achieved A Merely Technical, Nominal Or *De Minimis* Victory, The "Proportionality" of The Fee Request, And The  Degree Of Success Achieved**

### a.

**The Plaintiff's Recovery Through Settlement Was Not Technical, Nominal, Or *De Minimis***

"[T]he district court may deny attorney's fees-on the ground that no amount of fees would be reasonable if plaintiff's recovery is merely technical or *de minimis*." *Fisher v. Kelly*, 105 F.3d 350, 352 (7th Cir. 1997). In *Farrar v. Hobby*, Justice O'Connor's concurring opinion identified three relevant factors in determining whether a victory was technical or *de minimis*. 506 U.S. at 121-22.  The factors relevant to this analysis are the difference between the "judgment recovered and the recovery sought," the importance of the legal issues which

---

[5] In a collective action class members must opt into the suit in order to be bound by the judgment, while in a class action governed by Fed.R.Civ.P. 23 they must opt out *not* to be bound by the judgment. *Espenscheid v. DirectSat USA, LLC,_F.3d_,* 2012 WL 3156326, 1 (7th Cir.2012).

prevailed, and whether the litigation achieved a public goal. *Id.*; *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir. 1993).[6]

While the first factor is the most important, "nominal relief does not necessarily a nominal victory make." The importance of a victory may not necessarily be diminished simply because the recovery is slight. But it may. *See Cartwright*, 7 F.3d, at 109 (a recovery of one dollar per plaintiff for a total of five dollars, when plaintiff sought substantial punitive and compensatory damages, weighed in favor of being classified as a *de minimis* victory); *Cole*, 169 F.3d at 488 (two plaintiffs' combined recovery of $4,500 when the plaintiffs sought $75,000 was not a *de minimis* victory).

Ms. Dominguez originally made a settlement demand of $88,000, which was reduced to $60,000 one year later, when there was some evidence that she might only be owed $29 in unpaid overtime. (Defendants.' Resp. Pl.'s Pet. Att'y Fees at 1-2). The Defendants initially offered the Plaintiff $1,000 to settle the claim, then increased the offer to $1,500 on June 1, 2010. (Pl.'s Rep. Supp. Mot. Att'y Fees Costs at 7). The ultimate settlement amount was, on a percentage basis, substantially more than the Defendants' prior offers, and many times more than the $29 the Defendants admitted they owed. *Id.* at 5, 8. A sum of money more than twice $1,500 cannot be said to be nominal as in *Cartwright*, where the plaintiffs sought substantial damages and were only awarded five dollars.

Ms. Dominguez recovered significantly more in the settlement than the plaintiffs in *Cartwright*, and she was put in a far superior position than she was before the litigation. (Pl.'s Rep. Supp. Mot. Att'y Fees Costs at 8). In this respect, the Plaintiff's recovery is very similar to

[6] In cases that result in a nominal damage award or a damage award that is minimal in relation to the amount of damages sought, this Circuit employs the three-part test derived from Justice O'Connor's concurrence in *Farrar* to determine whether a prevailing party achieved enough success in the underlying suit to be entitled to an award of attorney's fees. *See Simpson v. Sheahan*, 104 F.3d 998 (7th Cir.1997); *Hatcher v. Consolidated City of Indianapolis*, 126 Fed.Appx. 325, 327, 2005 WL 697222, 2 (7th Cir.2005).

that in *Cole*. In both situations, the plaintiffs sought an award considerably higher than what either received, but the ultimate award still placed the Plaintiff in a better position. The awards were significant enough that they could not be qualified as trivial.

Additionally, the FLSA and the IMWL are important pieces of social legislation. Recognizing the impact that wages have on the standard of living of employees, Congress enacted the FLSA to ensure workers had the ability to maintain "the minimum standard of living necessary for health, efficiency, and general well-being . . . ." Fair Labor Standards Act, 29 U.S.C. § 202 (2011). Similar concerns underlie the Illinois Minimum Wage Law. *See* 820 Ill. Comp. 105/2 (2011). The objectives of these important pieces of legislation often can only be achieved when violations of their provisions are resolved through private litigation involving small sums. Cf., *Anderson v. AB Painting and Sandblasting Inc*. 578 F.3d 542, 546 (7th Cir.2009). Though the Plaintiff's recovery was far less than her original demands, she achieved the main purpose of FLSA and IMWL. The settlement was not merely technical or *de minimis*.

### b.
### The Plaintiff's Request For Attorneys' Fees Is Approximately 28 Times Greater Than The Amount Obtained Through The Settlement

Proportionality is the comparison between a plaintiff's damages and attorneys' fees. *Anderson*, 578 F.3d at 546. There is no strict rule of proportionality, and the Seventh Circuit has "'repeatedly rejected the notion that the fees must be calculated proportionally to damages.'" *Estate of Enoch ex rel. Enoch v. Tienor,* 570 F.3d 821, 823 (7th Cir.2009); *Anderson,* 578 F.3d at, 544–45. The Seventh Circuit has, however, cautioned district judges not to forget that the amount requested in fee petitions may be disproportionate to the damages awarded. *See Schlacher v. Law Offices of Phillip J. Rotche & Associates*, P.C. 574 F.3d 852, 857 (7th Cir.2009); *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n*

*and Chicago Journeymen Plumbers' Local Union 130, U.A.,* 562 F.3d 784, 793 (7th Cir.2009). A request for fees that is a large multiple of the amount awarded should cause the court to pause and reflect on the fee requested. *See Anderson,* 578 F.3d at 546 (a "comparatively large fee raises a red flag").[7] And, a district court's fee order should evidence increased reflection before awarding attorneys' fees that are large multiples of the damages recovered. *Catalan v. RBC Mortg. Co.,* 2009 WL 2986122, 6, 8-10(N.D.Ill.2009)(Dow, J.)(reducing the attorneys' fees requested after considering, *inter alia*, the proportionality of the fee requested). *See Moriarty,* 429 F.3d at 717-718.

Here, the fees requested are disproportionate to the recovery obtained. Still, Congress has affirmed its desire to have even small violations of the FLSA litigated, and many of those violations by their very nature are small. Litigation is expensive, and "it is no surprise that the cost to pursue the contested claim will often exceed the amount in controversy." *Anderson,* 578 F. 3d at 545; *see SKF USA Inc. v. Bjerkness,* 2011 WL 4501395, at * 3 (N.D. Ill. 2011)(refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068

---

[7] Here is how *Anderson* explained it:

> To say that a court should give "increased reflection" before awarding attorney's fees that are several times the amount of the actual damages is nothing more than to say that a comparatively large fee request raises a red flag. As we just said, in many cases the amount in controversy and the complexity of the case will track with one another. But small claims can be complex and large claims can be very straightforward. So while a fee request that dwarfs the damages award might raise a red flag, measuring fees against damages will not explain whether the fees are reasonable in any particular case.

> Reasonableness has nothing to do with whether the district court thinks a small claim was "worth" pursuing at great cost. Fee-shifting statutes remove this normative decision from the court. If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing. The court must then assume the absolute necessity of achieving that particular result and limit itself to determining whether the hours spent were a reasonable means to that necessary end.

578 F.3d at 546.

because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested). The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered. *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000).

Some cases have hinted that a party who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated as if he had not prevailed. Thus in *Perlman v. Zell,* 185 F.3d 850, 859 (7th Cir.1999), the court said: "We have held in a series of recent cases that a litigant who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated *as if* he had not prevailed." And in *Cole v. Wodziak,* Judge Easterbrook: said that " recovering less than 10% of the demand is a good reason to curtail the fee award substantially." 169 F.3d at 489. Later cases have however abjured any automatic 10% or other any mechanical rule requiring that a reasonable attorney's fee be no greater than some prescribed multiple of the damages claimed or recovered. *Moriarty,* 233 F.3d at 967-968. *See also, SKF USA Inc.*, 2011 WL 4501395,3; *Catalan,* 2009 WL 2986122, 2. But that does not mean that the size of an award is to be ignored altogether in assessing the reasonableness of a fee award.

The focus is on what the party had reasonably expected to recover in the litigation. Thus, if the prevailing party "had incurred attorney's fees that were disproportionate to a reasonable estimate of the value of its claim, it could not recover all those fees, but only the reasonable proportion, which is to say "the amount that would have been reasonable to incur had the value of the claim been estimated reasonably rather than extravagantly." *Tuf Racing Prods., Inc. v. Am.*

*Suzuki Motor Corp.,* 223 F.3d 585, 592 (7th Cir.2000). And that is so even when the civil rights litigation is involved. *Cole,* 169 F.3d at 489.[8]

Defendants argue that a downfall to the fee shifting statutes is that they encourage a plaintiff to prolong litigation in an effort to obtain higher fees. (Defendants.' Resp. Pl.'s Pet. Att'y Fees at 9). Perhaps. But Congress has determined that the importance of achieving the goals subserved by the FLSA outweighs the risk of manipulation of fee petitions by some lawyers in some cases. Congress was undoubtedly aware of the remedial devices that courts have at their disposal to protect against such manipulation and concluded that the risk of manipulation and overstatement was one that the courts had ample resources to deal with.[9]

The court noted in *Catalan* that "the fact that the Defendants litigated tooth-and-nail at every stage of the case . . . places the number of hours claimed by the Plaintiff in perspective." 2011 WL 2986122, at *9. Indeed, because the time required to prosecute a case "will often 'vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance.'" *Rodriguez-Hernandez v. Miranda-Velez,* 132 F.3d 848, 860 (1st Cir.1998). When, as here, a party refuses to make any reasonable settlement offer or to make any offer of judgment preferring instead to mount a spirited defense of the case, "'it does not come with very good grace'" *Sure–Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 910 (1984), for the defendant to complain when his adversary spends at least as much time and effort to overcome the defense. *Catala*n, 2009 WL 2986122, 5. The Defendants certainly were vigorous in their defense of the

---

[8] The principle must apply equally to FLSA cases, unless we are to conclude that they are more important to the public weal than civil rights legislation.

[9] Some courts have concluded that it seems unlikely that an attorney will "'spend unnecessary time on contingency fee cases in the hope of inflating their fees because the payoff is too uncertain, as to both the result and the amount of the fee.'" *Catalan,* 2009 WL 2986122 at *5.

case and in their belief that it never had merit. They expended $85,137.23 in their own attorneys' fees and costs. (Defendants.' Resp. Pl.'s Pet. Att'y Fees, 8; Ex. B).[10]

Defendants also contend that the fee should be reduced because the Plaintiff prevented earlier and thus cheaper resolution of the case. (Defendants.' Resp. Pl.'s Pet. Att'y Fees at 8). They attribute the prolonged litigation to Plaintiff's "unfounded and excessive settlement demands" of $88,000, followed by a demand of $60,000 one year later. Each demand was inclusive of attorneys' fees. *Id.* In response, the Defendants offered $1,000 and $1,500 respectively.[11] The offers were inclusive of attorneys' fees. *Id.* The lack of movement between the Defendants' settlement offers, as well as the quip regarding how the money should be spent, suggest either that the Defendants were unwilling to partake in serious settlement negotiations or that the case was, in their view, so meritless as not to warrant payment of any kind or even an offer of judgment.

At the same time it cannot be said that the Plaintiff's rejections of the Defendants' *de minimus* offers to settle were unreasonable. "[T]he genuine likelihood that the court would award attorney's fees [if the case had a successful outcome] justifies a refusal to accept an offer that would wholly discount such an award." *SKF UA Inc.*, 2011 WL 4501395, at *2. At the time of the $1,500 offer, the Plaintiff's attorneys had been working on the case for over a year. The offer eliminated any attorneys' fees, and that was unrealistic and unreasonable.

Thus, in light of Congress' intent to have these cases privately litigated and the Defendants' own behavior in prolonging settlement, the lodestar should not be reduced because the settlement award was disproportionate to the request for attorneys' fees.

---

[10]The Plaintiff calculates the amount at $77,824.73 (Plaintiff's Memorandum at 7).

[11]The plaintiff's brief claims the offer was accompanied with this mordant comment, "don't spend it all in one place." *Id.*

**c.**
**In Light Of The Limited Degree of Success Achieved By Ms. Dominiguez,**
**The Lodestar Should Be Reduced**

**i..**

"[T]he most critical factor" in determining the proper amount of any fee award is the degree of success obtained by the prevailing party, which may result in the initial lodestar calculation being increased or decreased. *Farrar v. Hobby,* 506 U.S. 103, 114(1992); *Hensley,* 461 U.S. at 434; *Marek v. Chesny* 473 U.S. 1, 29 (1985); *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir.2007); *Cole,* 169 F.3d at 488-489. It must not be forgotten that because a case involves the vindication of rights deemed vital to the public welfare, "[t]he amount of damages a plaintiff recovers" does not cease to be "relevant to the amount of attorney's fees to be awarded under § 1988 [or the FLSA or any other statute]." *City of Riverside v. Rivera,* 477 U.S. 561, 574-76 (1986). *See also Cole, supra.* Here is how the Court explained it in *Hensley*:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. ... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

> * * *

> That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

*Hensley*, 461 U.S. at 435-436. *Accord, Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 557-558 (7th Cir. 1999).

If reduction of the lodestar calculation is warranted, the court may either identify specific hours which should be eliminated, "or it may simply reduce the award to account for the limited success. The court has substantial discretion in making this equitable judgment." *Hensley*, 461 U.S. at 437. *See also Cooke v. Stefani Management Services, Inc.* 250 F.3d 564, 570 (7th Cir.2001)(sustaining the district court's 50% limited-success reduction to $49,000 in fees as "entirely justified"); *Catalan*, 2009 WL 2986122 at *8 (reducing by 40% the lodestar and collecting cases where fee request reductions of 50% and 67% based upon the limited success achieved were sustained by the Seventh Circuit); *Sughayyer v. City of Chicago*, 2012 WL 2359065, 14 (N.D.Ill.2012)(reducing the lodestar by 45% ).

Failure to prevail on every claim does not automatically result in a reduced fee award. *City of Riverside v. Rivera* 477 U.S. 561, 568-569 (1986); *Catalan*, 2009 WL 2986122 at * 3. "Claim counting" is forbidden. And, so long as the time spent on an unsuccessful claim was a factor in the success of other claims, the hours expended would not be unreasonable.[12] The court should consider the litigation as a whole when it is difficult to divide the hours on a claim by claim basis because there is a common core of facts and legal theory. *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988).

However, the court must bear in mind an unreasonable or excessive fee may result if a party only achieves partial or limited success and the traditional lodestar calculation is used. *Rivera; Spegon*, 175 F.3d at 557. If a party does not prevail on a claim that is distinct from the

---

[12] "'A mathematical approach comparing the total number of issues in the case with those actually prevailed upon,.'" *Hensley*, 461 U.S. at 435, n. 11, is improper. Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors enunciated by the Court.

claim on which he did prevail, the calculation of reasonable hours should only take into consideration those hours which would have been expended if the prevailing party only brought the claim on which he prevailed. *Id.* Additionally, if a plaintiff did not prevail on a claim that formed the "primary aim in the litigation," the court is justified in reducing the award of attorneys' fees by a percent reduction instead of simply eliminating the hours expended on unsuccessful claims. *Barfield v. N.Y.C. Health and Hosp. Corp.*, 537 F.3d 132, 152-53 (2d Cir. 2008). *See also Hensley,* 461 U.S. at 437.

In *Barfield*, the damages were only $88.25. The court found the primary aim of the litigation was the collective action certification as evidenced by the complaint. 537 F.3d at 152-53. The court found that the plaintiff's potential recovery for unpaid overtime wages could have easily been determined had the attorney not sought a collective action. *Id.*, at 153. However, if the court were to only take out the hours spent working on securing a collective action, the result would not "adequately reflect the limited success" of the plaintiff and would only incentivize plaintiffs' lawyers to "file collective action-based claims even where there is little basis for doing it." *Id.* The court thus reduced the award of attorneys' fees by fifty percent to $49,889 when the initial lodestar calculation was $99,778.75. *Cf., Perlman,* 185 F.3d at 859 (Plaintiff lost on the central issue in the case, RICO, and only prevailed on state law claims).

The court took a similar approach in *Catalan*. There the plaintiff brought three claims against the defendant: breach of contract, negligence, and a violation of the Real Estate Settlement Practices Act ("RESPA"). 2009 WL 2986122 at *1. Following a jury trial, judgment was entered in favor of the plaintiff on the negligence and RESPA claims and awarded the plaintiffs $11,100. *Id.* The jury awarded judgment to the defendant on the breach of contract claim. *Id.* The plaintiffs originally assessed their case as being worth more than $234,000 and

their recovery was significantly less. The court concluded the results were not excellent results, 2009 WL 2986122,*7, and reduced the attorneys' fees by 40%. *Id.* at *10.

In *Cooke v. Stefani Management Services, Inc.*, a 50% limited-success reduction to $49,000 in fees where the award was $7,500 was deemed "entirely justified":

> Cooke requested nearly $300,000 from the jury but, after our decision today, will go home with $7,500, hardly an overwhelming success. In addition, contrary to Cooke's "information and belief," this was not a groundbreaking, first-time-ever-in-this-district, same-sex sexual harassment case,...but rather a run-of-the-mill employment case in which Cooke himself was the only substantive witness for his side of the case. In a simple case with no broad social impact, Cooke's attorneys should be happy to receive fees of nearly seven times the amount of their client's recovery.

250 F.3d at 570.

### ii.

These cases are relevant here. The Defendants argue that the Plaintiff was unsuccessful in her attempt to form a collective action and that the $20,593 in fees incurred in relation to that issue should be removed from the Plaintiff's fee petition. (Defendants.' Resp. Pl.'s Pet. Att'y Fees at 6, Ex. A). While the court ultimately granted the Plaintiff's Motion for Notice to Similarly Situated Persons (D.E. 44), only Stephanie Holdren joined the suit. This is scarcely the complete success claimed by the Plaintiff. (Pl.'s Rep. Supp. Mot. Att'y Fees Costs at 3).[13] Ultimately, the victory proved temporary and illusory since in 2011 she refused to participate in the case and violated court orders. She moved for a voluntary dismissal without prejudice. (D.E. 88). She was dismissed with prejudice. *See Barfield*, where the court noted that a collective

---

[13] And perhaps that should have alerted the Plaintiff 's lawyers to substantially reassess their case. The $20,000 reduction in the settlement demand, it could be argued, took insufficient note of the lack of success of the opt-in efforts. To say, asdoes the Plaintiff, that she won the motion (Reply at 2) ignores the reality of what occurred and the profoundly adverse effect of the poor turn out of prospective class members on the case.

action was not successful where the case only proceeded on the claims of one plaintiff, and the fee request was reduced by 50%. *Barfield*, 537 F.3d at 137.

The Plaintiff cites *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567 (6th Cir. 2009) for the proposition that FLSA does not bar recovery of attorneys' fees incurred in a collective action that was decertified. That is an imprecise reading of the opinion. The court emphasized that fees resulting from an unsuccessful collective action could only be included in the award if there was a specific showing that the work benefitted the successful claim. *Id.* at 576-77. *In O'Brien*, the Plaintiff's success was directly related to the work completed on the unsuccessful collective action. *Id.* at 576.[14] The same cannot be said for the Plaintiff in the instant case. Ms. Dominguez received no discernable benefit from the collective action, and the Plaintiff makes no attempt to show she did. Further, Ms. Holdren's usefulness was limited by the fact that she only worked at the Pub briefly in 2009, *Dominguez*, 790 F.Supp.2d at 806, and thus was testimonially incompetent to testify about other periods of time that were crucial to and formed the temporal bulk of Plaintiff's case. *See* Rule 602 Federal Rules of Evidence. And the fact remains, Ms. Holdren's claim was unsuccessful and her case dismissed with prejudice.

In sum, it was not necessary to the successful prosecution of Ms. Dominguez's claim to join Ms. Holdren. Any evidence relating to the manner in which the Defendants ran their business or dealt with Ms. Dominguez could have been obtained by discussions with and the depositions of Holdren and others who worked at the Pub – a point acknowledged by the Plaintiff and used as support for the fees incurred in connection with the Holdren deposition and related investigation of facts. (Plaintiff's Memorandum at 10). That time, which totals $2,247.50

---

[14] The work completed in the unsuccessful collective action that resulted in an award of attorneys' fees consisted of discovery which was later used in a successful claim against the Defendants that was not a collective action. *O'Brien*, 575 F. 3d, at 576.

(Reply at 3,n.2) is compensable. *O'Brien, supra. Cf., Sughayyer,* 2012 WL 2359065, 3 ("Because of the intertwining nature of the claims and facts, all flowing from a single traffic stop, the five-day trial in this case would not have been significantly shorter had Plaintiff opted to pursue only the excessive force claim.").

Perhaps in recognition of the untenability of a claim that fees related to Ms. Holdren in the final stage of the case should count, the Plaintiff voluntarily and quite properly has withdrawn her request for $3,552.50 in fees in conjunction with efforts to contact Ms. Holdren for the settlement conference that she did not attend. (Reply at 3). The Plaintiff wants the remaining $17,041.25, which would yield a lodestar of $95,320. (Reply at 9). Given the lack of success on the opt-in claim (when viewed overall), only that amount which would have been spent in any event and which arguably assisted the development and prosecution of the Plaintiff's claim is compensable. That amount is $2,247.50. Thus the proper lodestar is $80,526.

### iii

What then is a reasonable fee in this case? Is a reduction of the $17,041.25 incurred in connection in with the opt-in motion and Ms. Holdren's claims sufficient or, in light of the Plaintiff's limited success, is a reasonable fee more fairly determined by a percentage reduction of the lodestar as permitted by *Hensley*, *Barfield*, *Cole,* and the other cases discussed earlier. The Defendants have asked for an across the board 90% reduction of the original sum of $98,000 requested leaving the Plaintiff's lawyers with $9,887.25 in fees. That recommendation is rejected.

Still, merely deducting the $17,041.25 spent on the opt-in motion and Ms. Holdren's claims would not adequately take into account the significance of those endeavors in the overall

setting of the case and the very limited success of the Plaintiff on her own claim and her failure to succeeded in what was undeniably a chief objective of the suit. The Second Circuit's decision in *Barfield v. New York City Health and Hospitals Corp.*, discussed earlier, is instructive. There the complaint sought a collective action certification that was unsuccessful and the plaintiff had her own action FLSA claim on which she prevailed. The district court reduced the lodestar by 50% because of the limited degree of success achieved.

The plaintiff asserted that *no* fee reduction for lack of success was warranted in her case because she did, in fact, succeed on the her FLSA claim. She submitted that a motion for FLSA collective action certification – on which she lost – is not a claim and, thus, failure on such a motion does not support a fee reduction. The Second Circuit was not persuaded. It stressed that a district court's assessment of the "degree of success" achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims. Both "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved. Indeed, this comparison, the court held, "promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" 537 F.3d at 152 (quoting *Farrar v. Hobby,* 506 U.S. at 114–15).

The Court of Appeals agreed with the district court that "'plaintiff's primary aim in this litigation, as reflected in her complaint and in the first four months of litigation ... was to certify a collective action.'" *Barfield v. N.Y. City Health & Hosps. Corp.,* 2006 WL 2356152, at *2. As the district court noted, plaintiff had urged certification to secure relief for "thousands of workers." Her motion failed. The court held that it is against this background of anticipated

relief that plaintiff's recovery of $1,744.50 in compensatory and liquidated damages for herself appears to reflect only a small degree of success. The Court of Appeals held that the district court was rightly concerned that not reducing the fee award in these circumstances would pose two risks: (a) decreasing the incentive for plaintiffs' lawyers vigorously to litigate collective action certification, and (b) encouraging plaintiffs' lawyers to file collective action-based claims even where there is little basis for doing so.

The court also rejected the argument that even if the district court acted within its discretion in reducing the fee to reflect failure to certify a collective action, it abused its discretion in applying a 50% reduction, as opposed to subtracting the 63 hours expended on plaintiff's unsuccessful attempt to certify a collective action. While plaintiff's arithmetic has the virtue of simple application, the court said, it was not persuaded that the district court exceeded its discretion in concluding that this proposed reduction did not adequately reflect the plaintiff's limited success in this case. Barfield's potential recovery in this case was not a matter of debate, as in tort or civil rights cases. The amount of unpaid overtime was easily determined at the outset to be only $887.25. Even doubled for liquidated damages, this recovery did not reflect such a degree of success as to compel an award for the full attorney's fees incurred after denial of class certification. In this respect the district court got it exactly right, held the court: the reasonableness of the attorney's fees incurred linked directly to the ability to maintain the case as an FLSA collective action. Accordingly, the Second Circuit found no abuse of discretion in the district court's decision to reduce the fee for the limited success in pursuing Barfield's claim by itself to $49,889. 537 F.3d at 152-153. *See also Hensley,* 461 U.S. at 437.

A review of Ms. Dominguez's complaint likewise reveals the centrality of the collective action to the case. The 47 paragraph, two count Complaint is brought on behalf of a class of all "past and present servers and bartenders," and "all past and present employees of the Pub." The alleged infractions affected all the class members and were alleged to be deliberate, warranting punitive damages. (D.E. 1). The hoped-for scope of the action obviously gave rise to the not insubstantial settlement demands made by the Plaintiff and drove the Plaintiff's extended efforts until only Ms. Holdren joined the case. Had there been no opt-in action, the demands would have been scaled down substantially making earlier settlement far more likely.

In short, merely deducting the $17,041.25 incurred in connection with the opt-in aspect of the case would not result in a "reasonable" attorneys' fee in this case. That would be an approximately 15% reduction, which is simply insufficient to reflect the low degree of success achieved by the plaintiff. While a reduction of 40-50% would not be untoward, given all the factors that a court is to consider in exercising its "considerable discretion" in awarding a reasonable fee, a reduction of 33 % is appropriate. Thus, the fee This is more than twenty five times the settlement amount and "cannot be called unjustifiably low...." Cole, 169 F.3d at 489.

### CONCLUSION

For the foregoing reasons, the petition is granted with regards to the request for non-taxable expenses in the amount of $3,943.07 and attorneys' fees in the amount of $63, 864.

DATE: 9/14/12                                  ENTERED: _____
                                               UNITED STATES MAGISTRATE JUDGE